## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARIANNE DUFFY, by her parents and     )
legal guardians, Sean and Elise Duffy,    )
                              )
       Plaintiff,               )
                              )
      v.                  )      No 05-CV-127-GMS
                              )
VINCENT MECONI, Secretary, Delaware    )
Department of Health & Social Services, in   )
his official capacity,             )
                              )
MARIANNE SMITH, Director, Division of    )
Developmental Disabilities Services,     )
in her official capacity, and          )
                              )
ELAINE ARCHANGELO, Director, Division   )
of Social Services, in her official capacity,  )
                              )
       Defendants.            )

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION
## TO DISMISS PLAINTIFF'S COMPLAINT
## PURSUANT TO FED. R. CIV. P. 12(b)(6)

Richard M. Donaldson            A. Ann Woolfolk
(DE Bar I.D. No. 4367)          (DE Bar I.D. No. 2642)
MONTGOMERY, McCRACKEN,     Deputy Attorney General
  WALKER & RHOADS, LLP        State of Delaware – Department of Justice
300 Delaware Avenue, Suite 750      Carvel State Office Building
Wilmington, DE 19801           820 N. French Street, 6th Floor
(302) 504-7800                Wilmington, DE 19801
                           (302) 577-8400

Date: May 25, 2005             Counsel for Defendants

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................. 1

II.  SUMMARY OF ARGUMENT ................................................. 2

III. STATEMENT OF FACTS ....................................................... 3

   A.   Plaintiff's Allegations ................................................... 3

   B.   The Residency Requirement .......................................... 4

   C.   Plaintiff's Claims......................................................... 5

IV.  ARGUMENT...................................................................... 6

   A.   Delaware's Residency Requirement Does Not Implicate the
        Privileges and Immunities Clause of Article IV ........................ 6

   B.   Delaware's Residency Requirement Does Not Violate the
        Privileges or Immunities Clause of the Fourteenth Amendment.............. 7

   C.   Delaware's Residency Requirement Does Not Violate the Equal
        Protection Clause of the Fourteenth Amendment ................................. 11

        1.   The Fourteenth Amendment's Equal Protection Clause
             Applies Only to Those Within a State's Jurisdiction................... 11

        2.   Plaintiff's Complaint Does Not Allege Any Actual
             Discrimination Against Her on the Basis of Wealth
             or Disability .............................................................. 12

        3.   Delaware's Process for Determining Medicaid Eligibility is
             Rationally Related to a Legitimate State Purpose........................ 13

             a.   Disability is Not a Suspect Classification........................ 13

             b.   Wealth is Not a Suspect Classification ........................... 14

             c.   The Residency Requirement is Rationally Related
                  to Delaware's Legitimate Objective of Fairly
                  Apportioning Limited State Funds................................... 15

V.   CONCLUSION................................................................... 18

# TABLE OF AUTHORITIES

**Page**

## CASES

Bethesda Lutheran Homes and Services, Inc. v. Leean,
122 F.3d  443 (7th Cir. 1997) ...................................................................... 9-10

City of Cleburne v. Cleburne Living Center,
473 U.S. 432 (1985) ....................................................................... 14, 15

Fisher v. Reiser, 610 F.2d 629 (9th Cir. 1980) .................................................. 12

Giese v. Barnhart, 55 Fed.Appx. 799 (9th Cir. 2002) ........................................ 14

Graham v. Office of Surface Mining Reclamation and Enforcement,
772 F.2d 1106 (3rd Cir. 1983) ...................................................... 14

Martinez v. Bynum, 461 U.S. 321 (1983) ............................................... 1, 16-17

Saenz v. Roe, 526 U.S. 489 (1999) ..................................................... 2, 6, 7, 8, 16

Shapiro v. Thompson, 394 U.S. 618 (1969) ........................................................ 16

United States v. Myers, 294 F.3d 203 (1st Cir. 2002) ....................................... 14

University of Alabama v. Garrett, 531 U.S. 356 (2001) ............................... 14, 15

## REGULATIONS

42 C.F.R. § 435.403 ................................................................... 2, 4-5, 12, 13

42 C.F.R. § 435.403(c) ...................................................................................... 3

42 C.F.R. § 435.403(i)(2)(ii) .......................................................................... 4-5

42 C.F.R. § 435.403(i)(2)(iii) ......................................................................... 4-5

I.     **INTRODUCTION**

Plaintiff, a 31-year-old Medicaid beneficiary with developmental disabilities,

alleges in her Complaint that the Delaware state defendants are violating her constitu-

tional rights – in particular, her "right to travel" and her right to "the equal protection of

the laws" – by applying Delaware's and the federal Medicaid requirement that only state

residents are eligible for state and Medicaid-funded services.

