**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MARIANNE DUFFY, by her parents and legal guardians, Sean and Elise Duffy, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO.  1:05-cv-127 GMS |
| VINCENT MECONI, Secretary, Delaware Department of Health & Social Services, in his official capacity, | ) ) ) ) | |
| MARIANNE SMITH, Director, Division of Developmental Disabilities Services, in her official capacity,  and | ) ) ) ) | |
| ELAINE ARCHANGELO, Director, Division of Social Services, in her official capacity, | ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF HER
MOTION FOR SUMMARY JUDGMENT**

MaryBeth Musumeci (#4128)
Dan Atkins (#2970)
Disabilities Law Program
Community Legal Aid Society, Inc.
100 W. 10th Street, Suite 801
Wilmington, DE 19801
(302) 575-0660, ext. 228 or 229
(302) 575-0840 (fax)
mmusumeci@declasi.org
datkins@declasi.org

Sarah Somers
Jane Perkins
National Health Law Program
211 N. Columbia Street
Chapel Hill, NC 27516
(919) 968-6308
(919) 968-8855 (fax)
perkins@healthlaw.org
somers@healthlaw.org

Dated:  August 25, 2005

Attorneys for Plaintiff

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

NATURE AND STAGE OF PROCEEDINGS ............................................................... 1

SUMMARY OF ARGUMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

STANDARD OF REVIEW ........................................................................................... 6

ARGUMENT ................................................................................................................. 6

    I.    The Medicaid Residency Requirements ................................................................ 6

    II.   The Constitutional Right to Travel .................................................................. 7

    III.  The Defendants' application of their Medicaid residency rule to Plaintiff violates the Equal Protection Clause of the Fourteenth Amendment......................................... 9

        A.   Defendants' Medicaid residency rule impermissibly burdens Plaintiff's fundamental right to interstate travel. ....................................................................... 9

        B.   Defendants' residency rule cannot withstand strict scrutiny............................ 11

    IV.  Defendants' Residency Requirement Violates Plaintiff's Right to Travel Secured by the Privileges and Immunities Clause of the Fourteenth Amendment .................... 13

        A.  Defendants' Residency Requirement Prevents Plaintiff From Exercising Her Right to Interstate Travel ......................................................................................... 13

        B.  The Seventh Circuit Court of Appeals Has Struck Down a State Statute That Unconstitutionally Burdened the Right to Interstate Travel of Persons with Significant Disabilities............................................................................................. 15

        C.  Defendants' Assertion that their Residency Rule is a Bona Fide Residency Requirement Does Not Save Their Rule................................................................... 16

    V.   Delaware's Residency Requirement Violates the Privileges and Immunities Clause of Article IV of the U.S. Constitution............................................................. 17

    VI.  The Existence of the Federal Regulation Defining State Residency Does Not Save Delaware's Rule........................................................................................................ 19

CONCLUSION............................................................................................................. 21

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Bethesda Lutheran Homes and Services, Inc., v. Leann,* 122 F.3d 443 (7th Cir. 1997).2, 8, 15, 16, 17, 20

*Boyle v. County of Allegheny Pa.,* 139 F.3d 386 (3d Cir. 1998)........................................ 6

*Doe v. Bolton,* 410 U.S. 179 (1973)................................................................. 18

*Dunn v. Blumstein*, 405 U.S. 330 (1972) ................................................... 8, 9, 10

*Graham v. Richardson*, 403 U.S. 365 (1971) ..................................................11

*Leonard v. Gen. Motors Corp.,* 13 F.3d 674 (3d Cir. 1993)................................. 6

*Maldonado v. Houston,* 157 F.3d 179 (3d Cir. 1998)............................... 2, 8, 19

*Martinez v. Bynum,* 461 U.S. 321 (1983) ......................................................... 17

*Mem'l Hosp. v. Maricopa County*, 415 U.S. 250 (1974)........................ 8, 11, 12

*Olson v. Gen. Elec. Aerospace*, 101 F. 3d 947 (3d Cir. 1996)............................ 6

*Saenz v. Roe*, 526 U.S. 489 (1999) ................................. 2, 7, 8, 10, 12, 13, 14, 17, 18, 19

*Shapiro v. Thompson,* 394 U.S. 618 (1969)....................................... 2, 8, 9, 11, 12, 14, 19

**RULES**

Fed. R. Civ. P. 56(c) ........................................................................................... 6

**REGULATIONS**

42 C.F.R. § 435.403(a)......................................................................................... 6

42 C.F.R. § 435.403(c)...................................................................................... 7, 12

42 C.F.R. § 435.403(i)(1)(i).............................................................................. 7

42 C.F.R. § 435.403 (i)(2)(ii)............................................................................ 7

42 C.F.R. § 435.1009 ......................................................................................... 3

Delaware Division of Social Services Manual (DSSM) § 14110...................... 6

DSSM § § 14110 – 14110.8.2............................................................................ 6

DSSM § 14110.1 ........................................................................................................ 7

DSSM § 14110.2 ........................................................................................................ 7

DSSM §§ 14110.7 ...................................................................................................... 7

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. IV .............................................................................................. 2, 17

