**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MARIANNE DUFFY, by her parents and legal guardians, Sean and Elise Duffy, <br><br>  Plaintiff, <br><br> v. <br><br> VINCENT MECONI, Secretary, Delaware Department of Health & Social Services, in his official capacity, <br><br> MARIANNE SMITH, Director, Division of Developmental Disabilities Services, in her official capacity, ~~and~~ <br><br> ELAINE ARCHANGELO, Director, Division of Social Services, in her official capacity, **and** <br><br> **HARRY HILL, Director, Division of Medicaid and Medical Assistance,** <br><br>  Defendants. | NO. 05-cv-127-GMS |

**FIRST AMENDED COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF[1]**

**INTRODUCTION**

1. This case is brought by Sean and Elise Duffy, who are the parents and legal guardians of Marianne Duffy, a 31-year-old Medicaid beneficiary with developmental disabilities including blindness, seizures, autism, and mental retardation. Pursuant to policy and practice, the Defendants have denied Medicaid eligibility to Marianne on the grounds that she is not a state resident. The Defendants' policies violate the United States Constitution.

---

[1] Additions to the complaint are in boldface type. Deletions from the complaint are indicated by strikeouts.

2. Marianne Duffy's parents relocated from North Carolina to Delaware in 2001, after her father accepted a job in Wilmington, Delaware. Not wanting to leave Marianne behind and mindful that interaction with her parents is beneficial to Marianne's health and developmental status, the Duffys applied to the Defendants to obtain residential placement and services through Delaware's Medicaid program. The Defendants denied Marianne Duffy's application on the grounds that she is not a state resident. This denial creates a Catch 22: Marianne's health and developmental conditions prohibit her from physically relocating to Delaware without first obtaining appropriate residential placement and services; yet, due to her limited income, she cannot gain access to those services without first meeting the Delaware Medicaid program's residency requirements. As a result, Marianne Duffy currently lives in an intermediate care facility for mental retardation (ICF/MR) in North Carolina, 472 miles from her parents.

3. Marianne Duffy seeks declaratory and injunctive relief to remedy this unconstitutional restriction on her fundamental constitutional right to interstate travel.

## JURISDICTION

4. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, which provides for original jurisdiction over all civil suits involving questions of federal law, and 28 U.S.C. §§ 1343(3) and (4), which grant this Court original jurisdiction in all actions authorized by 42 U.S.C. § 1983 to redress the deprivation under color of State law of any rights, privileges, or immunities guaranteed by the United States Constitution and laws.

5. Marianne Duffy seeks declaratory, injunctive, and other appropriate relief, pursuant to 28 U.S.C. §§ 2201 and 2202, Fed. R. Civ. P. 57 and 65, and 42 U.S.C. § 1983.

6. Venue for this action lies in this District pursuant to 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to Plaintiff's claims occurred here, and the Defendants may be found here.

**PARTIES**

A. The Plaintiff

7. Marianne Duffy is a 31-year old Medicaid beneficiary who currently resides in an ICF/MR group home in Hubert, North Carolina. Through her parents and legal guardians, Sean and Elise Duffy, Marianne Duffy seeks Medicaid-covered services in Delaware. Marianne Duffy is unable to move to Delaware without first obtaining an appropriate ICF/MR or community-based residential placement **and necessary medical services** through the Medicaid program.

B. The Defendants

8. Defendant Vincent Meconi is the Secretary of the Delaware Department of Health & Social Services (DHSS), including the Division of Developmental Disabilities Services and the Division of Social Services. 29 Del C. §§ 7902-7903; 31 Del C. §§ 104 and 503. DHSS is the single state agency responsible for implementing the Medicaid program in Delaware, including determining eligibility for and payment of assistance in Delaware's Medicaid program. 31 Del. C. §§ 503(b) and 505(3). He is sued in his official capacity.

9. Defendant Marianne Smith is the Director of the Division of Developmental Disabilities Services (DDDS), and as such, is responsible for the administration and operation of DDDS. 29 Del. C. § 7909A. DDDS's statutory charge is to "provide services and supports to individuals with developmental disabilities and their families

3

which enable them to make informed choices that lead to an improved quality of life and meaningful participation in their communities." 29 Del. C. § 7909A(b). DDDS's statutory powers include the provision of community-based services, including neighborhood homes and supported living, and the provision of intermediate care facility residential services. 29 Del. C. § 7909A(c)(1) and (4); 16 Del. C. § 5525. She is sued in her official capacity.

