**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MARIANNE DUFFY, by her parents and legal guardians, SEAN and ELISE DUFFY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 05-CV-127-GMS |
| VINCENT MECONI, Secretary, Delaware Department of Health & Social Services, in his official capacity, <u>et al.</u> | ) ) ) ) | |
| Defendants. | ) ) | |

**APPENDIX IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Richard G. Placey
(DE Bar I.D. No. 4206)
MONTGOMERY, McCRACKEN,
    WALKER & RHOADS, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE 19801
(302) 504-7800

Patrick T. Ryan
Jessica C. Goebeler
MONTGOMERY, McCRACKEN,
    WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500

Date: May 12, 2006

A. Ann Woolfolk
(DE Bar I.D. No. 2642)
Deputy Attorney General
State of Delaware – Department of Justice
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400

Counsel for Defendants

# TABLE OF CONTENTS

**Pages**

Declaration of Marianne Smith.................................................................................... A001-A006

Plaintiff's Answers to Defendants' First Set of Interrogatories.................................... A007-A021

Declaration of Pamela J. Tyranski ............................................................................... A022-A032

Letter, dated May 9, 2006, from plaintiff's counsel .................................................... A033

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARIANNE DUFFY, by her parents and legal guardians, SEAN and ELISE DUFFY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 05-CV-127-GMS |
| VINCENT MECONI, Secretary, Delaware Department of Health & Social Services, in his official capacity, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

### DECLARATION OF MARIANNE SMITH

I, Marianne S. Smith, hereby state as follows:

1.     I am the Director of the Division of Developmental Disabilities Services ("DDDS") of Delaware's Department of Health & Social Services.  I have held that position since November of 1998.

2.     As Director, I am responsible for the oversight and monitoring of Executive Staff who are charged with the day-to-day responsibilities of ensuring the delivery of a diverse array of services to persons with developmental disabilities and their families.  These all-inclusive services include community-based care, respite care, emergency placements/planning and the provision of services within an institutional setting.  In concert with individual Executive Staff members, I oversee budget development, resource allocation and development within prescribed legislated budgetary parameters.

3.     DDDS provides a range of services to eligible Delaware residents with develop-mental disabilities (and to their families).  Some of those services are covered by the federal Medicaid program; others are not.  For example, DDDS provides a range of home and

**A001**

community-based ("HCB") services to eligible persons with developmental disabilities under a waiver of certain Medicaid statutory requirements that is approved by the federal Centers for Medicare and Medicaid Services ("CMS").  The services provided under the Medicaid HCB waiver include:  (a) case management services, (b) clinical support services, (c) residential habilitation services, (d) day habilitation services, (e) respite care services, and (f) environmental modifications.  DDDS also provides many of these same services to developmentally disabled individuals who are not eligible for Medicaid or who are not receiving the services under the waiver.  These services – referred to as family support services – include case management, respite care, day habilitation programs, environmental modifications and certain emergency services – are either fully paid for with state (i.e., not federal Medicaid) funds or, in the case of day habilitation services for Medicaid-eligible family support clients, paid for with Medicaid funds outside the HCB waiver.

    4.    When someone applies for DDDS services, the division determines whether the person meets the DDDS eligibility criteria.  A separate determination is made – by the Division of Medicaid and Medical Assistance – as to whether the person is eligible for Medicaid.  In either case, however, the person receiving services must be a Delaware resident.

<u>**Plaintiff Marianne Duffy's Application for DDDS Services**</u>

    5.    In the spring of 2001, DDDS received an application for services on behalf of Marianne Duffy.  The application was submitted on Ms. Duffy's behalf by her parents, Sean and Elise Duffy.

    6.    The Duffys' application for DDDS services was processed for a determination of eligibility.  DDDS determined that Ms. Duffy met the clinical criteria for eligibility for DDDS

services, but, since she still lived in North Carolina (and was therefore not a Delaware resident), it placed her application on inactive status – until such time as she re-located to Delaware.

7.    We also informed the Duffys that residential placement via DDDS residential services is based on a number of criteria that guide us in the task of prioritizing the placement needs of individuals who are eligible for and request residential services from DDDS. Although we would like to be able to provide government-funded residential placement to every develop-mentally disabled person in Delaware who requested it (or whose parents or caregivers requested it) and could benefit from it, we have never had the funding to do that. We therefore determine eligibility for residential placement based on an assessment of the person's present and projected need for it.

8.    The federal-government-approved eligibility criteria we use for residential place-ment through DDDS residential services are as follows:

> An individual shall be eligible for the DDDS Home and Community-Based Services (HCBS) Waiver when they are:
>
> (1)  eligible for DDDS services;
>
> (2)  determined to need the ICF/MR level care and are financially eligible for Medicaid; and
>
> (3)  in need of residential services (as identified via the "Emer-gency" category of the DDDS Registry) or a resident of Stockley Center.

9.    The DDDS Registry is the system by which DDDS maintains risk-assessment and demographic data that is used to prioritize the residential service needs of individuals who are eligible or potentially eligible for services from the DDDS. In my role as Director of the DDDS, I am familiar with how the Registry works.