Specifically, the Complaint asserts:

> Marianne Duffy's parents relocated from North Carolina to
> Delaware in 2001, after her father accepted a job in Wil-
> mington, Delaware.  Not wanting to leave Marianne behind
> and mindful that interaction with her parents is beneficial to
> Marianne's health and developmental status, the Duffys
> applied to the Defendants to obtain residential placement
> and services through Delaware's Medicaid program.  The
> Defendants denied Marianne Duffy's application on the
> grounds that she is not a state resident.  This denial creates
> a Catch-22:  Marianne's health and developmental condi-
> tions prohibit her from physically relocating to Delaware
> without first obtaining appropriate residential placement
> and services; yet, due to her limited income, she cannot
> gain access to those services without first meeting the Dela-
> ware Medicaid program's residency requirements.  As a
> result, Marianne Duffy currently lives in an intermediate
> care facility for mental retardation (ICF/MR) in North
> Carolina, 472 miles from her parents.

Compl. ¶ 2.

The Complaint should be dismissed because – even accepting its factual aver-

ments as true (as the Court must on this motion) – plaintiff has not stated a claim that

implicates her constitutional rights to travel and to equal protection.  The Supreme Court

has repeatedly upheld the constitutionality of "bona fide residency requirements," see

Martinez v. Bynum, 461 U.S. 321, 325-29 (1983) (discussing cases, and plaintiff's

Complaint fails to set forth any facts that would show that the Delaware state defendants are in any way discriminating against her on the basis of her income or disability.

Moreover, the Complaint does <u>not</u> allege (and cannot allege) that, because of the Medicaid residency requirement, there is no facility in Delaware that will accept plaintiff as a resident. As such, her constitutional "right to travel" is not implicated in this case and her Complaint should be dismissed.

## II.    <u>SUMMARY OF ARGUMENT</u>

1.    Count I of plaintiff's Complaint fails to state a claim upon which relief can be granted because, as construed by the Supreme Court in <u>Saenz v. Roe</u>, 526 U.S. 489, 501-02 (1999), the component of the "right to travel" that is grounded in the Privileges and Immunities Clause of Article IV, § 2 of the Constitution applies only to citizens of one state traveling temporarily to another state.

2.    Counts I and II of plaintiff's Complaint fail to state a claim upon which relief can be granted because the Complaint fails to allege that there is no residential facility in Delaware – public or private – that will accept her as a resident until she first establishes DDDS and/or Medicaid eligibility in Delaware. As such, plaintiff's "right to travel" into Delaware is neither burdened nor infringed by application of the Medicaid eligibility regulations on "state residency," 42 C.F.R. § 435.403.

3.    Count III of plaintiff's Complaint fails to state a claim upon which relief can be granted because the Complaint fails to set forth any facts that would show that the Delaware state defendants are discriminating against her on the basis of her income or disability. In any event, neither wealth nor disability are the type of "suspect" classifi-cations that require a strict level of scrutiny under "equal protection" law. The Medicaid

- 2 -

residency requirement is rationally related to the State's legitimate interest in limiting the benefits it provides to its residents.

## III.    STATEMENT OF FACTS

### A.    Plaintiff's Allegations

The Complaint alleges that plaintiff Marianne Duffy is "a 31-year-old Medicaid beneficiary with developmental disabilities including blindness, seizures, autism, and mental retardation." Compl. ¶ 1. Ms. Duffy "has resided at Carobell, an ICF/MR [i.e., an "intermediate care facility for the mentally retarded"] group home in Hubert, North Carolina, since 1993." Id. ¶ 21. The Complaint further alleges:

> She is non-verbal and requires a highly structured living environment with constant supervision and care due to her susceptibility to seizures, falling, and self-abusive behavior. Her parents are unable to provide her care in their own home, even for a weekend. She is not capable of indicating intent within the meaning of the Medicaid residency regulations, 42 C.F.R. § 435.403(c).