U.S. Const. amend. XIV, § 1, cl. 2(i) ................................................................. 2, 13

U.S. Const. amend. XIV, § 1, cl. 2 (iii) ................................................................ 1, 9

## NATURE AND STAGE OF PROCEEDINGS

Marianne Duffy is a 31-year-old Medicaid beneficiary with developmental disabilities who lives in an intermediate care facility for mental retardation (ICF/MR) in North Carolina, while her parents and legal guardians live in Delaware, more than 400 miles away. Though her parents desire it, and it would be in her best interests, Ms. Duffy cannot move to Delaware. Her health and developmental conditions prohibit her from physically relocating to Delaware without first obtaining an appropriate residential placement and services; yet, due to her limited income, she cannot gain access to these services without first meeting the Delaware Medicaid program's residency requirements. Thus, her parents and legal guardians, Sean and Elise Duffy, bring this action on her behalf, seeking declaratory and injunctive relief to remedy this unconstitutional restriction on Ms. Duffy's fundamental constitutional right to interstate travel.

## SUMMARY OF ARGUMENT

1.      Defendants' application of the Medicaid residency rule violates Plaintiff's fundamental right to interstate travel as secured by the Equal Protection Clause of the Fourteenth Amendment, which prohibits states from denying persons within their jurisdictions of the equal protection of the laws. U.S. Const. amend. XIV, § 1, cl. 2(iii). Defendants' rule cannot survive strict scrutiny because they cannot show that the rule is necessary to promote a compelling state interest.

2.      Defendants' application of the Medicaid residency rule to Plaintiff violates her rights under the Privileges and Immunities Clause of the Fourteenth Amendment, which protects the fundamental right of a citizen of the United States to travel interstate.

1

U.S. Const. amend. XIV, § 1, cl. 2(i); *Saenz v. Roe*, 526 U.S. 489, 503 (1999).

Delaware's residency requirement cannot survive strict scrutiny, nor does it qualify as a

bona fide residency requirement.  Moreover, the Seventh Circuit Court of Appeals has

held that a state law with an identical effect upon the right to travel is unconstitutional.

*Bethesda Lutheran Homes and Services, Inc., v. Leann,* 122 F.3d 443 (7th Cir. 1997).

3.    Defendants' application of the Medicaid residency rule to Plaintiff violates

her rights under the Privileges and Immunities Clause of Article IV of the U.S.

Constitution because it discriminates against citizens of other states when there is no

substantial reason for discrimination beyond the fact that they are citizens of other states.

U.S. Const. art. IV; *Saenz,* 526 U.S. at 502.

4.    The existence of the federal Medicaid residency rule does not save

Defendants' rule.  The federal government cannot authorize the states to violate the

Fourteenth Amendment.  *Saenz*, 526 U.S. at 507; *Shapiro v. Thompson,* 394 U.S. 618,

642 (1969).  *See also Maldonado v. Houston,* 157 F.3d 179, 182 (3d Cir. 1998).

Moreover, the Seventh Circuit has found the federal Medicaid residency regulation to be

an unconstitutional violation of the right to travel.  *Bethesda,* 122 F.3d at 447.


## STATEMENT OF FACTS

Plaintiff Marianne Duffy has resided at Carobell, an intermediate care facility for

mental retardation (ICF/MR) group home in Hubert, North Carolina, since 1994.

((Affidavit of Sean Duffy, ¶ 2, attached as Exhibit A) (hereinafter "S. Duffy Aff.));

Carobell, Inc. Psychological Evaluation, Nov. 30, 2004, attached as Exhibit B-1, at 1.)

An ICF/MR is "an institution (or distinct part of an institution) that is primarily for the

2

diagnosis, treatment or rehabilitation of the mentally retarded or persons with related conditions; and provides, in a protected residential setting, ongoing evaluation, planning, 24-hour supervision, coordination, and integration of health or rehabilitative services to help each individual function at his greatest ability." 42 C.F.R. § 435.1009. Marianne's disabilities include blindness, autism, profound mental retardation, and a seizure disorder. (Carobell, Inc. Psychological Evaluation, Exhibit B-1, at 1; Annual Health Summary, December 15, 2004, attached as Exhibit B-2, at 1.) She is non-verbal and requires a highly structured living environment with constant supervision and care due to her susceptibility to seizures, falling, and self-abusive behavior. (Carobell, Inc. Psychological Evaluation, Exhibit B-1, at 1, 4; Annual Health Summary, Exhibit B-2, at 2). Recent evaluations indicate that Marianne experiences "significant periods of self-injurious behavior, including hitting herself on hard surfaces, biting her lip, and digging her fingernails into her skin." (Annual Health Summary, Exhibit B-2, at 2.) "She continues to require constant supervision to prevent injury to herself." *Id.* She needs a highly structured residential setting that can provide the care she needs. Her parents are unable to provide this care and ensure her safety in their own home. (S. Duffy Aff., Exhibit A, ¶ 3).