10. Defendant Elaine Archangelo is the Director of the Division of Social Services (DSS) and as such, is responsible for the administration and operation of DSS. 29 Del. C. §§ 7093 and 7911. DSS administers public assistance programs in Delaware, including Medicaid **prior to July 1, 2005**. 29 Del. C. § 7911. She is sued in her official capacity.

11. **Defendant Harry Hill is the Director of the Division of Medicaid and Medical Assistance (DMMA). DMMA was created when the Delaware Legislature approved the DHSS reorganization plan as part of the State Fiscal Year 2006 Budget. See House Bill 300, § § 1, 211(a) (creating the new DMMA to "consolidate medical assistance services and administration"). As of July 1, 2005, DMMA has direct responsibility for administering Delaware's Medicaid program and has responsibility for all Medicaid services in the State. See Title XIX Medicaid State Plan Amendment at Attachments 1.2-A and 1.2-B, 9 De. Reg. 802 (Nov. 1, 2005). DMMA is responsible for managing Delaware's Medicaid program, including program and policy development, and issuing Medicaid identification cards to SSI recipients. See id at Attachment 1.2-D.**

**LEGAL FRAMEWORK**

A. **The Medicaid Program**

~~11.~~ **12.** In 1965, Congress enacted Title XIX of the Social Security Act, 42 U.S.C. § 1396-1396v, establishing Medicaid, a medical assistance program cooperatively funded by the federal and state governments.

~~12.~~ **13.** All eligible residents of a state are entitled to Medicaid coverage. Federal regulations set forth detailed criteria for determining residency for Medicaid purposes. See 42 C.F.R. § 435.403. In general, a person's state of residence depends upon where the person is living with the intent to remain permanently or indefinitely at the time she applies for Medicaid.

~~13.~~ **14.** The regulations set out a different test for the determination of state residency for persons residing in institutions, including institutions for the mentally retarded or persons with related conditions (ICF/MRs). An ICF/MR is "an institution (or distinct part of an institution) that is primarily for the diagnosis, treatment or rehabilitation of the mentally retarded or persons with related conditions; and provides, in a protected residential setting, ongoing evaluation, planning, 24-hour supervision, coordination, and integration of health or rehabilitative services to help each individual function at his greatest ability." 42 C.F.R. § 435.1009.

~~14.~~ **15.** The determination of state residency for a person who lives in an institution depends in part upon whether the person is incapable of indicating intent, and whether she became incapable of doing so prior to the age of twenty-one. An "individual is considered incapable of indicating intent if the individual has an IQ of 49 or less or has a mental age of 7 or less, based on tests acceptable to the mental retardation agency in the

State; is judged legally incompetent; or is found incapable of indicating intent based on medical documentation obtained from a physician, psychologist, or other person licensed by the State in the field of mental retardation." 42 C.F.R. § 435.403(c).

~~15.~~ **16.** As relevant to this case, for any institutionalized individual who became incapable of indicating intent before age 21, the state of residence is the parent's or legal guardian's state of residence at the time of placement or the current state of residence of the parent or legal guardian who files the application if the individual is institutionalized in that state. 42 C.F.R. § 435.403(i)(2).

~~16.~~ **17.** The Delaware Division of Social Services Manual (DSSM) incorporates the federal criteria for determining state residency for persons who live in institutions, are over the age of twenty-one, and became incapable of indicating intent prior to the age of twenty-one. DSSM **§§** 14110-14110.8.2.

~~17.~~ **18.** The federal and state Medicaid residency provisions at 42 C.F.R. § 435.403 and DSSM **§§** 14110-14110.8.2 operate to permanently trap Marianne Duffy in the state in which she is currently living (North Carolina), because she is incapable of indicating intent and requires an institutional level of care.

B. **Delaware's** ~~Home and Community-Based Waiver~~ **Medicaid-Covered Long Term Care Services** ~~Program~~

~~18.~~ **19.** The Intermediate Care Facility for the Mentally Retarded (ICF/MR) program is an optional Medicaid service. The purpose of an ICF/MR is to provide health and rehabilitative services for individuals with mental retardation. 42 U.S.C. § 1396d(d); 42 C.F.R. § 483.440(a). ICF/MRs may be large facilities or small community homes for

6

as few as four residents. Delaware has chosen to provide ICF/MR services through its Medicaid program.