A003

10.  The Registry is not a "waiting list."  It is a tool that is used by the DDDS for the primary purpose of determining the criticality of actual or potential placement needs of the individuals entered.  A secondary benefit of the Registry is that it also provides information about the non-residential needs of individuals, which facilitates Family Support Services planning for individuals who are not in the Stockley Center or a community-based residential placement.  At the time a person with a developmental disability is determined to be eligible for DDDS services, we obtain a great deal of information about that person and his or her caregivers or family, and we conduct a comprehensive risk assessment to evaluate the degree to which the person's current life circumstances might precipitate a need for residential placement.

11.  The risk assessment is performed when a case manager first visits the individual and his/her family.  The case manager is responsible for updating the information in the Registry whenever a change occurs in the person's (or the caregiver's) circumstances that affects the individual's need for placement.

12.  The risk assessment includes an evaluation of (a) the individual's health status, (b) the caregiver's health status, (c) the composition of the person's household, (d) the environmental conditions in the household, and (e) the economic conditions in the household.  Based on the assessment of these factors, each individual is assigned a priority ranking level of the projected time frame which the risk assessment suggests for needing residential placement.  The priority levels are:

> **Emergency:**  Individuals (and/or caregivers) who are at risk for abuse or neglect, whose caregiver is deceased, or who are homeless.  Individuals in this category may be considered "emergencies."
>
> **High Risk:**  Individuals for whom the risk assessment suggests that the projected time frame for needing residential placement is 0 to 3 months.

**Moderate Risk:** Individuals for whom the risk assessment suggests that the projected time frame for needing residential placement is 3 to 12 months.

**Low Risk:** Individuals for whom the risk assessment suggests that the projected time frame for needing residential placement is more than 12 months.

13. Those individuals identified as "Emergency" are given first consideration for residential placement. When all placement needs for those in the "Emergency" category have been met, consideration for residential placement is given to those in other priority categories according to the needs of the individual and the availability of resources.

14. Although Ms. Duffy was not eligible for DDDS services because she was not (and is not) a resident of Delaware, we nevertheless did an informal evaluation of the risk assessment factors described above and communicated the results of that evaluation to the Duffys. Largely because she appears to be living in a safe and supportive group home in North Carolina, the informal evaluation suggested that she would not be placed in the "Emergency" (then referred to as the "Urgent") category. She would therefore not be eligible for residential placement by DDDS – even if she were considered to be a Delaware resident.

15. There are, however, alternatives to residential placement through DDDS. The Mary Campbell Center in Wilmington, Delaware, is a private intermediate care facility for people with mental retardation ("ICF/MR"). In addition, there are residential service providers who contract with the State to provide residential services under the Medicaid HCB waiver but who are not barred from separately contracting with families who need and desire residential services.

16. While Ms. Duffy would not be eligible for DDDS services (including residential placement via DDDS under the Medicaid HCB waiver) until she became a Delaware resident, I know of no obstacle – except perhaps a particular facility's ability, capacity or willingness to

A005

accept her – that would prevent the Duffys from seeking to have her accepted at The Mary Campbell Center or some other facility in Delaware that is appropriate to her needs. Once she was accepted at and moved into a Delaware facility, she would become a resident and eligible for DDDS services.

17.    Although Marianne Duffy is not currently a Delaware resident, we nevertheless assigned a DDDS Family Support case manager to the Duffys for the purpose of maintaining contact and gathering in-depth information about Ms. Duffy and her current services. We informed the Duffys that Family Support Specialist Eileen Challenger had been assigned as case manager.

I declare, under penalty of perjury, that the foregoing statement is true and correct. Executed on May 11, 2006.

Marianne S. Smith

-6-

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARIANNE DUFFY, by her parents and
legal guardians, SEAN and ELISE DUFFY,

        Plaintiff,

        v.

VINCENT MECONI, Secretary, Delaware
Department of Health & Social Services, in
his official capacity, et al.,

        Defendants.

No. 05-CV-127-GMS

## PLAINTIFF'S ANSWERS TO
## DEFENDANTS' FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Marianne

Duffy, by her parents and legal guardians, Sean and Elise Duffy, responds to Defendants'

First Set of Interrogatories as follows:

### Qualification of Answers

To the extent any of the individual interrogatories are vague, ambiguous and/or

confusing, Plaintiff's response to any such interrogatory is based upon Plaintiff's best

understanding of the interrogatory and/or the terms used therein, and such response

cannot properly be used as evidence except in the context in which Plaintiff understood

the interrogatory and/or the terms thereof.

### Interrogatory No. 1

Do you contend in this lawsuit that plaintiff Marianne Duffy should be able to

establish eligibility for services that are provided by the Delaware DDDS even if she is

not a Delaware resident? If so, explain the factual and legal basis upon which you are making that contention.

ANSWER: Plaintiff objects to the term "establish eligibility for services" to the extent it is vague and ambiguous. Plaintiff contends that she should be permitted to establish Delaware residency without first being required to physically move to Delaware. Plaintiff's physical and mental disabilities prevent her from physically relocating to Delaware without first obtaining appropriate residential placement and services; yet, due to her limited income, she cannot gain access to those services without first meeting the Delaware Medicaid program's residency requirements. (D.I. 36 at ¶ 2).

## Interrogatory No. 2

Do you contend in this lawsuit that plaintiff Marianne Duffy should be able to establish eligibility under the Delaware Medicaid program even if she is not a resident of Delaware? If so, explain the factual and legal basis upon which you are making that contention.