Compl. ¶ 21. Her parents, Sean and Elise Duffy, are her legal guardians. Id. ¶ 22.

In April 2001, the plaintiff's father "relocated to Delaware as a result of a new job," and her mother likewise moved to Delaware some months later. Id. The Complaint asserts that plaintiff's parents "wish to move her to a community-based residential placement in Delaware so that she can live closer to her family." Id.

Plaintiff currently receives Medicaid benefits in North Carolina. Id. ¶ 24. The Complaint alleges that her parents "have applied for services, primarily seeking a community-based residential placement in Delaware, through DDDS [i.e., Delaware's Division of Developmental Disabilities Services]." Id. Plaintiff further asserts that her "application for DDDS services has been placed on 'inactive status' because, according

- 3 -

to DDDS, although [she] was determined to meet the clinical eligibility criteria, she first had to establish Delaware residency before she could access DDDS services." Id.

The Complaint acknowledges that plaintiff has been assigned a DDDS case manager, id. ¶ 25, but asserts that the state defendants' requirement that she be a resident of the State before accessing Medicaid-funded services violates her constitutional rights to travel and to equal protection.

**B.    The Residency Requirement**

The Medicaid residency requirement is found in 42 C.F.R. § 435.403.  The regulations provide:

> (a) Requirement.  The agency must provide Medicaid to eligible residents of the State, including residents who are absent from the State. . . .
>
> *      *      *
>
> (i) Individuals Age 21 and over.  (1) For any individual not residing in an institution as defined in paragraph (b), the State of residence is the State where the individual is—
>
> (i) Living with the intention to remain there permanently or for an indefinite period (or if incapable of stating intent, where the individual is living);  . . .
>
> *      *      *
>
> (2) For any institutionalized individual who became incapable of indicating intent before age 21, the State of residence is—
>
> *      *      *
>
> (ii)  The parent's or legal guardian's State of residence at the time of placement . . . ; or
>
> (iii)  The current State of residence of the parent or legal guardian who files the application if the individual is institutionalized in that State . . . .

42 C.F.R. § 435.403.

Thus, under the Medicaid residency requirements, plaintiff is a resident of North Carolina because that was the State of her parents' residency when she was placed in the facility in North Carolina.  See 42 C.F.R. § 435.403(i)(2)(ii); Compl. ¶ 15.  Since plaintiff's parents are now Delaware residents, see Compl. ¶ 2, 22, plaintiff's State of residency would be Delaware if she relocated to a facility in Delaware.  See 42 C.F.R. § 435.403(i)(2)(iii).

**C.    Plaintiff's Claims**

The Complaint asserts that the Delaware state "defendants' process for determining [her] eligibility for Medicaid services" is unconstitutional because it abridges her right to interstate travel.  Compl. ¶¶ 27-33.  The Complaint alleges:

> [B]ecause Marianne's disabilities require specific services and living arrangements funded by the state's Medicaid program, she is precluded from physically relocating to a new state of her choice unless an appropriate Medicaid-covered residential placement will be available to her on the day that she arrives.  Marianne cannot access her right to become a citizen of another state, and thereby access the corresponding privileges and immunities afforded by that state to its citizens, because her disabilities prevent her from establishing a residence in a new state without the willingness of the new state to provide her with Medicaid services on the day of her arrival.

Id. ¶ 27.

The Complaint thus does not assert that plaintiff is constitutionally entitled to be given a residential placement in Delaware.  Rather, it challenges the state defendants' "process" for determining her eligibility for Medicaid services.

- 5 -

The Complaint asserts three claims:

Count I: Violation of Privileges and Immunities Clause of Article IV of the United States Constitution

Count II: Violation of Privileges and Immunities Clause [sic] of the Fourteenth Amendment to the United States Constitution

Count III: Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

Compl. ¶¶ 28-33.

## IV. ARGUMENT

### A. Delaware's Residency Requirement Does Not Implicate the Privileges and Immunities Clause of Article IV

Plaintiff's first claim – that Delaware's provisions for determining eligibility for Medicaid violate her "right to travel" under the Privileges and Immunities Clause of Article IV, § 2 of the Constitution – should be dismissed because, as construed by the Supreme Court in Saenz v. Roe, 526 U.S. 489, 501-02 (1999), the component of the "right to travel" that is grounded in the Privileges and Immunities Clause of Article IV, § 2 of the Constitution applies only to citizens of one State traveling temporarily to another State.