In April 2001, Marianne's father, Sean Duffy, relocated to Delaware as a result of a new job, and her mother, Elise Duffy, followed in 2002. (S. Duffy Aff., Exhibit A, ¶ 4.) Marianne's parents are her legal guardians, and they want her to live in Delaware so that she can live closer to her family. (S. Duffy Aff., Exhibit A, ¶¶ 1, 4) Marianne has a very close relationship with her parents. (S. Duffy Aff., Exhibit A, ¶ 5.) While Mr. and Mrs. Duffy lived in North Carolina, they would visit with Marianne once a week to go

out to lunch and bring her to their home once a week for a visit. (S. Duffy Aff., Exhibit A, ¶ 5.)  They also could drop in at the group home unannounced to check on how Marianne was doing and monitor her care.  (S. Duffy Aff., Exhibit A, ¶ 5.)  Now that Marianne has been unable to move to Delaware, Mr. and Mrs. Duffy must travel to North Carolina to visit her.  Marianne is now only able to see her parents every three months. (S. Duffy Aff., Exhibit A, ¶ 5.)  She has no other way to communicate with her parents because she is nonverbal and never initiates speech independently.  (S. Duffy Aff., Exhibit A, ¶ 5; Carobell, Inc. Psychological Evaluation, Exhibit B-1, at 1; Annual Health Summary, Exhibit B-2, at 3; October 22, 2002 letter from Sean Duffy to Roy Lafontaine, attached as Exhibit A-6, at 2)

Marianne receives Medicaid benefits in North Carolina.  Mr. and Mrs. Duffy have applied for services through Delaware's Division of Developmental Disabilities Services (DDDS).  (S. Duffy Aff., Exhibit A, ¶ 6; April 17, 2001 letter from Susan Morrison Smith to the Duffys, attached as Exhibit A-3; September 3, 2002 letter from Sean Duffy to Susan Smith, attached as Exhibit A-4).  According to DDDS, Marianne's application for DDDS services has been placed on "inactive status" because, although Marianne was determined to meet the clinical eligibility criteria, she had to establish Delaware residency before she could access DDDS services.  (S. Duffy Aff., Exhibit A, ¶ 6; Defendants' Response to Plaintiff's First Set of Interrogatories, Interrogatory Nos. 2, 6, attached as Exhibit C; Defendants' Response to Plaintiff's First Requests for Admission, Request No. 1, attached as Exhibit D; April 17, 2001 letter from Susan Morrison Smith to the Duffys, Exhibit A-3; September 30, 2002 letter from Roy A. Lafontaine to Sean Duffy, attached as Exhibit A-5.)

After Delaware's initial denial of Marianne's DDDS application, Mr. and Mrs. Duffy pursued an internal DDDS appeal on Marianne's behalf.  (S. Duffy Aff., Exhibit A, ¶ 8; June 2, 2003 letter from Mary T. Anderson to Elise Duffy, attached as Exhibit A-8; June 11, 2003 Hearing Appeal from the Duffys, attached as Exhibit A-9.)  In July 2003, the DDDS Director Marianne Smith determined that Marianne was not a state resident and her residential placement needs were not "urgent" according to the state registry system and, therefore, determined that Marianne would not be provided with community residential services.  (Defendants' Response to Plaintiff's First Set of Interrogatories, Interrogatory Nos. 3, 4, 6, Exhibit C; Defendants' Response to Plaintiff's First Requests for Admission, Requests Nos. 1, 2, Exhibit D.)  Marianne was, however, assigned a DDDS case manager, and her parents were instructed to contact DDDS if Marianne moved to Delaware and became a state resident.  (S. Duffy Aff., Exhibit A, ¶ 8; Defendants' Response to Plaintiff's First Set of Interrogatories, Interrogatory Nos. 4, 6, Exhibit C; July 3, 2003 letter from Marianne Smith to Mr. and Mrs. Duffy, attached as Exhibit A-10.)

Marianne is stuck in North Carolina.  She cannot move to Delaware to establish residency because she must have an appropriate residential placement and services into which she can move when she arrives.  (S. Duffy Aff., Exhibit A, ¶ 9.)  Marianne's mother has visited the Mary Campbell Center, an ICF/MR in Delaware, which costs between $275.00 to $300.00 per day for private pay patients. (S. Duffy Aff., Exhibit A, ¶ 11.) She cannot access such a placement and services because she cannot afford to pay for it without the assistance of Medicaid.  (S. Duffy Aff., Exhibit A, ¶ 10.)  Thus, Delaware's application of its residency rule completely forecloses her ability to exercise

her constitutional right to travel. Delaware's rejection of Marianne's application for services based upon her failure to first establish state residency is unconstitutional.

## STANDARD OF REVIEW

A party may move for summary judgment when there are no genuine issues of material fact. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the case, and an issue is genuine if a reasonable fact-finder could return a verdict in favor of the nonmoving party. *See Leonard v. Gen. Motors Corp.,* 13 F.3d 674, 679 (3d Cir. 1993) (citation omitted). The court may consider pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. Fed. R. Civ. P. 56(c); *Boyle v. County of Allegheny Pa.,* 139 F.3d 386, 393 (3d Cir. 1998). The nonmoving party must demonstrate the existence of a material fact which provides adequate evidence—not simply allegations—for a fact-finder to find in its favor. *See Olson v. Gen. Elec. Aerospace*, 101 F. 3d 947, 951 (3d Cir. 1996) (citation omitted).