~~19.~~ **20.** As an alternative to ICF/MR care, a state may provide home and community-based services (HCBS) for persons with mental retardation and developmental disabilities if the State obtains a waiver from the Secretary of the U.S. Department of Health and Human Services. 42 U.S.C. § 1396n(c)(1). Congress created the HCBS waiver program to allow individuals who otherwise qualify for care in a nursing home, ICF/MR, or similar facility to receive needed services in a home-like setting. 42 U.S.C. § 1396n; 42 C.F.R. § 442.300. In order to participate in the HCBS program, states must provide assurances that when a recipient is determined likely to require the level of care provided in an ICF/MR, the recipient or legal guardian of the recipient will be informed of any feasible alternatives available under the waiver, and be given the choice of either institutional or home and community-based services. 42 U.S.C. § 1396n(c)(2)(C); 42 C.F.R. § 441.302(d)(1)-(2).

C. **The Right to Interstate Travel**

~~20.~~ **21.** The Privileges and Immunities Clause of Article IV, § 2, and the Privileges and Immunities Clause of the Fourteenth Amendment to the United States Constitution prohibit the State of Delaware from infringing on a United States citizen's fundamental right to interstate travel. The Equal Protection Clause of the Fourteenth Amendment prohibits states from discriminatorily burdening fundamental rights.

### STATEMENT OF FACTS

~~21.~~ **22.** Plaintiff Marianne Duffy is a 31-year-old woman who has resided at Carobell, an ICF/MR group home in Hubert, North Carolina, since 1993. Her disabilities

include blindness, autism, and mental retardation. She is non-verbal and requires a highly structured living environment with constant supervision and care due to her susceptibility to seizures, falling, and self-abusive behavior. Her parents are unable to provide her care in their own home, even for a weekend. She is not capable of indicating intent within the meaning of the Medicaid residency regulations, 42 C.F.R. § 435.403(c).

~~22.~~ **23.** In April, 2001, Marianne's father, Sean Duffy, relocated to Delaware as a result of a new job, and her mother, Elise Duffy, followed in 2002. Marianne's parents are her legal guardians, and they wish to move her to a**n ICF/MR or** community-based residential placement in Delaware so that she can live closer to her family.

~~23.~~ **24.** Marianne has a very close relationship with her parents. While Mr. and Mrs. Duffy lived in North Carolina, they would visit with Marianne weekly. They also could drop in at the group home to check on how Marianne was doing and monitor her care. Now that Marianne has been unable to move to Delaware, Mr. and Mrs. Duffy must travel to North Carolina to visit her. Marianne is now only able to see her parents approximately once every three months. She has no other way to communicate with her parents because she is nonverbal and blind and thus cannot communicate by telephone, letter or electronic mail.

~~24.~~ **25.** Marianne receives Medicaid benefits in North Carolina. Mr. and Mrs. Duffy have applied for services, primarily seeking a**n ICF/MR or** community residential placement in Delaware, through DDDS. Their initial contact with DDDS was a telephone call in March 2001. Marianne's application for DDDS services has been placed on "inactive status" because, according to DDDS, although Marianne was

determined to meet the clinical eligibility criteria, she first had to establish Delaware residency before she could access DDDS services, **including Medicaid services**.

~~25.~~ **26.** After Delaware's initial denial of Marianne's DDDS application, Mr. and Mrs. Duffy pursued an internal DDDS appeal on Marianne's behalf. In July 2003, the DDDS Director Marianne Smith determined that Marianne was not a state resident and her residential placement needs were not "urgent" according to the state registry system and therefore determined that Marianne would not be provided with community residential services. Marianne was, however, assigned a DDDS case manager, and her parents were instructed to contact DDDS if Marianne moved to Delaware and became a state resident.

~~26.~~ **27.** Upon information and belief, Marianne's name has not been added to the state registry as a person seeking residential placement services.