ANSWER: Plaintiff objects to the term "establish eligibility" to the extent it is vague and ambiguous. Plaintiff contends that she should be permitted to establish Delaware residency without first being required to physically move to Delaware. Plaintiff's physical and mental disabilities prevent her from physically relocating to Delaware without first obtaining appropriate residential placement and services; yet, due to her limited income, she cannot gain access to those services without first meeting the Delaware Medicaid program's residency requirements. (D.I. 36 at ¶ 2).

## Interrogatory No. 3

Do you contend in this lawsuit that plaintiff Marianne Duffy should be able to establish that she is a Delaware resident, for purposes of establishing eligibility for either DDDS services or Delaware Medicaid, before physically relocating to Delaware? If so, explain the factual and legal basis upon which you are making that contention.

ANSWER:  Plaintiff objects to the term "establishing eligibility" to the extent it is vague and ambiguous.  Plaintiff contends that she should be permitted to establish Delaware residency without first being required to physically move to Delaware. Plaintiff's physical and mental disabilities prevent her from physically relocating to Delaware without first obtaining appropriate residential placement and services; yet, due to her limited income, she cannot gain access to those services without first meeting the Delaware Medicaid program's residency requirements.  (D.I. 36 at ¶ 2).

The factual basis for Plaintiff's claim arises from her multiple severe disabilities, including blindness, autism, and mental retardation.  As a result, she requires a highly structured living environment with constant supervision and care due to her susceptibility to seizures, falling, and self-abusive behavior.  Her parents are unable to provide her care in their own home, even for a weekend.  (D.I. 36 at ¶ 22).

Plaintiff's parents and legal guardians applied for services, primarily seeking an ICF/MR or community residential placement in Delaware, through DDDS.  (D.I. 36 at ¶ 25).  Defendants' response to Plaintiff's application was to place it on "inactive" status unless or until Plaintiff physically relocated to Delaware from North Carolina. (D.I. 36 at ¶ ¶ 25, 26).

**A009**

The legal basis for Plaintiff's claim is that she cannot access her right to become a citizen of another state, and thereby access the corresponding privileges and immunities afforded by that state to its citizens, because her disabilities prevent her from establishing a residence in a new state without the willingness of the new state to provide her with Medicaid services, including a residential placement and necessary medical services, on the day of her arrival. (D.I. 36 at ¶ 28). The federal and state Medicaid residency provisions at 42 C.F.R. § 435.403 and Division of Social Services Manual § § 14110-14110.8.2 operate to permanently trap Plaintiff in the state in which she is currently living (North Carolina), because she is incapable of indicating intent and requires an institutional level of care. (D.I. 36 at ¶ 18). This violates Plaintiff's fundamental right to interstate travel as protected by the Privileges and Immunities Clause of Article IV, the Privileges and Immunities Clause of the Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment. (D.I. 36 at ¶ ¶ 29-34).

## Interrogatory No. 4

Do you contend in this lawsuit that either (or both) of the following facts are (or ought to be) sufficient to make plaintiff Marianne Duffy a Delaware resident for purposes of eligibility for DDDS services and/or eligibility under the Delaware Medicaid program, regardless of where plaintiff Marianne Duffy herself lives: (a) both of her parents are Delaware residents; and/or (b) her parents desire that she live in an appropriate residential facility in Delaware? If so, explain the legal basis upon which you contend that one or both of those facts are (or ought to be) sufficient to make plaintiff Marianne Duffy a

Delaware resident for purposes of eligibility for DDDS services and/or eligibility under the Delaware Medicaid program.

<u>ANSWER:</u>  Plaintiff objects that the information elicited in this interrogatory is not relevant.   Plaintiff contends that she should be permitted to establish Delaware residency without first being required to physically move to Delaware.  Plaintiff's physical and mental disabilities prevent her from physically relocating to Delaware without first obtaining appropriate residential placement and services; yet, due to her limited income, she cannot gain access to those services without first meeting the Delaware Medicaid program's residency requirements.  (D.I. 36 at ¶ 2).

## Interrogatory No. 5

Do you contend that there are any facts or circumstances other than the two listed above in Interrogatory No. 4 that are (or ought to be) sufficient to make plaintiff Maryanne Duffy a Delaware resident for purposes of eligibility for DDDS services and/or eligibility under the Delaware Medicaid program, regardless of where plaintiff Marianne Duffy herself lives.  If so, identify what those facts or circumstances are and explain the legal basis upon which you contend that those facts or circumstances are (or ought to be) sufficient to make plaintiff Marianne Duffy a Delaware resident for purposes of eligibility for DDDS services and/or eligibility under the Delaware Medicaid program.

<u>ANSWER:</u>  Plaintiff contends that she should be permitted to establish Delaware residency without first being required to physically move to Delaware.  Plaintiff's physical and mental disabilities prevent her from physically relocating to Delaware without first obtaining appropriate residential placement and services; yet, due to her

**A011**

limited income, she cannot gain access to those services without first meeting the

Delaware Medicaid program's residency requirements. (D.I. 36 at ¶ 2).