Article IV, § 2 of the Constitution provides:

> The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.

In Saenz v. Roe, 526 U.S. 489 (1999), the Supreme Court described the constitutionally-protected "right to travel" as follows:

> The "right to travel" discussed in our cases embraces at least three different components. It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second

- 6 -

> State, and, for those travelers who elect to become
> permanent residents, the right to be treated like other
> citizens of that State.

Id. at 500.  The Court explained that the Privileges and Immunities Clause of Article IV,

§ 2 protects the second component of the "right to travel":

> Thus, by virtue of a person's state citizenship, a citizen of
> one State who travels in other States, intending to return
> home at the end of his journey, is entitled to enjoy the
> "Privileges and Immunities of Citizens in the several
> States" that he visits.

526 U.S. at 501.

This second component of the "right to travel" is simply not at issue in this case.

Plaintiff's Complaint does not assert that the Delaware state defendants have in any way

infringed on her right to travel to and visit Delaware or to enjoy "the Privileges and

Immunities" of Delaware citizens during any visit to Delaware that will end with her

returning to her present home in North Carolina.

Since the component of the "right to travel" that is protected by the "Privileges

and Immunities" clause of Article IV, § 2 is not implicated in this case, Count I of the

Complaint should be dismissed.


**B.**     **<u>Delaware's Residency Requirement Does Not Violate the Privileges or</u>**
      **<u>Immunities Clause of the Fourteenth Amendment</u>**

Plaintiff's second claim – that Delaware's provisions for determining eligibility

for Medicaid violate her "right to travel" under the Privileges or Immunities Clause of the

Fourteenth Amendment – should likewise be dismissed because the Complaint fails to

allege the state defendants are imposing an actual burden on plaintiff's becoming a

resident of Delaware.

In <u>Saenz</u>, the Supreme Court identified the Privileges or Immunities Clause of the Fourteenth Amendment as the source of the constitutionally-protected "right to move into another State and become a resident of that State." 526 U.S. at 502. That clause states:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States.

See <u>Saenz</u>, 526 U.S. at 503 ("this Clause protects the third component of the right to travel").

By definition, however, a claimed violation of the "right to travel" must involve a State's imposing a burden or penalty on the plaintiff's decision to relocate to another State and become a resident there. Plaintiff's Complaint is deficient because it does not assert (and cannot assert) that the state defendants' application of the Medicaid residency requirement precludes plaintiff from being accepted in any appropriate residential facility in Delaware.

The Complaint does assert that plaintiff "requires a highly structured living environment with constant supervision and care due to her susceptibility to seizures, falling, and self-abusive behavior" and that '[h]er parents are unable to provide her care in their own home, even for a weekend." Compl. ¶ 21. These factual allegations must be accepted as true for purposes of this Motion to Dismiss. In addition, the Complaint asserts that "she is precluded from physically relocating to a new state of her choice unless a appropriate Medicaid-covered residential placement will be available to her on the day that she arrives." Again, this assertion (and the facts concerning plaintiff's condition that form the basis of it) must be accepted as true for purposes of this Motion.

What these factual assertions mean, however, is only that plaintiff cannot move into Delaware to establish residency unless there is a facility that has accepted her as a resident.

The missing – and fatal – allegation is that there is no facility in Delaware, public or private, that will accept plaintiff as a resident. What the Complaint asserts is a "Catch-22" (see ¶ 2) is not a "Catch-22" at all. There is no allegation in the Complaint that Delaware's Medicaid residency requirement precludes her from being accepted as a resident at any appropriate facility in the state.

The circumstances that prompted the Seventh Circuit to find constitutional viola-tions of the "right to travel" in Bethesda Lutheran Homes and Services, Inc. v. Leean, 122 F.3d 443 (7th Cir. 1997), illustrate why there is no constitutional violation here. In that case, one group of developmentally disabled persons living outside Wisconsin sought to be admitted into a private ICF/MR facility in Wisconsin. The State of Wisconsin, however, required that no person could be admitted into such a facility (whether public or private) unless (a) the placement was recommended by the social services agency of the "individual's county of residence" and (b) a court order of "protective placement" issued in "the county of residence of the person to be protected." Wisconsin interpreted these state law requirements as referring to "counties" in Wisconsin. 122 F.3d at 445. Thus, to gain admission into any Wisconsin ICF/MR, the out-of-state residents first had to estab-lish residence in Wisconsin – something they could not do because their condition required that they live in an ICF/MR. Id. at 446. The court held that this requirement unconstitutionally burdened their right to travel. Id. at 445-46.