## ARGUMENT

### I.    The Medicaid Residency Requirements

Federal Medicaid regulations require states to provide Medicaid to eligible residents of the state. 42 C.F.R. § 435.403(a). Delaware state policies require that an individual be a resident of Delaware before she can receive Medicaid-covered services.[1] Delaware Division of Social Services Manual (DSSM) § 14110 (attached as Exhibit E).

---

[1] The Delaware Division of Social Services Manual tracks the federal criteria for determining state residency. DSSM § § 14110 – 14110.8.2. *See also,* Defendants' Brief in Support of their Motion to Dismiss at 4, D.I. 11. The DSSM provisions attached as Exhibit E are printed from the March, 2005 Division of Social Services Policy Manual CD-ROM distributed by the Division.

Generally speaking, the state of residence of an individual over age 21 is the state in which she is living with the intent to remain permanently or indefinitely. 42 C.F.R. § 435.403(i)(1)(i); DSSM § 14110.1. Special rules apply to individuals who are living in institutions. The state of residence for an individual over the age of 21 who lives in an institution, and who became incapable of indicating intent before age 21, is the state of residence of the parent or legal guardian "at the time of placement" in the institution. 42 C.F.R. § 435.403 (i)(2)(ii); DSSM §§ 14110.7. An individual is considered incapable of indicating intent if:

> [T]he individual has an IQ of 49 or less or has a mental age of 7 or less, based on tests acceptable to the mental retardation agency in the State; is judged legally incompetent; or is found incapable of indicating intent based on medical documentation obtained from a physician, psychologist, or other person licensed by the State in the field of mental retardation.

42 CFR § 435.403 (c); *see also* DSSM § 14110.2.

As a result of her significant disabilities, Marianne is and has always been incapable of indicating intent within the meaning of the federal and Delaware residency rule. Her parents were living in North Carolina when she was placed at Carobell. Thus, under the federal and Delaware rules and despite the contrary intent expressed by the federal agency, she is and will always remain a North Carolina resident regardless of the residence and desire of her parents and legal guardians.

## II.    The Constitutional Right to Travel

It has long been recognized that the right to travel is fundamental, "a virtually unconditional personal right, guaranteed by the Constitution to us all." *Saenz v. Roe,* 526 U.S. 489, 498 (1999). (concurring opinion). In its most recent case addressing the issue,

the Supreme Court identified "at least" three separate components of this right: (1) the right of a citizen to enter and leave another state; (2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second state; and (3) for those travelers who elect to become permanent residents, the right to be treated like citizens of other states.  *Saenz,* 526 U.S. at 500.  "It is a privilege of citizenship of the United States, protected from state abridgment, to enter any State of the Union, either for temporary sojourn or for the establishment of permanent residence therein and for gaining resultant citizenship thereof.  If national citizenship means less than this, it means nothing."  *Id.* at 511 (citation omitted).  S*ee also Mem'l Hosp. v. Maricopa County*, 415 U.S. 250, 255 (1974); *Maldonado v. Houstoun*, 157 F.3d 179, 185 (3d Cir. 1998).  Because the right to travel is fundamental, a rule that burdens or penalizes that right is subject to strict scrutiny and will be struck down if it is not necessary to promote a compelling governmental interest.  *Saenz*, 526 U.S. at 504-05; *Dunn v. Blumstein*, 405 U.S. 330, 339 (1972); *Shapiro,* 394 U.S. at 634.  To trigger strict scrutiny, such a penalty must be significant, such as a denial of one of the "basic necessities of life," for example, medical care or public assistance benefits.  *Maricopa County,* 415 U.S. 250 at 259.

Though this right to travel is "firmly embedded in our jurisprudence," it is not mentioned explicitly in the Constitution.  *Saenz,* 526 U.S. at 498.  In various cases, courts have found that the right to travel can be derived from the Equal Protection Clause of the Fourteenth Amendment, the Privileges and Immunities Clauses of Article IV and of the Fourteenth Amendment, and the Commerce Clause.  *See Saenz,* 526 U.S. at 499; *Maldonado,* 157 F.3d at 184-85.  *See also Bethesda Lutheran Homes and Services, Inc. v. Leean,* 122 F.3d 443, 445 (7th Cir. 1997).  In this case, Plaintiff has alleged claims that

Defendants' manner of applying its residency requirement violates the Equal Protection Clause and the Privileges and Immunities Clauses of Article IV and the Fourteenth Amendment.  (Complaint, ¶¶ 28 – 32, D. I. 1.)  Proof of a violation of any one of these constitutional provisions  allows this court to grant Plaintiff the relief she seeks.  As set forth below, Defendants are violating each one of these provisions.

### III.    The Defendants' application of their Medicaid residency rule to Plaintiff violates the Equal Protection Clause of the Fourteenth Amendment.