~~27.~~ **28.** Medical care is a basic necessity of life and, because Marianne's disabilities require specific services and living arrangements funded by the state's Medicaid program, she is precluded from physically relocating to a new state of her choice unless an appropriate Medicaid-covered residential placement **and necessary medical services** will be available to her on the day that she arrives. Marianne cannot access her right to become a citizen of another state, and thereby access the corresponding privileges and immunities afforded by that state to its citizens, because her disabilities prevent her from establishing a residence in a new state without the willingness of the new state to provide her with Medicaid services on the day of her arrival. Consequently, she is unable to exercise her right to interstate travel in a meaningful way and in a way that is equal to either the rights of people without

disabilities or to the rights of people with sufficient wealth to finance their own placements. Delaware's rejection of Marianne's application for services based upon her failure to first establish state residency is unconstitutional.

## COUNT I

### VIOLATION OF PRIVILEGES AND IMMUNITIES CLAUSE OF ARTICLE IV OF THE UNITED STATES CONSTITUTION

~~28.~~ **29.**  The Plaintiff incorporates paragraphs one through ~~twenty-seven~~ **twenty-eight** by reference.

~~29.~~ **30.**  The Defendants' process for determining Plaintiff's eligibility for Medicaid services deprives Plaintiff, as a citizen of another state, of the benefits, rights and privileges afforded Delaware citizens, in violation of the privileges and immunities clause of Article IV of the United States Constitution. This right is enforceable by Plaintiff in this Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

## COUNT II

### VIOLATION OF THE PRIVILEGES AND IMMUNITIES CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

~~30.~~ **31.**  The Plaintiff incorporates paragraphs one through ~~twenty-nine~~ **thirty** by reference.

~~31.~~ **32.**  The Defendants' process for determining Plaintiff's eligibility for Medicaid services abridges Plaintiff's right to interstate travel, a right of national citizenship, in violation of the privileges and immunities clause of the Fourteenth Amendment. This right is enforceable by Plaintiff in this Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

# COUNT III

### VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

~~32.~~ **33.** The Plaintiff incorporates paragraphs one through thirty-two by reference.

~~33.~~ **34.** The process for determining Plaintiff's eligibility for Medicaid services discriminatorily burdens Plaintiff's fundamental right to interstate travel on the basis of disability and wealth, in violation of the equal protection clause of the Fourteenth Amendment. This right is enforceable by Plaintiff in this Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

(a) Declare that DSSM §§ 14110-14110.8.2 and 42 C.F.R. § 435.403(c) unconstitutionally infringe on Plaintiff's fundamental right to interstate travel in violation of the:

    1. privileges and immunities clause of Article IV of the United States Constitution;

    2. privileges and immunities clause of the Fourteenth Amendment to the United States Constitution;

    3. equal protection clause of the Fourteenth Amendment to the United States Constitution.

(b) Declare that the Defendants' decision to deny Plaintiff's eligibility for Medicaid services unconstitutionally infringes on Plaintiff's fundamental right to interstate travel in violation of the:

1. privileges and immunities clause of Article IV of the United States Constitution;

2 privileges and immunities clause of the Fourteenth Amendment to the United States Constitution;

3. equal protection clause of the Fourteenth Amendment to the United States Constitution.

(c) Enjoin the Defendants from continuing to prevent Plaintiff from accessing **Delaware** Medicaid services on the basis of her inability to physically relocate and establish residency in Delaware without first obtaining a suitable residential placement in Delaware;

(d) Direct the Defendants to find Plaintiff eligible for **Delaware** Medicaid ~~DDDS intermediate care~~ services and enable her to access the state system for **ICF/MR and** community residential placements;

(e) Award reasonable attorney's fees and the costs of this litigation pursuant to 42 U.S.C. §1988; and

(f) Order such other relief as this Court deems equitable and just.

Dated:  **November 11, 2005**                    Respectfully submitted,


*/s/ Sean Duffy*_____


*/s/ Elise Duffy*_____
Marianne Duffy, by her parents and legal guardians, Sean and Elise Duffy


*/s/ MaryBeth Musumeci*_____
MaryBeth Musumeci (#4128)
Daniel Atkins (#2970)
Disabilities Law Program
Community Legal Aid Society, Inc.
100 W. 10th Street, Suite 801
Wilmington, DE 19801
(302) 575-0660, ext. 228 or 229
(302) 575-0840 (fax)


Jane Perkins
Sarah Somers
National Health Law Program
211 N. Columbia Street
Chapel Hill, NC 27516
(919) 968-6308
(919) 968-8855 (fax)

Attorneys for Plaintiff,
Marianne Duffy, by her parents and legal guardians, Sean and Elise Duffy