The legal basis for Plaintiff's claim is that she cannot access her right to become a

citizen of another state, and thereby access the corresponding privileges and immunities

afforded by that state to its citizens, because her disabilities prevent her from establishing

a residence in a new state without the willingness of the new state to provide her with

Medicaid services, including a residential placement and necessary medical services, on

the day of her arrival. (D.I. 36 at ¶ 28). The federal and state Medicaid residency

provisions at 42 C.F.R. § 435.403 and Division of Social Services Manual § § 14110-

14110.8.2 operate to permanently trap Plaintiff in the state in which she is currently

living (North Carolina), because she is incapable of indicating intent and requires an

institutional level of care. (D.I. 36 at ¶ 18). This violates Plaintiff's fundamental right to

interstate travel as protected by the Privileges and Immunities Clause of Article IV, the

Privileges and Immunities Clause of the Fourteenth Amendment, and the Equal

Protection Clause of the Fourteenth Amendment. (D.I. 36 at ¶ ¶ 29-34).

## Interrogatory No. 6

Identify (by facility name and address) each residential placement facility located

in Delaware (or organization that owns or operates a residential placement facility located

in Delaware) that plaintiff Marianne Duffy's parents or other representatives have

contacted since January 1, 2001, in an effort to locate an appropriate residential

placement for plaintiff Marianne Duffy. For each, state:

(a) the dates of contact;

(b)  the persons with whom such contact was made;

A012

(c)  the substance of the discussions that occurred concerning plaintiff Marianne Duffy;

(d)  whether an application was made for plaintiff Marianne Duffy's acceptance into the residential facility;

(e)  if no application was made, the reason(s) why no application was made; and

(f)  if an application was made, the current status of that application.

<u>ANSWER</u>:    (1)  Mary Campbell Center, 4641 Weldin Road, Wilmington, Delaware 19803.

(a)  Intermittently from approximately July, 2005 to the present.

(b)  Joanne Arena, Admissions Coordinator.

(c)  Plaintiff's disabilities and medical needs and the services offered by Mary Campbell Center.

(d)  Yes.

(e)  N/A.

(f)  The Mary Campbell Center is reviewing Plaintiff's needs.

(2)  Chimes Delaware, 514 Interchange Boulevard, Newark, DE 19711.

(a)  Intermittently from approximately July, 2005 to the present.

(b)  Don Bilyew.

(c)  Plaintiff's disabilities and medical needs and the services offered by Chimes.

(d)  Yes.

(e)  N/A.

(f)  Chimes does not believe that it can meet Plaintiff's needs and referred her to Chesapeake Care Resources, Inc., in Maryland.

A013

(3)  CSI, EH Pencader Corporate Center, 250 Corporate Blvd., Suite A, Newark, DE 19702.

(a)  Approximately July, 2005.

(b)  No one returned  the call.

(c)  No conversation took place.

(d)  No.

(e)  No one returned the call.

(f)  N/A.

(4)  Bancroft, address unknown.

(a)  Approximately July, 2005.

(b)  Karen Race.

(c)  Plaintiff's medical needs and disabilities and the services offered by Bancroft.

(d)  No.

(e)  Bancroft's residents are higher functioning than Plaintiff.

(f)  N/A.

## Interrogatory No. 7

Unless already supplied in response to Interrogatory No 6 above, state the information that the following persons and organizations (identified in Plaintiff's First Supplement to Her Initial Disclosures Under Federal Rule of Civil Procedure 26(a)(1)) have regarding the Duffys' efforts to locate an appropriate residential placement for plaintiff Marianne Duffy in Delaware:

(a)  Deb Nock and The ARC of Delaware;

(b)  Don Bilvew [sic] and Chimes, Delaware; and

(c) Joanne Arena and Mary Campbell Center.

ANSWER:

(a) Information regarding Plaintiff's disabilities and search for an appropriate residential placement in Delaware provided verbally by Plaintiff's guardians.

(b) Information regarding Plaintiff's disabilities and search for an appropriate residential placement in Delaware provided verbally by Plaintiff's guardians and application for services.

(c) Information regarding Plaintiff's disabilities and search for an appropriate residential placement in Delaware provided verbally by Plaintiff's guardians and application for services.

### Interrogatory No. 8

Identify (by facility name and address) each residential placement facility located in any state other than Delaware (or organization that owns or operates a residential placement facility located in ay state other than Delaware) that plaintiff Marianne Duffy's parents or other representatives have contacted since January 1, 2001, in an effort to locate an appropriate residential placement for plaintiff Marianne Duffy. For each, state:

(a) the dates of contact;

(b) the persons with whom such contact was made;

(c) the substance of the discussions that occurred concerning plaintiff Marianne Duffy;

(d) whether an application was made for plaintiff Marianne Duffy's acceptance into the residential facility;

(e) if no application was made, the reason(s) why no application was made; and

9

A015

(f) if an application was made, the current status of the application.

ANSWER:  Chesapeake Care Resources, Inc., 80 Marysville Road, North East Maryland 21901.

(a)  April 13, 2006.

(b)  Jolene M. Paruch, Program Coordinator.

(c)  Plaintiff's medical needs and disabilities and the services offered by Chesapeake Care Resources.

(d) Plaintiff's parents are in the process of applying.

(e) N/A.

(f)  N/A.

**Interrogatory No. 9**

In paragraph 22 of the Amended Complaint, you allege that  plaintiff Marianne Duffy's "parents are unable to provide her care in their own home, even for a weekend." Please explain the factual basis upon which that allegation is made and include in your answer a statement of whether (and, if so, when and for how long) plaintiff Marianne Duffy has ever either lived with her parents in their own home or stayed with her parents in their own home for a period of 24 hours.  To the extent pertinent to providing the factual basis for the allegation in paragraph 22 quoted above, please describe those times in which plaintiff Marianne Duffy's parents have attempted provide her care in their own home.