- 9 -

The Seventh Circuit also found a constitutional violation in <u>Bethesda Lutheran</u> for a second group of developmentally disabled persons:  namely, a group of plaintiffs who already lived in the private Wisconsin ICF/MR, having moved there from their parents' homes in Illinois.  <u>See</u> 122 F.3d at 447-48.  As to those plaintiffs, the Medicaid residency rules made them Illinois residents (the residence of their parents at the time of placement) and, as described in the <u>Bethesda Lutheran</u> opinion, neither Wisconsin nor Illinois would pay Medicaid benefits for their care in the Wisconsin ICF/MR.  <u>Id.</u> at 448.  This loss of Medicaid benefits violated the second group's right to travel.  <u>Id.</u> at 448-49.

Neither of the circumstances the Seventh Circuit found to be constitutional violations in <u>Bethesda Lutheran</u> are presented by the allegations in the plaintiff's Complaint here.  First, unlike the out-of-state plaintiffs in <u>Bethesda Lutheran</u>, there is no state law or requirement that bars plaintiff from admission into an appropriate facility in Delaware until she first moves to Delaware and lives somewhere else.  Indeed, as noted above, there is no allegation in the Complaint that no Delaware facility will accept plaintiff as a resident because she currently lives in North Carolina.  Second, unlike the in-state plaintiffs in <u>Bethesda Lutheran</u> whose residence was deemed to be in another state (because those plaintiffs' parents resided in the other state), plaintiff's parents live in Delaware. She would become a Delaware residence – eligible for DDDS services and Delaware Medicaid – as soon as she moves to a Delaware facility.

For these reasons, plaintiff's "right to travel" into Delaware to become a Delaware citizen is not abridged or burdened by the State's Medicaid residency requirement. Count II should therefore be dismissed.[1]

**C.     Delaware's Residency Requirement Does Not Violate the Equal Protection Clause of the Fourteenth Amendment**

In Count III, plaintiff claims that the state defendants' method for determining her eligibility for Medicaid services discriminatorily burdens her right to travel on the basis of disability and wealth, in violation of the Equal Protection Clause of the Fourteenth Amendment.  Plaintiff's equal protection claim should be dismissed *first*, because she is not within the Delaware's territorial jurisdiction; *second*, because the Complaint does not allege any facts that would show that the state defendants are discriminating against her on the basis of disability or wealth; *third*, because neither disability nor wealth is a suspect classification; and *fourth*, because under rational basis review the residency requirement is rationally related to an important government purpose—namely, apportioning limited state resources and services among state residents.

**1.     The Fourteenth Amendment's Equal Protection Clause Applies Only to Those Within a State's Jurisdiction**

Plaintiff cannot invoke the Fourteenth Amendment against the State of Delaware because she is not located in Delaware.  The Fourteenth Amendment prohibits States from denying "to any person <u>within its jurisdiction</u> the equal protection of the laws." U.S. Const., 14th Amend, § 1(emphasis added).   The Ninth Circuit recognized that holding States responsible for providing benefits to those outside its jurisdiction "would be

---

[1] This absence of an actual burden on the "right to travel" would also warrant the dismissal of Count I of the Complaint – assuming that the Privileges and Immunities Clause of Article IV, § 2 applied to the circumstances alleged in the Complaint.

inconsistent with state jurisdictional limitations based on territorial boundaries and the concept of residence, jurisdictional limitations that are a principal feature of our federal system." Fisher v. Reiser, 610 F.2d 629, 634 (9th Cir. 1980).

In Reiser, the Ninth Circuit held that Nevada did not violate equal protection when it provided cost of living increases in workers compensation benefits to recipients living in Nevada, but not to those recipients who were not living in Nevada. The court held that "[i]t is a fact of our federal system that a state is limited both in its competence and its responsibility, to exercising its welfare powers for those persons who are its residents, and perhaps in some cases, those temporarily within its borders." Fisher, 610 F.2d at 633.