#### A.  Defendants' Medicaid residency rule impermissibly burdens Plaintiff's fundamental right to interstate travel.

Under the Equal Protection Clause, no state may "deny any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1, cl. 2 (iii). This Clause applies to state actions that create classifications of individuals and subject those groups to different treatment.  When asserting a violation of the Equal Protection Clause, a plaintiff is entitled to strict scrutiny if she can demonstrate either that the classification at issue burdens the exercise of a fundamental right *or* that it operates to the disadvantage of some suspect class.[2]  *See, e.g., Shapiro*, 394 U.S. at 631, 634. In either case, the classification can be upheld only if the state proves that it is narrowly tailored. *Id.; see also Maldonado,* 157 F.3d at 184.  As discussed above, it is well-settled that the right to travel is fundamental.  *See, e.g., Dunn,* 405 U.S. at 338.  The compelling interest

---

[2] In their Motion to Dismiss, Defendants argued that the Plaintiff cannot succeed in her claim under the Equal Protection Clause because there has been no discrimination against a suspect class.  (Defendants' Opening Brief in Support of their Motion to Dismiss, at 12, D.I. 11.)  This is immaterial, because Plaintiff has not asserted that she is a member of a suspect class.  Rather, she has shown that the challenged rule burdens her exercise of a fundamental right, which is an independent violation of the Equal Protection Clause.  *See* Plaintiff's Answering Brief in Opposition to Motion to Dismiss, at 10-11 (D.I.  17,18).

test is therefore triggered whenever a classification burdens, deters or "*penalizes* the exercise of that right." *Dunn,* 405 U.S. at 340 (emphasis in original); *see also Saenz*, 526 U.S. at 504-05.

In this case, Defendants require that Ms. Duffy first become a Delaware state resident, by physically relocating to Delaware, before her application for Medicaid services will be activated. (Interrogatory Nos, 2, 6, Exhibit C; Admission Request No. 1, Exhibit D). Ms. Duffy has shown that Defendants' application of its residency requirement violates her right to interstate travel as secured by the equal protection clause. First, her parents and legal guardians wish her to move to Delaware. (S. Duffy Aff., Exhibit A, ¶ 4.) Second, because of her disabilities, she cannot live outside of an appropriate residential placement and without necessary services. (S. Duffy Aff., Exhibit A, ¶ ¶ 2,3; Carobell, Inc. Psychological Evaluation., Ex. B-1 at 14; Annual Health Summary, Ex. B-2 at 2) (describing her need for a highly structured living environment with constant supervision and care due to her susceptibility to seizures, falling and self-abusive behavior). Third, due to her limited income, she can only gain access to an appropriate placement through Medicaid. (S. Duffy Aff., Exhibit A, ¶ 10.) Also, it is undisputed that, unlike her, other prospective Delaware residents in need of institutional care who either have the financial means to pay for a private placement or the capacity to form intent are free to exercise their right to travel to and settle in the state. (Complaint, ¶ 27, D.I. 1.) Thus, Defendants' application of its residency requirement results in different classes of potential residents and completely prevents Ms. Duffy and others like her from exercising their fundamental right to interstate travel.

**B.        Defendants' residency rule cannot withstand strict scrutiny.**

Defendants assert that their residency determination process is justified by a desire to "fairly apportion the State's limited state funds to those residents who need it most." (Motion to Dismiss, at 15, D.I. 11.) This desire is not a sufficiently compelling interest to support the residency rule. In fact, though the Supreme Court has acknowledged that states have an interest in conserving fiscal resources, it has never held that fiscal justifications similar to the ones Defendants advance are compelling enough to enable a rule to survive strict scrutiny. For example, in *Maricopa County*, the Court found that a desire to prevent an influx of newcomers and "dilute the quality of services provided to long time residents" was not sufficiently compelling. 415 U.S. at 266; *see also Shapiro,* 394 U.S. at 632-33 (rejecting similar justification). It has also rejected the related contention that the goal of protecting long time state residents who have contributed to the state through taxes justified such restrictions.[3] *Maricopa County,* 415 U.S. at 266; s*ee also Shapiro*, 394 U.S. at 632-33; *Graham v. Richardson*, 403 U.S. 365 (1971) (invalidating law restricting welfare benefits to United States citizens, and holding that "a concern for fiscal integrity is no more compelling a justification for the questioned classification in these cases than it was in *Shapiro*"). In sum, the Court found that attempting to conserve fiscal resources by employing means that burden the right to travel of a class of individuals is forbidden by the Equal Protection Clause. *Maricopa County,* 415 U.S. at 266-67, *see also Shapiro,* 394 U.S. at 632-34.