ANSWER:  Plaintiff's parents are unable to care for Plaintiff in their home, even for a short period of time, because of the intensive care and supervision that Plaintiff needs. For example, Plaintiff's sleep patterns are such that she can stay awake for prolonged

periods of time – twenty-four to forty-eight hours – fairly frequently. She needs constant supervision while she is awake because she is at risk for seizures and falling, and it is unsafe for her to walk on her own. Her residential placement provides staff who are awake all night to monitor her.

Plaintiff also engages in behaviors, such as loud screaming and laughing, which go on for hours at a time. Plaintiff's self-injurious behaviors also can last for hours at a time, during the day and night. During those periods, she must be constantly monitored and restrained from hitting herself or banging her head against a wall. It is unsafe for Plaintiff to live outside of a highly structured residential placement that can provide the care that she needs as a result of her disabilities. Any unplanned interruption, such as the ringing of the telephone, can be upsetting to her.

Plaintiff has lived in a residential placement outside of her parents' home since age eleven. She has not stayed with her parents in their home for a period of twenty-four hours for several years. Until approximately 1998 or 1999, Plaintiff did spend one night per week at home. However, these overnight home visits were stopped due to safety concerns. Specifically, Plaintiff's seizures cause her to fall easily and require supervision and assistance while walking because her reflexes are very slow. At one point, Plaintiff had a seizure in the shower while her mother was alone caring for her, and this raised her parents' concerns about their ability to ensure her safety. In addition, Plaintiff's history of unusual sleep patterns means that someone must constantly be awake to supervise her, and her parents are unable to meet that need unless additional adults are present.

Until 2001, Plaintiff did stay with her parents in their home for a period of twenty-four hours during the Christmas holidays, when her parents and two adult

brothers were all available to take shifts monitoring Plaintiff around the clock. Plaintiff

has not had any overnight home visits for holidays or otherwise since 2001.

### Interrogatory No. 10

In Judge Sleet's October 28, 2005 opinion denying Defendants' Motion to

Dismiss in this lawsuit he stated:

> Additionally, Duffy has not elucidated the nature of the expenses, if any, Medicaid would pay (e.g., travel expenses, placement expenses, other fees charged by the facility, etc.), but for her residency problem. That is to say, assuming *arguendo* that Duffy could legally establish residence by moving to an in-state ICF/MR facility, it is unclear what expenses she would incur until she qualifies for Medicaid in Delaware.

Opinion, dated October 28, 2005, at 7-8. Do you contend that there are any expenses

associated with a person's moving into a Delaware residential facility that "Medicaid

would pay...but for [plaintiff Marianne Duffy's] residency problem"? If so, identify

those expenses and explain the legal and/or factual basis of your contention that Medicaid

would otherwise pay for such expenses.

ANSWER:  Plaintiff believes the phrase "moving into" is vague and ambiguous.  Yes

there are expenses that would be incurred and that Medicaid would cover  if Plaintiff

were allowed to move to Delaware.  The Delaware Medicaid program is legally required

to pay for all medically necessary covered services as set out in its state plan for

Medicaid beneficiaries, such as inpatient hospital services, outpatient hospital services,

laboratory and X-ray services, nursing facility services, physician services, home health

services, private duty nursing services, prescription drugs, and ICF/MR services.


Dated:  April 20, 2006

*/s/ MaryBeth Musumeci*
MaryBeth Musumeci (#4128)
Daniel Atkins (#2970)

Disabilities Law Program
Community Legal Aid Society, Inc.
100 West 10th Street, Suite 801
Wilmington, DE 19801
(302) 575-0660, ext. 228 or 229
(302) 575-0840 fax
mmusumeci@declasi.org
datkins@declasi.org

Jane Perkins
Sarah Somers
National Health Law Program
211 N. Columbia Street
Chapel Hill, NC 27516
(919) 968-6308
(919) 968-8855 (fax)
perkins@healthlaw.org
somers@healthlaw.org

Attorneys for Plaintiff, Marianne Duffy

## VERIFICATION

I, Sean Duffy, hereby state that I am the father and legal guardian of Plaintiff Marianne Duffy.  I declare under penalty of perjury that the foregoing answers to Defendants' First Set of Interrogatories are true and correct to the best of my knowledge, information, and belief.

Dated:  April 20, 2006

Sean Duffy

**A020**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARIANNE DUFFY, by her parents and     }
legal guardians, SEAN and ELISE DUFFY,     }
    }
          Plaintiff,     }   No. 05-CV-127-GMS
    }
        v.     }
    }
VINCENT MECONI, Secretary, Delaware     }
Department of Health & Social Services, in     }
his official capacity, <u>et al.</u>,     )
    )
          Defendants.     }

## <u>NOTICE OF SERVICE</u>

Pursuant to D. Del. LR 5.4(a), I hereby certify that on April 20, 2006, I arranged

for two copies of Plaintiff's Answers to Defendants' First Set of Interrogatories and

Plaintiff's Responses to Defendants' First Request for the Production of Documents to be

served by hand delivery on:

        Noel C. Burnham, Esq.
        Montgomery, McCracken, Walker & Rhoads LLP
        300 Delaware Avenue, Suite 750
        Wilmington, DE 19801.