Here, plaintiff is clearly not within Delaware's jurisdiction; she is neither a Delaware resident nor is she temporarily within Delaware's borders. To the contrary, she is located in North Carolina, over four hundred miles away. Compl. ¶ 2. As such, she is outside Delaware's "competence and its responsibility." Delaware's laws are inapplicable to her, and therefore she cannot demand their equal application to her under the Fourteenth Amendment.

> 2.    Plaintiff's Complaint Does Not Allege Any Actual Discrimination Against Her on the Basis of Wealth or Disability

Plaintiff's equal protection claim is also deficient because the Complaint does not allege any facts that would show that the Delaware state defendants are discriminating against her on the basis of wealth or disability.

The Medicaid residency requirement – 42 C.F.R. § 435.403 – makes no distinctions based on the wealth, income or indigency of Medicaid applicants. Eligibility for Medicaid does, of course, depend (in part) on a person's income, but there is nothing in

- 12 -

the Complaint that asserts that the state defendants are treating plaintiff any differently than they would anyone else in applying the residency requirement.

The residency requirement does, of course, include distinctions based on whether a person (a) can or cannot indicate intent and (b) is or is not living in an institution. These distinctions, however, have no bearing on the claims asserted in this case because, no matter how they are applied to plaintiff, her State of residency – while she is living in North Carolina – is North Carolina. She, therefore, is not aggrieved by any of the disability-related distinctions that are made in 42 C.F.R. § 435.403 and has no standing to assert any claim challenging them.

Plainly, what the Complaint is seeking is that a _different_ disability-related distinction be applied to her than those contained in 42 C.F.R. § 435.403. That type of claim does not implicate the Equal Protection Clause.

> 3.    Delaware's Process for Determining Medicaid Eligibility is
>        Rationally Related to a Legitimate State Purpose

Even if this case did trigger Fourteenth Amendment equal protection analysis, plaintiff's third claim still fails because _first,_ the residency requirement in question is not subject to heightened review because neither disability nor wealth is a suspect classifica-tion; and _second_, the requirement survives under rational basis review because Dela-ware's process for determining Medicaid eligibility is rationally related to a legitimate state purpose.

> a.    Disability is not a Suspect Classification

Plaintiff alleges that the Medicaid residency requirement discriminates against her based on disability. Compl. ¶ 33. Even if this were true, plaintiff has not stated a claim

- 13 -

upon which she is entitled to relief because disability is not a suspect classification triggering heightened scrutiny.  The Supreme Court definitively held that classifications based on disability do not trigger heightened scrutiny under the Equal Protection Clause. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 442-47 (1985).  The logical result of this holding, according to the Supreme Court, is that "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational."  University of Alabama v. Garrett, 531 U.S. 356, 367 (2001) (citing Cleburne).  Accordingly, plaintiff's disability does not trigger heightened scrutiny under the Equal Protection Clause.

b.    Wealth is not a Suspect Classification

Nor is plaintiff's relative indigency a suspect classification for purposes of equal protection review.  "[W]ealth is not a suspect classification for purposes of the Equal Protection Clause."  United States v. Myers, 294 F.3d 203, 209 (1st Cir. 2002).  "Indigence is not a suspect classification for purposes of equal protection.  Disparate impact based on wealth only requires rational basis review." Giese v. Barnhart, 55 Fed.Appx. 799, 800 (9th Cir. 2002).  The Third Circuit acknowledged this trend, holding that "[w]ealth in itself, however, has never been held to be a suspect classification."  Graham v. Office of Surface Mining Reclamation and Enforcement, 772 F.2d 1106, 1114 (3rd Cir. 1983) (citing, e.g., San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 28-29 (1973) in which the Supreme Court held that indigency, without more, is not a suspect classification.)

- 14 -

c.    A Residency Requirement is Rationally Related to
Delaware's Legitimate Objective of Fairly Apportioning
Limited State Funds

Given that neither distinctions based on indigency nor wealth create suspect

classifications, the residency requirement is subject to rational basis review.  "To

withstand equal protection review, legislation that distinguishes between the mentally

retarded and others must be rationally related to a legitimate government purpose."