Defendants also cannot show that the means they have employed are necessary to achieve their purported goal. First, their process for determining eligibility only

---

[3] The goal of making budgets more predictable was also rejected as unsupported and implausible. *Shapiro,* 394 U.S. at 634.

conserves fiscal resources by deterring low income people with disabilities from migrating to Delaware. It is well-settled that such a goal is "unequivocally impermissible." *Saenz,* 526 U.S. at 506; *see also Shapiro,* 394 U.S. at 631; *Maricopa County,* 415 U.S. at 263. Second, the amount of money "conserved" by their policy seems unlikely to be substantial. It is highly unlikely that a significant number of individuals are in the same situation as Marianne Duffy. The only prospective state residents who would be affected by a positive decision for the Plaintiff would be individuals who (1) have parents or guardians living in Delaware; (2) cannot live outside of an ICF/MR; (3) cannot afford a comparable private placement; *and* (4) lack the capacity to indicate intent because they either (a) have an I.Q. of 49 or less or a mental age of 7 years or less; (b) are judged legally incompetent; or (c) are found incapable of indicating intent based on medical documentation from a psychiatrist, psychologist or other individual licensed by the state in the field of mental retardation. *See* 42 C.F.R. § 435.403(c). It defies common sense and experience to suggest that there are many people who fall into this category. Accordingly, the fiscal impact of allowing these individuals to migrate to the state can hardly be significant.

    In sum, the Defendants' residency requirement violates the Equal Protection Clause of the Fourteenth Amendment.

**IV.  Defendants' Residency Requirement Violates Plaintiff's Right to Travel Secured by the Privileges and Immunities Clause of the Fourteenth Amendment**

> **A.  Defendants' Residency Requirement Prevents Plaintiff From Exercising Her Right to Interstate Travel**

The Privileges and Immunities Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States. . . ." U.S. Const., amend. XIV, § 1, cl. 2(i); *see also Saenz*, 526 U.S. at 503.  "One of the privileges conferred by this Clause is that a citizen of the United States can . . . become a citizen of any State of the Union by a bona fide residence therein, with the same rights as other citizens of that state." *Saenz,* 526 U.S. at 503 (citation omitted).  As is the case when the Equal Protection Clause is implicated, a rule that impacts a right secured by the Privileges and Immunities Clause of the Fourteenth Amendment is subject to strict scrutiny, and Defendants must demonstrate that the rule is necessary to advance a compelling government interest. *Saenz,* 526 U.S. at 504-05.

Ms. Duffy has demonstrated that Defendants' residency rule violates her fundamental right to interstate travel secured by the Privileges and Immunities Clause of the Fourteenth Amendment.  First, she is obviously a citizen of the United States.  (S. Duffy Aff., Exhibit A, ¶ 2.)  Second, Defendants' application of the Medicaid residency requirement prevents her from exercising the privilege of moving to Delaware because she cannot live outside of an institutional setting without appropriate services but cannot afford those services without Medicaid coverage.  (S. Duffy Aff., Exhibit A, ¶ ¶ 2, 3, 9, 10.)

In *Saenz v. Roe,* 526 U.S. 489 (1999), the Supreme Court found that the plaintiffs had proven that California's practice of providing a reduced level cash assistance benefits to new residents violated this clause, because it imposed a penalty on recently arrived citizens who were exercising their right to travel.  Here, Ms. Duffy has established that Delaware's rule completely abridges that same right.[4]  She cannot travel to Delaware and establish a home there because her disabilities prevent her from relocating without first securing an appropriate residential placement and services.  She is unable to privately pay for these services, and her only means of securing them are through Delaware's Medicaid program.  (S. Duffy Aff., Exhibit A, ¶ ¶ 2, 3, 9, 10).  However, Delaware's requirement that she first be a Delaware resident before her application for services will be activated prevents her from obtaining the services that she needs in order to effectuate her move.  Thus, her right to travel as secured by this clause has been impermissibly burdened.

Moreover, the residency requirement cannot withstand strict scrutiny.  In *Saenz,* the Court rejected each of the justifications advanced by the state as insufficient to support the residency requirements.  The Court rejected the taxpayer contribution argument that had failed in *Shapiro.*  526 U.S. at 507.  The claim that the restriction would save the state more than $10 million was also unavailing.  *Id.*  Defendants' justification for Delaware's residency determination process – saving money – is similarly inadequate.  *See* Section III.B, *supra*.

---

[4] Plaintiff's right to travel is more significantly limited by Defendants' residency rule than the plaintiffs in *Saenz.*  Whereas the rule at issue in *Saenz* affected only citizens who had completed their interstate travel and thus arguably only incidentally affected the right, Defendants' residency rule actually prevents travel and migration.  Because the state residency requirements at issue in *Saenz* were found to violate the Privileges and Immunities Clause of the Fourteenth Amendment, Defendants' residency rule, which completely forecloses her ability to travel interstate, cannot be constitutional.