Dated:  April 20, 2006           <u>*/s/ MaryBeth Musumeci*</u>
          MaryBeth Musumeci (#4128)
          Disabilities Law Program
          Community Legal Aid Society, Inc.
          100 West 10th Street, Suite 801
          Wilmington, DE 19801
          (302) 575-0660, ext. 228
          (302) 575-0840 fax
          mmusumeci@declasi.org

**A021**

05/12/2006   10:52   DIV. OF SOCIAL SVS. DIR. OFFICE → 912157313917         NO.287   D02

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARIANNE DUFFY, by her parents and )
legal guardians, SEAN and ELISE DUFFY, )
                              )
           Plaintiff, )
                              )
           v. )         No. 05-CV-127-GMS
                              )
VINCENT MECONI, Secretary, Delaware )
Department of Health & Social Services, in )
his official capacity, et al., )
                              )
           Defendants. )

## DECLARATION OF PAMELA J. TYRANSKI

I, Pamela J. Tyranski, hereby state as follows:

1.     I am Deputy Director of the Division of Medicaid and Medical Assistance. I have held that position since July 2005.

2.     In mid-2005, Delaware's Department of Health & Social Services created a new division – the Division of Medicaid and Medical Assistance ("DMMA") – to consolidate medical assistance services and administration. As of July 1, 2005, DMMA has had responsibility for administering Delaware's Medicaid program.

3.     I am responsible for the management and oversight of the Medicaid Long Term Care units in DMMA.

### Plaintiff Marianne Duffy's Circumstances

4.     I understand from plaintiff Marianne Duffy's First Amended Complaint in this lawsuit (D.I. 36) ("Complaint") that Ms. Duffy is a Medicaid beneficiary currently living in a group home in Hubert, North Carolina. Her parents, Sean and Elise Duffy, moved from North

Carolina to Delaware several years ago and would like their daughter Marianne to move to Delaware so she can be closer to her family.  The Complaint describes Ms. Duffy as "a 31-year old Medicaid beneficiary with developmental disabilities including blindness, seizures, autism, and mental retardation."  Complaint (D.I. 36) ¶ 1.

5.      Since the Complaint describes Ms. Duffy as a Medicaid recipient in North Carolina, I assume, for purposes of this Declaration, that her financial circumstances would likewise satisfy the financial eligibility requirements for Medicaid under Delaware's Medicaid program.

6.      I understand that Ms. Duffy's parents applied to Delaware's Division of Developmental Disabilities Services ("DDDS") in 2001, seeking DDDS services and a residential placement for their daughter in Delaware.  I also understand that DDDS has placed Ms. Duffy's application on inactive status because she has not yet relocated to Delaware and is therefore not a Delaware resident.  Plaintiff's Complaint asserts that this circumstance violates Ms. Duffy's constitutional right to travel because it creates a "Catch-22" for her.  Complaint (D.I. 36) ¶¶ 1-3.  In particular, the Complaint describes the "Catch-22" as follows:  "Marianne's health and developmental conditions prohibit her from physically relocating to Delaware without first obtaining appropriate residential placement and services; yet, due to her limited income, she cannot gain access to those services without first meeting the Delaware Medicaid program's residency requirements."  Complaint (D.I. 36) ¶ 2.

7.      The Complaint's description of Ms. Duffy's circumstances as a "Catch-22" is not correct.  As explained below, if Ms. Duffy's parents find an appropriate residential placement facility for her in Delaware, and that facility accepts Ms. Duffy, she would become a Delaware resident – and immediately eligible for benefits under the Delaware Medicaid program – as soon as she moved into the residential facility in Delaware.  There is no "Catch-22."  For their

- 2 -

A023

daughter to become eligible for Delaware Medicaid, plaintiff's parents need only find an

appropriate facility in Delaware that accepts her for residential placement.

### Medicaid's Residency Rules

8.    The federal Medicaid statute requires that a State participating in the Medicaid

program provide the "medical assistance" described in the statute and in the State's Medicaid

Plan to residents of the State.

9.    The federal Medicaid residency rules are found in 42 C.F.R. § 435.403. The reg-

ulations provide:

> (a) Requirement. The agency must provide Medicaid to eligible
> residents of the State, including residents who are absent from the
> State. . . .
>
> *     *     *
>
> (i) Individuals Age 21 and over. (1) For any individual not
> residing in an institution as defined in paragraph (b), the State of
> residence is the State where the individual is—
>     (i) Living with the intention to remain there permanently or
> for an indefinite period (or if incapable of stating intent, where the
> individual is living); . . .
>
> *     *     *
>
> (2) For any institutionalized individual who became incapable of
> indicating intent before age 21, the State of residence is—
>
> *     *     *
>
>     (ii) The parent's or legal guardian's State of residence at
> the time of placement . . . ; or
>     (iii) The current State of residence of the parent or legal
> guardian who files the application if the individual is institutional-
> ized in that State . . . .

42 C.F.R. § 435.403.

10.    The Complaint asserts (at ¶ 18), and I assume for purposes of this Declaration that it

is true, that Ms. Duffy is incapable of indicating intent and that she requires an institutional level

- 3 -

A024

of care. Therefore, under the Medicaid residency rules, she would currently be considered a resident of North Carolina because that was the State of her parents' residency when she was placed in the facility in North Carolina. See 42 C.F.R. § 435.403(i)(2)(ii).