Cleburne, 473 U.S. at 446 (recognized as generally applicable to persons with disabilities

by University of Alabama, 531 U.S. at 367).  Delaware's decisions establishing eligibility

for Medicaid is entitled to deference. "When social or economic legislation is a issue, the

Equal Protection Clause allows the States wide latitude."  Cleburne, 473 U.S. at 440.

Delaware's process for determining eligibility for Medicaid is rationally related to

fairly apportioning the State's limited state funds to those residents who need it most.

Plaintiff essentially challenges Delaware's requirement that a person be a Delaware resi-

dent before being eligible for services provided by the State.  At the heart of her lawsuit,

plaintiff challenges a State's right to predicate services on state residency.  Plaintiff

essentially argues that Delaware tramples on her constitutional right to travel and equal

protection by requiring her to be a resident of Delaware before she can be eligible for

placement in Delaware group homes.  The Supreme Court has already spoken clearly on

this issue, however, and determined that bona fide residency requirements do not violate

the Constitution; accordingly, States can indeed limit provision of social services to state

residents.

The Supreme Court has recognized that a bona fide residency requirement neither

violates equal protection nor burdens or penalizes the constitutional right to travel.  "A

requirement of de facto residency, uniformly applied, would not violate any principle of

- 15 -

equal protection." Martinez v. Bynum, 461 U.S. 321, 328 (1983) (quoting Vlandis v. Kline, 412 U.S. 441 (1973)). "It does not burden or penalize the constitutional right of interstate travel, for any person is free to move to a State and to establish residence there. A bona fide residence requirement simply requires that the person *does* establish residence before demanding the services that are restricted to residents." Martinez, 461 U.S. at 328-329.

In Martinez, the Court upheld a Texas statute that permitted school districts to deny tuition-free admission to its public schools for a minor who lived apart from a parent or guardian if his presence in the district was primarily for the purpose of attending the free public schools.  In reaching its decision, the Court disposed of arguments resting on prior cases in which it had struck down statutes that conditioned receipt of social benefits on the length of an applicant's residence.  Those prior cases concerned durational residency requirements which created two (or more) classes of residents: those who had been residents for more than a given period, and those who had been residents for less.  Oft-cited Supreme Court cases regarding residency usually address durational residency requirements rather than bona fide residency requirements.  The Court cautioned that "[t]his is not an empty distinction." Martinez, 461 U.S. at 326.  A durational residency requirement was at issue in Shapiro v. Thompson, 394 U.S. 618 (1969), in which the Supreme Court struck down state legislation denying welfare benefits to residents who had not resided within the state for a year before applying for benefits.  A similar durational requirement was at stake in Saenz v. Roe, 526 U.S. 489 (1999), in which the Court struck down a California statute that limited California residents' welfare benefits to the same amount as those of their prior State of residence

- 16 -

through their first year of residency, if the benefits in their prior State of residence were lower than those in California.

In <u>Martinez</u>, the Supreme Court clarified that residency per se was not the constitutional problem; rather, a constitutional question arose when a statute created two classes of residents. Stated differently, the problem was not residency requirements, but <u>durational</u> residency requirements. The Court reasoned that, "On several occasions the Court has invalidated requirements that condition receipt of a benefit on a minimum period of residence within a jurisdiction, but it always has been careful to distinguish such durational residency requirements from bona fide residency requirements." <u>Id.</u> at 325.

Thus, under the Supreme Court analysis, conditioning receipt of social services on residency is permissible under the Constitution.

V.    **CONCLUSION**

For the foregoing reasons, plaintiff's Complaint should be dismissed for failure to

state a claim on which relief can be granted.


        /s/ Richard M. Donaldson

Richard M. Donaldson
(DE Bar I.D. No. 4367)
Montgomery, McCracken,
  Walker & Rhoads, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE 19801
(302) 504-7800


        /s/ A. Ann Woolfolk

A. Ann Woolfolk
(DE Bar I.D. No. 2642)
Deputy Attorney General
State of Delaware
Department of Justice
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801

Attorneys for Defendants

Of Counsel:

Patrick T. Ryan
Montgomery, McCracken,
  Walker & Rhoads, LLP
123 S. Broad Street
Philadelphia, PA 19109
(215) 772-1500

Date: May 25, 2005