14

**B.   The Seventh Circuit Court of Appeals Has Struck Down a State Statute That Unconstitutionally Burdened the Right to Interstate Travel of Persons with Significant Disabilities.**

The Seventh Circuit Court of Appeals in *Bethesda Lutheran Homes and Services, Inc. v. Leean* struck down a state statute that, like the residency requirement at issue in this case, completely prevented the plaintiffs from migrating to Wisconsin.[5]  122 F.3d 443 (7th Cir. 1997).  The *Bethesda* plaintiffs, a group of seven profoundly retarded individuals in need of services from an ICF-MR, challenged state and federal statutes and regulations preventing them from establishing residency in Wisconsin.  Four of the plaintiffs, like Ms. Duffy, resided in other states.  Before any individual could enter an ICF-MR, a Wisconsin statute required a protective placement order to be issued in response to a petition "filed in the county of residence of the person to be protected."  *Id.* at 445.  This requirement prevented individuals who did not live in a Wisconsin county from filing a petition.  The court found that this requirement violated the right to travel because it required individuals to move to the state before they entered the ICF-MR, which would be impossible for them because of their disabilities.  The court observed: "[s]ince anyone who is approved for protective placement is by definition incapable of living outside [an ICF-MR] or its equivalent in restrictiveness, it is unclear where in Wisconsin the applicant for admission is supposed to live while the placement petition being processed."  *Id.* at 446.   Because this law interfered with the right to travel, the court reasoned, justification was required.  The court rejected both administrative and

---

[5] The court did not identify a source for the right to travel; however, its analysis tracks that employed under the Privileges and Immunities Clause of the Fourteenth Amendment.

fiscal justifications as insufficient.  *Id.* at 446-47.  And, because no plausible justification was offered for the law, the court struck it down.[6]

Ms. Duffy faces a similar predicament.  Her parents and legal guardians want her to move to Delaware.  (S. Duffy Aff., Exhibit A, ¶ 4.)  She has disabilities and behaviors that make it impossible for her to live safely without an appropriate residential placement and services.  (S. Duffy Aff., Exhibit A, ¶ ¶ 2, 3; Ex. B-1 at 1, 4; Ex. B-2 at 2.)  She cannot access an appropriate placement and services without Medicaid coverage.  (S. Duffy Aff., Exhibit A, ¶ ¶ 9, 10.)   However, she is being required to move to Delaware before she can be found eligible for Medicaid.  In sum, both the protective placement rule at issue in *Bethesda* and Delaware's residency rule have the identical effect:  Both states' rules bar disabled individuals who need ICF-MR services from moving into their respective states.  Moreover, as with the illegal Wisconsin requirement, the Defendants here have no compelling justification for their rule. (See discussion, Section III.B, *supra*).

### C.  Defendants' Assertion that their Residency Rule is a Bona Fide Residency Requirement Does Not Save Their Rule.

Defendants claim that their residency requirement is a bona fide residency requirement.  (Motion to Dismiss at 12, D.I. 11.)  A bona fide residency requirement, however, simply:

---

[6] Defendants have claimed that *Bethesda Lutheran Homes* is distinguishable and does not support Plaintiff.  (Defendants' Opening Brief in Support of Motion to Dismiss, at 9-10, D.I. 11.) Defendants are incorrect.  It is true that the non-resident *Bethesda* plaintiffs' situation differs slightly from Ms. Duffy's.  The protective placement rule at issue in *Bethesda* prevented individuals from moving to Wisconsin regardless of whether they could pay privately for ICF-MR care, while Delaware's rule only bars individuals who cannot pay for such care without Medicaid coverage.  This distinction does not save Delaware's requirement, however, because Plaintiff cannot afford to pay for a private placement.

requires that a person  . . . establish residence before demanding the services that are restricted to residents.  . . . It does not burden or penalize the constitutional right of interstate travel, *for any person is free to move to a state and to establish residence there.*

*Martinez v. Bynum,* 461 U.S. 321, 329 (1983). (emphasis added).  As a result of the residency rule at issue here, by contrast, Ms. Duffy is not free to move to Delaware.

      *Bethesda Lutheran* is again instructive.  The *Bethesda* court cited *Martinez,* acknowledging that states do not have to provide benefits to non-residents, but noted that the *Bethesda* plaintiffs conceded that they had to be Wisconsin residents in order to be eligible for Medicaid coverage in that state.  122 F.3d at 448.  However, the court recognized that the plaintiffs simply argued that the Medicaid regulations prevented them from establishing Wisconsin residency.  The court held that "the power of a state to confine its public services to residents does not entitle the state to establish arbitrary barriers to a nonresident's becoming a resident."  *Id.*  (citation omitted).  The same is true in this case.  Ms. Duffy does not dispute that she must establish residence in Delaware to be eligible for Medicaid benefits.  Rather, she has shown that the manner in which Defendants apply the residency requirement prevents her from actually doing so.


**V.        Delaware's Residency Requirement Violates the Privileges and Immunities Clause of Article IV of the U.S. Constitution.**

      Article IV, § 2, provides that:  "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  This clause bars "discrimination against citizens of other States when there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States."  *Saenz,* 526 U.S. at 502.  The Supreme Court has recognized that the clause provides protection for

non-residents who are seeking medical services. *Id.*, *see also Doe v. Bolton,* 410 U.S. 179, 200 (1973).

Defendants' residency requirement unconstitutionally burdens her right to travel under the Privileges and Immunities Clause of Article IV. First, Ms. Duffy is currently a citizen of North Carolina. (S. Duffy Aff., Exhibit A, ¶ 2.) Second, her parents and legal guardians wish for her to come to Delaware to live and avail herself of the privileges and immunities afforded to Delaware citizens. (S. Duffy Aff., Exhibit A, ¶ 4.) Finally, Ms. Duffy has shown that, as a result of her disabilities and limited income, she is unable to come to Delaware to establish residency without first obtaining a Medicaid-funded residential placement. (S. Duffy Aff., Exhibit A, ¶¶ 2, 3, 9, 10.) Thus, Ms. Duffy has demonstrated that her right to travel is completely foreclosed as a result of Defendants' rule.