### The Federal And State Medicaid Residency Rules Do Not "Trap" Ms. Duffy's Residency In North Carolina

11. Since plaintiff's parents are now Delaware residents, see Complaint (D.I. 36) ¶ 2, 23, plaintiff's State of residency under the federal regulations would be Delaware if she relocated to a residential facility in Delaware. See 42 C.F.R. § 435.403(i)(2)(ii) and § 435.403(i)(2)(iii). Delaware would be her "parent's or legal guardian's State of residence at the time of placement" in the Delaware facility and, under 42 C.F.R. § 435.403(i)(2)(ii), Delaware would therefore become Ms. Duffy's State of residence as well. Likewise, Delaware would be "[t]he current State of residence of the parent or legal guardian who files the application if [Ms. Duffy was] institutionalized in that State" and, under 42 C.F.R. § 435.403(i)(2)(iii), Delaware would therefore become Ms. Duffy's State of residence as well.

12. The Medicaid residency criteria that appear in the Delaware Division of Social Services Manual ("DSSM") are similar to the federal regulations, but it is correct, as Judge Sleet pointed out in his October 28, 2005 decision on Defendants' Motion to Dismiss (D.I. 34) (at 7), that the residency provisions in the DSSM track the language of 42 C.F.R. § 435.403(i)(2)(ii) but do not include the additional language from 42 C.F.R. § 435.403(i)(2)(iii). The DSSM provisions state:

#### 14110.7  Criteria Specific To Individuals Age 21 And Over

a.  For any institutionalized individual who became incapable of indicating intent before age 21, the State of residence is:  the parent's or legal guardian's State of residence at the time of placement or if a legal guardian is appointed and parental

> rights are terminated, the State of residence of the guardian is
> used.

    b.  For any institutionalized individual who became incapable of
indicating intent at or after 21, (irrespective of any type of
guardianship) the State of residence is the State in which the
individual is physically present, except where another State
makes a placement.

    c.  For any non-institutionalized individual incapable of indi-
cating intent at or after age 21, the State of residence is where
the individual is living.

16 Del. Adm. Code § 14110.7.

    13.  Judge Sleet's opinion expresses the concern that "on their face, the state regulations appear to trap Duffy in North Carolina." Opinion, dated October 28, 2005 (D.I. 34), at 7. As explained below, however, these Delaware regulations do not "trap" Ms. Duffy in North Carolina.

    14.  There are several reasons why this difference between the language in the federal Medicaid regulations and the language in the Delaware regulations is immaterial. First and foremost, as a State participating in the federal Medicaid program, Delaware is required to follow (and does follow) the federal Medicaid regulations. Thus, Delaware is bound to apply the provision that appears in 42 C.F.R. § 435.403(i)(2)(iii), even though there is no parallel provision in the DSSM.

    15.  Second, by the terms of Delaware's Medicaid Plan, Delaware has agreed to abide by the federal Medicaid regulations. The Delaware State Medicaid Plan provides:

> As a condition for receipt of Federal funds under title XIX of the
> Social Security Act, the Delaware Department of Health and Social
> Services submits the following State plan for the medical assis-
> tance program, and hereby agrees to administer the program in
> accordance with the provisions of this State plan, the requirements

A026

of titles XI and XIX of the Act, and all applicable Federal regula-
tions and other official issuances of the Department.

See State Plan Under Title XIX of the Social Security Act, at page 1 (State Plan Submittal Statement) (emphasis added), a copy of which is attached hereto as Exhibit "1." Thus, Delaware has agreed in its State Plan to abide by all the residency provisions in 42 C.F.R. § 435.403.

16.   A third reason why the difference in language between the residency provisions in the federal Medicaid regulations and the language in Delaware's regulations is immaterial here is that, even under the provision that does appear in the DSSM – 16 Del. Adm. Code § 14110.7a – plaintiff Marianne Duffy would be considered a Delaware resident (and therefore eligible for Delaware Medicaid) if she moved directly from the North Carolina ICF/MR where she currently lives into a residential facility in Delaware.  Section 14110.7a provides that the State of residency of "any institutionalized individual who became incapable of indicating intent before age 21" is "the parent's or legal guardian's State of residence at the time of placement[.]"  If Ms. Duffy moved from North Carolina into a residential facility in Delaware, this provision would make her a Delaware resident because her parents are Delaware residents.  The "at the time of placement" language means "at the time of placement" in the particular facility, not "at the time" of the person's initial placement into any facility.

17.   Because she would become a Delaware resident if she moved from North Carolina into a Delaware facility – under both the federal and the Delaware regulations – plaintiff Marianne Duffy's residency is not "trapped" in North Carolina.

- 6 -

**A027**

**Delaware Medicaid Would Not Treat Ms. Duffy Any Differently
Than Someone Already A Delaware Resident If She Moved From North Carolina
Directly Into A Residential Facility In Delaware**

18.    Judge Sleet's opinion denying Defendants' Motion to Dismiss expressed the

following additional concern:

> Even if Duffy could become a resident in the manner described by
> Defendants, it is unclear whether a regulatory scheme that forces a
> prospective resident to go through the extra step of paying for
> private placement before becoming eligible for Medicaid is
> constitutional anyway. . . . Additionally, Duffy has not elucidated
> the nature of the expenses, if any, Medicaid would pay (e.g., travel
> expenses, placement expenses, other fees charged by the facility,
> etc.), but for her residency problem. That is to say, assuming
> *arguendo* that Duffy could legally establish residence by moving
> to an in-state ICF/MR facility, it is unclear what expenses she
> would incur until she qualifies for Medicaid in Delaware.