As discussed above, Defendants have no justification for the contested residency requirement that can withstand constitutional scrutiny. Defendants argue that the protections of this Privileges & Immunities Clause apply "only" to citizens of one state traveling temporarily to another State. (Motion to Dismiss at 6, D.I. 11.) It is true that, in *Saenz*, the Supreme Court recognized that the clause protects the "right to be treated as a welcome visitor." 526 U.S. at 500. However, the Court did not hold that the clause protects only visitors. In fact, the Court stated that this clause also protects the right of "the citizen of State A who ventures into State B to settle there and establish a home." 526 U.S. at 502 (citation omitted). This is precisely what Ms. Duffy seeks to do, and according to the clear language of the Supreme Court, this is a fundamental right encompassed within the Privileges and Immunities Clause of Article IV.

**VI.     The Existence of the Federal Regulation Defining State Residency Does Not Save Delaware's Rule.**

The fact that the Defendants have adopted the federal Medicaid definition of residency does not save its own residency requirement from being struck down.  In *Saenz,* the defendant argued that the durational residency requirements at issue should be found constitutional because they had been approved by federal statute.  526 U.S. at 507-08.  However, the Court rejected this suggestion because "Congress may not authorize the States to violate the Fourteenth Amendment."  *Id.*  The Court has also noted that "the protection afforded to the citizen by the Citizenship Clause of [the Fourteenth Amendment] is a limitation on the powers of the National Government as well as the States."  *Id.* at 507-08.   Similarly, in *Shapiro*, the defendants argued that a federal statute had approved the use of one-year waiting periods for public assistance.  While the Court did not accept the defendants' characterization of the federal law, it also stated that "even if  . . .  the constitutionality of [federal statute] is somehow at issue here, . . . the provision, insofar as it permits the one-year-waiting-period requirement, would be unconstitutional.  Congress may not authorize the States to violate the Equal Protection Clause."  394 U.S. at 641.

In *Maldonado*, though the Third Circuit did not reach the issue of the constitutionality of the federal statute, it did not hesitate to strike down Pennsylvania's durational residency requirements, despite observing that the state "received considerable reassurance" from federal welfare reform legislation authorizing states to treat new residents differently than longer-term residents.  157 F.3d at 182.  Moreover, not only is

Congress powerless to authorize states to violate the right to travel, it must itself also honor that right. For example, in *Bethesda Lutheran,* the Seventh Circuit held that the federal Medicaid residency requirement at issue here violates the fundamental right to travel. Four of the *Bethesda Lutheran* plaintiffs were living in an institution in Wisconsin. Because they had never had the capacity to form intent and their parents had placed them in the institution when the parents were living in Illinois, these plaintiffs were residents of Illinois under the federal regulation. 122 F.3d at 447. Thus, despite the fact that they were physically located in Wisconsin, these plaintiffs were unable to establish residency there. Because the regulation prevented these plaintiffs from establishing that they were Wisconsin residents, the Court found it unconstitutional. *Id.* at 450.

Similarly, this same rule prevents Marianne from establishing residency in Delaware, and in fact, prevents her from physically locating in the state. Defendants have acknowledged that Marianne meets the clinical eligibility for services and that the only barrier is that she is not a state resident. Moreover, Defendants admit that "it is readily apparent . . . that Marianne cannot move to Delaware for the purpose of establishing residency unless provisions are made to relocate her directly from her current placement to one that would be able to support her needs." (Letter from Vincent Meconi to Elise Duffy, Feb. 4, 2004, attached as Exhibit A-12). Thus, the only barrier to her exercise of her fundamental right to interstate travel is the residency requirement. The justifications that Defendants offer for the residency requirement have repeatedly failed meet the demands of strict scrutiny review. Thus, this court should find that the

Delaware residency requirement violates Marianne Duffy's fundamental right to interstate travel in violation of the U.S. Constitution.

## **CONCLUSION**

For the reasons set forth above and in the pleadings and other evidence, the Plaintiff requests that this court grant her motion for summary judgment.

Dated:  August 25, 2005                                        Respectfully submitted,


*/s/ MaryBeth Musumeci*
MaryBeth Musumeci (#4128)
Dan Atkins (#2970)
Disabilities Law Program
Community Legal Aid Society, Inc.
100 W. 10th Street, Suite 801
Wilmington, DE 19801
(302) 575-0660, ext. 228 or 229
(302) 575-0840 (fax)
mmusumeci@declasi.org
datkins@declasi.org

Jane Perkins
Sarah Somers
National Health Law Program
211 N. Columbia Street
Chapel Hill, NC 27516
(919) 968-6308
(919) 968-8855 (fax)
perkins@healthlaw.org
somers@healthlaw.org

Attorneys for Plaintiff,
Marianne Duffy

21