Opinion, dated October 28, 2005 (D.I. 34), at 7-8.

19.    If Ms. Duffy was accepted at a Delaware residential facility, and was financially

eligible for Medicaid, Delaware Medicaid would not treat her any differently – in terms of what

expenses Medicaid covers – than someone who was already a Delaware resident before moving

into the Delaware facility. Ms. Duffy would not be penalized – in terms of Medicaid coverage –

because she moved to the Delaware facility from out-of-state.

20.    More specifically, the fact that Ms. Duffy would be applying to and (if accepted)

moving to a Delaware facility from out-of-state would not mean that, as Judge Sleet expressed

the concern, she would be forced "to go through the extra step of paying for private placement

before becoming eligible for Medicaid." Whatever fees of the residential facility Medicaid pays

for when someone moves from southern Delaware to northern Delaware would likewise be paid

by Medicaid for someone like Ms. Duffy who would be moving to a Delaware facility from out-

of-state.

· 7 ·

A028

### There Is No "Catch-22" Here

21.    In sum, plaintiff Marianne Duffy is not facing a "Catch-22." The Complaint's assertion (at ¶ 18) that the federal and state Medicaid residency provisions "operate to permanently trap Marianne Duffy in the state in which she is currently living (North Carolina)" is not correct.  She would become a Delaware resident – and immediately eligible for Delaware Medicaid – if she applied to, was accepted at, and moved into a Delaware residential facility.

22.    Indeed, the federal and state Medicaid regulations confirm that Ms. Duffy's Medicaid eligibility would begin as soon as she moved into a Delaware residential facility.  The federal regulations state: "The [State] agency may not deny Medicaid eligibility to an individual in an institution, who satisfies the residency rules set forth in this section, on the grounds that the individual did not establish residence in the State before entering the institution." 42 C.F.R. 435.403(j)(2).  Delaware's regulations say the same thing:  "A State cannot deny Medicaid eligibility . . . to an institutionalized individual because the individual did not establish residence in the community prior to admission to an institution." 16 Del. Adm. Code § 14110.8.1c.

23.    Ms. Duffy's recent answers to interrogatories state that her parents have contacted several residential facilities in Delaware.  As discussed above, when they find a facility in Delaware that they believe meets their daughter's needs, and when such a facility accepts Ms. Duffy and she moves from North Carolina into the Delaware facility, she will become a Delaware resident under the federal and Delaware Medicaid regulations and, assuming she meets the Medicaid financial eligibility requirements, she will immediately become eligible for Delaware

A029

Medicaid.

I declare, under penalty of perjury, that the foregoing statement is true and correct.

Executed on May 12, 2006.

_____
Pamela J. Tyranski

- 9 -

A030

# EXHIBIT "1"

Revision: HCFA-PM-91-4    (BPD)    OMB No. 0938-
AUGUST 1991

### STATE PLAN UNDER TITLE XIX OF THE SOCIAL SECURITY ACT
### MEDICAL ASSISTANCE PROGRAM

State/Territory: _____ DELAWARE _____

Citation    As a condition for receipt of Federal funds under
42 CFR    title XIX of the Social Security Act, the
430.10

DELAWARE DEPARTMENT OF HEALTH AND SOCIAL SERVICES
(Single State Agency)

submits the following State plan for the medical
assistance program, and hereby agrees to administer
the program in accordance with the provisions of this
State plan, the requirements of titles XI and XIX of
the Act, and all applicable Federal regulations and
other official issuances of the Department.

TN No.    SP-300
Supersedes    Approval Date MAY 27 1992    Effective Date JAN 01 1992
TN No.    SP-120
HCFA ID:    7982E

A032

# DISABILITIES LAW PROGRAM
### COMMUNITY LEGAL AID SOCIETY, INC.
100 W. 10th Street, Suite 801
Wilmington, Delaware 19801
(302) 575-0690    (TTY) (302) 575-0696    Fax (302) 575-0840

May 5, 2006

BY HAND DELIVERY

Noel C. Burnham, Esq.
Montgomery, McCracken, Walker & Rhoads
300 Delaware Avenue, Suite 750
Wilmington, DE 19801

      RE:   <u>Duffy v. Meconi et al.  Supplemental Discover Responses</u>

Dear Noel:

     In response to Defendants' Document Request No. 3, enclosed is Marianne Duffy's application for residential services with Chesapeake Care Resources, Inc.

     We are still attempting to obtain Ms. Duffy's applications to the Mary Campbell Center and CHIMES in response to Document Request No. 2.

     In response to Interrogatory No. 6, Answer 1(f), Mary Campbell Center has rejected Ms. Duffy's application.

     If you have any questions, please do not hesitate to call us.

                      Sincerely,

                      MaryBeth Musumeci
                      Daniel Atkins

                      Attorneys for Marianne Duffy

Enclosure

cc:   Sean and Elise Duffy (w/ enclosure)
      Sarah Somers and Jane Perkins (w/ enclosure)
      Patrick Ryan, Esq (w/ enclosure)

**A033**

KENT COUNTY    840 Walker Road, Dover, DE 19901        (302) 674-8500
SUSSEX COUNTY  144 E. Market Street, Georgetown, DE 19947    (302) 856-3742
DELAWARE'S PROTECTION AND ADVOCACY SYSTEM FOR PERSONS WITH DISABILITIES