## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARIANNE DUFFY, by her parents and legal guardians, SEAN and ELISE DUFFY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 05-CV-127-GMS |
| VINCENT MECONI, Secretary, Delaware Department of Health & Social Services, in his official capacity, et al. | ) ) ) ) | |
| Defendants. | ) ) | |

### DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(b)

Richard G. Placey
(DE Bar I.D. No. 4206)
MONTGOMERY, McCRACKEN,
    WALKER & RHOADS, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE 19801
(302) 504-7800

A. Ann Woolfolk
(DE Bar I.D. No. 2642)
Deputy Attorney General
State of Delaware – Department of Justice
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302) 577-8400

Patrick T. Ryan
Jessica C. Goebeler
MONTGOMERY, McCRACKEN,
    WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500

Counsel for Defendants

Date:  May 12, 2006

## TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................................................... 1

II.    BACKGROUND ........................................................................................................... 2

    A.    Plaintiff's Allegations ...................................................................................... 2

    B.    The Duffys' Efforts to Locate An Appropriate Residential Placement for Their Daughter ............................................................................................... 4

III.    SUMMARY OF ARGUMENT ..................................................................................... 7

IV.    ARGUMENT ................................................................................................................. 8

    A.    The Federal and State Medicaid Residency Rules ............................................... 9

    B.    The Court's Concerns in Denying the Motion to Dismiss .................................. 11

    C.    Neither the Federal Medicaid Regulations Nor Delaware's Medicaid Regulations "Trap" Plaintiff in North Carolina .................................................... 13

           1.    If Plaintiff Moved to an Appropriate Residential Facility in Delaware, She Would Immediately Become a Delaware Resident ......... 13

           2.    If Plaintiff Moved to an Appropriate Residential Facility in Delaware, She Would Immediately Become Eligible for Delaware Medicaid ..................................................................................................... 16

    D.    Neither the Medicaid Statute Nor Delaware's Medicaid Plan Obligates the State Defendants to Provide a Residential Placement for Plaintiff ...................... 17

           1.    Plaintiff's Amended Complaint Does Not Claim Entitlement to a Residential Placement ............................................................................. 18

           2.    The Medicaid Statute Obligates the States to Pay for – Not Provide – ICF/MR Services ............................................................................... 19

           3.    Delaware's Home and Community-Based Waiver Program is Properly Limited to a Target Population That Does Not Include Plaintiff ........................................................................................................ 20

    E.    Plaintiff Has Failed to Identify Any Aspect of Delaware's Medicaid Program That Penalizes Her Constitutional Right to Travel .............................. 22

V.    CONCLUSION............................................................................................................. 24

# TABLE OF AUTHORITIES

## Cases

Alaska Dept. of Health and Soc. Servs. v. Ctrs. For Medicare and Medicaid Servs.,
424 F.3d 931 (9th Cir. 2005) ............................................................................. 14

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) .............................................. 8

Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d 564 (3d Cir. 1986) ................... 8

Bethesda Lutheran Homes and Servs. v. Leean, 122 F.3d 443 (7th Cir. 1997)................. 1, 11, 12

Bruggeman v. Blagojevich, 324 F.3d 906 (7th Cir. 2003) ........................................ 19

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ................................................... 8

Chipollini v. Spencer Gifts, Inc., 814 F.2d 893 (3d Cir.) (en banc), cert.
dismissed, 483 U.S. 1052 (1987) ............................................................... 8

Clark v. Richman, 339 F. Supp. 2d 631, 637 (M.D. Pa. 2004)........................... 14, 19-20

Evergreen Presbyterian Ministries v. Hood, 235 F.3d 908 (5th Cir. 2000) ................. 14

Pa. Pharmacists Ass'n v. Houstoun, 283 F.3d 531 (3d Cir. 2002) ............................ 14

S.D. v. Hood, 391 F.3d 581 (5th Cir. 2004) .................................................. 14

Sanders v. Kansas Dep't of Social and Rehab. Servs., 317 F. Supp. 2d 1233 (D. Kan. 2004) ... 20

Westside Mothers v. Olszewski, 368 F. Supp. 2d 740 (E.D. Mich. 2005) .................. 19

Wilder v. Va. Hosp. Ass'n, 496 U.S. 498 (1990) ............................................ 14

## Federal Statutes, Regulations, and Rules

42 U.S.C. § 1396a(b)(2)....................................................................... 16

42 U.S.C. § 1396d(a) ......................................................................... 19

42 U.S.C. § 1396d(a)(xiii)(15)................................................................ 19

42 U.S.C. § 1396n(c) ......................................................................... 20

42 C.F.R. § 430.25(b) ..................................................................... 20-21

42 C.F.R. § 430.25(h)(3)(ii)................................................................. 21

42 C.F.R. § 435.403 .................................................................................................. 9

42 C.F.R. § 435.403(i)(2) ................................................................................... 13-14

42 C.F.R. § 435.403(i)(2)(ii) ............................................................................ 10, 15

42 C.F.R. § 435.403(i)(2)(iii) ................................................................................ 15

42 C.F.R. § 435.403(j)(2) ...................................................................................... 16

42 C.F.R. § 441.301(b)(6) ..................................................................................... 21

Fed. R. Civ. P. 56(c) ................................................................................................ 8

## Delaware Statutes and Regulations

16 Del. Adm. Code § 14100.7a ............................................................................. 10

16 Del. Adm. Code § 14110.7 ............................................................................... 10

16 Del. Adm. Code § 14110.7a ............................................................................. 15

16 Del. Adm. Code § 14110.8.1 ........................................................................ 16-17

**I.**     **INTRODUCTION**

In this Court's October 28, 2005 opinion explaining its denial of Defendants' Motion to

Dismiss, the Court stated that it was "not prepared to agree, at least preliminarily," with the state

defendants' contention that plaintiff Marianne Duffy's circumstances are materially different

from both sets of plaintiffs in the Seventh Circuit's decision in Bethesda Lutheran Homes and

Servs. v. Leean, 122 F.3d 443 (7th Cir. 1997).  See Opinion (D.I. 34), at 6.  The Court identified

a number of concerns that it had about the effect of the federal Medicaid regulations and Dela-

ware's state Medicaid regulations on plaintiff's ability to become eligible for Delaware Medi-

caid, id. at 6-8, and concluded:  "Suffice it to say, without further briefing on these seemingly

crucial issues, the court cannot grant the Defendants' motion to dismiss."  Id. at 8.

This Motion for Summary Judgment addresses the Court's concerns and demonstrates

that the state defendants' application of the federal Medicaid residency rules (and Delaware's

own Medicaid residency regulations) are not in any way impinging upon or penalizing plaintiff's

ability to exercise her constitutional right to travel.  The Medicaid regulations do not prevent

plaintiff from applying to and, if accepted, moving into an appropriate residential facility in

Delaware.  As required by law, her status as a Delaware resident (eligible for Delaware Medi-

caid) would begin immediately upon her placement in a Delaware facility – because her parents

are Delaware residents.  As far as Medicaid coverage goes, she would be treated no differently,

in moving from a North Carolina facility to a Delaware facility, than she would be treated if she

moved from one Delaware facility to another.  Under the undisputed facts here, this case simply

does not implicate plaintiff's constitutional right to travel.

Since each of the three counts in plaintiff's First Amended Complaint for Declaratory and

Injunctive Relief ("Amended Complaint") is based on the allegation that the state defendants are

violating plaintiff's right to travel, plaintiff cannot prevail on any of her claims.  The state defen-

dants are therefore entitled to summary judgment in their favor in this lawsuit.

## II.     BACKGROUND

### A.     Plaintiff's Allegations

The Amended Complaint alleges that plaintiff Marianne Duffy is "a 31-year-old Medi-

caid beneficiary with developmental disabilities including blindness, seizures, autism, and

mental retardation."  Am. Compl. (D.I. 36) ¶ 1.  Ms. Duffy "has resided at Carobell, an ICF/MR

[i.e., an intermediate care facility for persons with mental retardation] group home in Hubert,

North Carolina, since 1993."  Id. ¶ 22.  The Amended Complaint further alleges:

> She is non-verbal and requires a highly structured living
> environment with constant supervision and care due to her
> susceptibility to seizures, falling, and self-abusive behavior.  Her
> parents are unable to provide her care in their own home, even for
> a weekend.  She is not capable of indicating intent within the
> meaning of the Medicaid residency regulations, 42 C.F.R.
> § 435.403(c).

Am. Compl. ¶ 22.  Her parents, Sean and Elise Duffy, are her legal guardians.  Id. ¶ 23.

In April 2001, plaintiff's father "relocated to Delaware as a result of a new job," and her

mother likewise moved to Delaware some months later.  Am. Compl. (D.I. 36) ¶ 23.  The

Amended Complaint asserts that plaintiff's parents "wish to move her to an ICF/MR or com-

munity-based residential placement in Delaware so that she can live closer to her family."  Id.

Plaintiff currently receives Medicaid benefits in North Carolina.  Am. Compl. (D.I. 36)

¶ 25.  The Amended Complaint alleges that her parents "have applied for services, primarily

seeking an ICF/MR or community-based residential placement in Delaware, through DDDS."

Id.  Plaintiff further asserts that her "application for DDDS services has been placed on 'inactive

status' because, according to DDDS, although [she] was determined to meet the clinical

eligibility criteria, she first had to establish Delaware residency before she could access DDDS services, including Medicaid services." Id. See also Declaration of Marianne Smith ("Smith Decl."), a copy of which is included in the accompanying Appendix in Support of Defendants' Motion for Summary Judgment ("Appendix" or "App."), at A001-6, at ¶¶ 5-6.[1]

Plaintiff asserts that the Delaware state "defendants' process for determining [her] eligibility for Medicaid services" is unconstitutional because it abridges her right to interstate travel. Am. Compl. (D.I. 36) ¶¶ 28-34.  The Amended Complaint alleges:

> [B]ecause Marianne's disabilities require specific services and living arrangements funded by the state's Medicaid program, she is precluded from physically relocating to a new state of her choice unless an appropriate Medicaid-covered residential placement and necessary medical services will be available to her on the day that she arrives.  Marianne cannot access her right to become a citizen of another state, and thereby access the corresponding privileges and immunities afforded by that state to its citizens, because her disabilities prevent her from establishing a residence in a new state without the willingness of the new state to provide her with Medicaid services on the day of her arrival.

Id. ¶ 27.  Plaintiff asserts that the Medicaid residency rules create a "Catch-22" for her: "Marianne's health and developmental conditions prohibit her from physically relocating to Delaware without first obtaining appropriate residential placement and services; yet, due to her limited income, she cannot gain access to those services without first meeting the Delaware Medicaid program's residency requirements." Id. ¶ 2.

The Amended Complaint thus does not assert that plaintiff is constitutionally (or otherwise) entitled to be given a residential placement in Delaware.  Rather, plaintiff is challenging the state defendants' "process" for determining her eligibility for Medicaid services.  In response

---

[1] For purposes of this Motion for Summary Judgment, the state defendants do not dispute the factual allegations referenced in the first three paragraphs of this Background section.

to a series of interrogatories designed to clarify plaintiff's contentions in this lawsuit, plaintiff

has asserted: "Plaintiff contends that she should be permitted to establish Delaware residency

without first being required to physically move to Delaware." See Plaintiff's Answers to Defen-

dants' First Set of Interrogatories, a copy of which is included in the accompanying Appendix at

Answers to Interrogatory Nos. 1-5 (App. A007-12).

      The Amended Complaint asserts three claims:

> Count I:  Violation of Privileges and Immunities Clause of Article IV
> of the United States Constitution
>
> Count II:  Violation of Privileges and Immunities Clause [sic] of the
> Fourteenth Amendment to the United States Constitution
>
> Count III:  Violation of the Equal Protection Clause of the Fourteenth
> Amendment to the United States Constitution

Am. Compl. (D.I. 36) ¶¶ 29-34.

      Plaintiff's Answering Brief to the state defendants' Motion to Dismiss clarified that her

equal protection claim (Count III) is based on an alleged violation of her constitutional "right to

travel" – and not on any alleged discrimination against her on the basis of disability or wealth.

See Answering Brief (D.I. 18) at 10.  As such, the equal protection claim merely restates the

right to travel claims alleged in Counts I and II and rises or falls with those claims.

    **B.**    <u>**The Duffys' Efforts to Locate An Appropriate Residential Placement**</u>
<u>**for Their Daughter**</u>

      The state defendants' First Set of Interrogatories Directed to Plaintiff asked that plaintiff

identify each residential facility (in Delaware or outside Delaware) that plaintiff's parents or

other representatives have contacted since January 1, 2001, in an effort to locate an appropriate

residential placement for Ms. Duffy.  Plaintiff's answers, copies of which are included in the

accompanying Appendix at A007-21, identify four facilities/organizations in Delaware and one
in Maryland that plaintiff's parents have contacted:

     (1)   The Mary Campbell Center;

     (2)   Chimes Delaware;

     (3)   Community Systems, Inc. ("CSI");

     (4)   Bancroft; and

     (5)   Chesapeake Care Resources, Inc. – in North East, Maryland.

See Answers to Interrogatory Nos. 6 and 8 (App. A012-16).  Applications have been (or are
being) submitted to three of the five (Mary Campbell Center, Chimes Delaware and Chesapeake
Care Resources), and the interrogatory answers state that one (Chimes Delaware) has informed
the Duffys that it does not believe it can meet their daughter's needs.  See Answer to Interroga-
tory No. 6 (App. A012-14).[2]

     None of these contacts with residential facilities began until July 2005 – after plaintiffs'
parents filed this lawsuit and after the state defendants filed their Motion to Dismiss.  See
Answer to Interrogatory No. 6 (App. A012-14).  Plaintiffs' parents did not pursue an initial
attempt to contact CSI (because they did not receive a return telephone call) and decided not to
apply to Bancroft (because they concluded that "Bancroft's residents are higher functioning"
than their daughter).  Id.  Their application at Chesapeake Care Resources in Maryland is still

---

[2] In a May 5, 2006 letter, a copy of which is included in the accompanying Appendix at A033, plaintiff's
counsel states (without explanation) that Mary Campbell Center "has rejected Ms. Duffy's application."
Plaintiff has not yet produced any documentation concerning the decision on Ms. Duffy's application to
Mary Campbell Center.

pending.[3]

What plaintiffs' parents are now doing – contacting residential providers to see if they can find a placement in Delaware that meets their daughter's needs – demonstrates that the Medicaid residency rules do not impinge on plaintiff's constitutional right to travel.  There are alternatives available to the Duffys.  As explained in the Smith Decl.:

> The Mary Campbell Center in Wilmington, Delaware, is a private intermediate care facility for people with mental retardation ("ICF/MR").  In addition, there are residential service providers who contract with the State to provide residential services under the Medicaid HCB waiver but who are not barred from separately contracting with families who need and desire residential services.

Smith Decl. ¶ 15 (App. A005).

There is absolutely no evidence that the Duffys' efforts to find an appropriate residential facility for their daughter have been in any way blocked or hindered because plaintiff is currently residing in a North Carolina ICF/MR.  If a particular facility is unable or unwilling to accept Ms. Duffy, or if the Duffys themselves conclude that a facility will not meet their daughter's needs, then it is those factors – and not her current status as a North Carolina resident under the Medicaid residency rules – that would prevent her from moving to the Delaware facility.

---

[3] Plaintiff's parents contacted Chesapeake Care Resources on April 13, 2006.  See Answer to Interrogatory No. 8 (App. A015-16).  If Maryland-based Chesapeake Care Resources accepts plaintiff as a resident and plaintiff moves to its facilities, plaintiff's claims in this case (which seek declaratory and injunctive relief only) would become moot.

### III.    SUMMARY OF ARGUMENT

1.    The state defendants are entitled to summary judgment because, under the undisputed facts of this case, their application of the federal and state Medicaid residency rules to plaintiff's request for DDDS services does not impinge upon plaintiff Marianne Duffy's constitutional right to travel.  There is no legal obstacle to plaintiff's applying to and, if accepted, moving into an appropriate Delaware residential facility.  Under the governing federal Medicaid regulations on residency – specifically 42 C.F.R. § 435.403(i)(2)(ii) and § 435.403(i)(2)(iii) – as well as Delaware's Medicaid regulations, plaintiff would immediately become a Delaware resident, eligible for Delaware Medicaid (and DDDS services) if she applied to, was accepted at, and moved into an appropriate residential facility in Delaware.

2.    The state defendants have no affirmative obligation to provide plaintiff with a residential placement in Delaware.  The federal Medicaid statute requires participating states to provide "medical assistance" – which is specifically defined as "payment" for covered services (such as ICF/MR services), not the actual services themselves.  The state defendants' application of the Medicaid residency rules to plaintiff in no way impinges upon plaintiff Marianne Duffy and her parents' ability to seek and, if accepted by the facility, move Ms. Duffy into an appropriate residential facility in Delaware.

3.    If plaintiff was accepted at a Delaware residential facility, and was financially eligible for Medicaid, Delaware Medicaid would not treat her any differently – in terms of what expenses Medicaid covers – than someone who was already a Delaware resident before moving into the Delaware facility.  Plaintiff would not be penalized – in terms of Medicaid coverage – because she moved to the Delaware facility from out-of-state.

IV.    **ARGUMENT**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers
> to interrogatories, and admissions on file, together with the affi-
> davits, if any, show that there is no genuine issue as to any material
> fact and that the moving party is entitled to a judgment as a matter
> of law.

Fed. R. Civ. P. 56(c). See also Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir.) (en

banc), cert. dismissed, 483 U.S. 1052 (1987); Arnold Pontiac-GMC, Inc. v. General Motors

Corp., 786 F.2d 564, 568 (3d Cir. 1986).

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Supreme Court explained:

> In our view, the plain language of Rule 56(c) mandates the entry of
> summary judgment, after adequate time for discovery and upon
> motion, against a party who fails to make a showing sufficient to
> establish the existence of an element essential to that party's case,
> and on which that party will bear the burden of proof at trial.

Id. at 322 (emphasis added).  In ruling on a motion for summary judgment, the Court must

determine "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

The state defendants are entitled to summary judgment because, under the undisputed

facts of this case, their application of the federal and state Medicaid residency rules to plaintiff's

request for DDDS services does not impinge upon plaintiff Marianne Duffy's constitutional

right to travel.

**A.**     **The Federal and State Medicaid Residency Rules**

The federal Medicaid residency requirement is found in 42 C.F.R. § 435.403.  The

regulations provide:

> (a)  Requirement.  The agency must provide Medicaid to eligible
> residents of the State, including residents who are absent from the
> State.  . . .
>
> *          *          *
>
> (i)  Individuals Age 21 and over.  (1) For any individual not
> residing in an institution as defined in paragraph (b), the State of
> residence is the State where the individual is—
>
>> (i) Living with the intention to remain there permanently or
>> for an indefinite period (or if incapable of stating intent, where the
>> individual is living);  . . .
>
> *          *          *
>
> (2) For any institutionalized individual who became incapable of
> indicating intent before age 21, the State of residence is—
>
> *          *          *
>
>> (ii)  The parent's or legal guardian's State of residence at
>> the time of placement . . . ; or
>
>> (iii)  The current State of residence of the parent or legal
>> guardian who files the application if the individual is
>> institutionalized in that State . . . .

42 C.F.R. § 435.403.  See also Declaration of Pamela J. Tyranski ("Tyranski Decl."), a copy of

which is included in the accompanying Appendix at A022-32, at ¶¶ 8-9.

The Medicaid residency criteria that appear in the Delaware Division of Social Services

Manual ("DSSM") are similar to the federal regulations, but as the Court noted in its decision on

Defendants' Motion to Dismiss (D.I. 34), at 7, the residency provisions in the DSSM track the

language of 42 C.F.R. § 435.403(i)(2)(ii) but do not include the additional language from 42

C.F.R. § 435.403(i)(2)(iii).  <u>See</u> Tyranski Decl. ¶ 12 (App. A025-26).  The DSSM provisions

state:

### 14110.7   Criteria Specific To Individuals Age 21 And Over

    a.   For any institutionalized individual who became incapable of indicating intent before age 21, the State of residence is:  the parent's or legal guardian's State of residence at the time of placement or if a legal guardian is appointed and parental rights are terminated, the State of residence of the guardian is used.

    b.   For any institutionalized individual who became incapable of indicating intent at or after 21, (irrespective of any type of guardianship) the State of residence is the State in which the individual is physically present, except where another State makes a placement.

    c.   For any non-institutionalized individual incapable of indicating intent at or after age 21, the State of residence is where the individual is living.

16 Del. Adm. Code § 14110.7.

Under both the federal regulations and Delaware's regulations, plaintiff is now a resident

of North Carolina because that was the State of her parents' residency when she was placed in

the Carobell facility in North Carolina.  <u>See</u> 42 C.F.R. § 435.403(i)(2)(ii); 16 Del. Adm. Code

§ 14100.7a; Am. Compl. ¶ 16.

It was the state defendants' assertion in their Motion to Dismiss that, because plaintiffs'

parents live in Delaware, 42 C.F.R. § 435.403(i)(2)(iii) would make plaintiff a Delaware resident

if she moved directly from the North Carolina ICF/MR into an appropriate facility in Delaware –

because Delaware would then be "[t]he current State of residence of the parent or legal guardian

who files the [Medicaid] application if the individual is institutionalized in that State" – that the

Court was not prepared to accept without further briefing.  <u>See</u> Opinion (D.I. 34) at 6-8.

**B.**     **The Court's Concerns in Denying the Motion to Dismiss**

The state defendants' Motion to Dismiss asserted that plaintiff's Complaint is deficient because it does not assert (and cannot assert) that the state defendants' application of the Medicaid residency requirement precludes her from being accepted in any appropriate residential facility in Delaware.  See D.I. 11 at 7-11.  To demonstrate the difference between a set of circumstances that did impinge upon the right to travel and a set of circumstances – specifically, Ms. Duffy's – that does not, the state defendants pointed to the Seventh Circuit's decision in Bethesda Lutheran Homes and Servs. v. Leean, 122 F.3d 443 (7th Cir. 1997).

In Bethesda Lutheran, one group of developmentally disabled persons living outside Wisconsin sought to be admitted into a private ICF/MR facility in Wisconsin.  The State of Wisconsin, however, required that no person could be admitted into such a facility (whether public or private) unless (a) the placement was recommended by the social services agency of the "individual's county of residence" and (b) a court order of "protective placement" issued in "the county of residence of the person to be protected."  Wisconsin interpreted these state law requirements as referring to "counties" in Wisconsin.  122 F.3d at 445.  Thus, to gain admission into any Wisconsin ICF/MR, the out-of-state residents first had to establish residence in Wisconsin – something they could not do because their condition required that they live in an ICF/MR.  Id. at 446.  The Seventh Circuit held that this requirement unconstitutionally burdened their right to travel.  Id. at 445-46.

The Seventh Circuit also found a constitutional violation in Bethesda Lutheran for a second group of developmentally disabled persons:  namely, a group of plaintiffs who already lived in the private Wisconsin ICF/MR, having moved there from their parents' homes in Illinois.  See 122 F.3d at 447-48.  As to those plaintiffs, the Medicaid residency rules made them

- 11 -

Illinois residents (the residence of their parents at the time of placement) and, as described in the

Bethesda Lutheran opinion, neither Wisconsin nor Illinois would pay Medicaid benefits for their

care in the Wisconsin ICF/MR. Id. at 448. This loss of Medicaid benefits violated the second

group's right to travel. Id. at 448-49.

      The state defendants' Motion to Dismiss asserted that, unlike the first set of plaintiffs in

Bethesda Lutheran, Ms. Duffy is not precluded by any Delaware law from moving directly from

the North Carolina ICF/MR into a Delaware residential facility. See D.I. 11 at 10. And, unlike

the second set of plaintiffs in Bethesda Lutheran, there is a specific federal Medicaid residency

regulation – 42 C.F.R. 435.403(i)(2)(iii) – that would make her a Delaware resident (because her

parents live in Delaware) as soon as she moved into a Delaware residential facility that accepted

her. See D.I. 11 at 10.

      In its October 28, 2005 decision on the Motion to Dismiss, this Court agreed that plaintiff

Marianne Duffy's circumstances did not involve the same type of state-created obstacle to her

becoming a Delaware resident that the Wisconsin laws had created for the first set of plaintiffs in

Bethesda Lutheran. See Opinion (D.I. 34) at 6. The Court was not, however, "prepared to agree,

at least preliminarily, with the Defendants' distinction regarding the second set [of Bethesda

Lutheran plaintiffs]." Id. The Court identified three concerns it had about the state defendants'

assertion that 42 C.F.R. 435.403(i)(2)(iii) would make plaintiff a Delaware resident (and eligible

for Delaware Medicaid) as soon as she moved into a Delaware residential facility that accepted

her:

> The problem arises because Delaware does not have a similar
> provision; its regulations only use the "at the time of placement"
> language of § 435.403(i)(2)(ii). *See* 16-5000-5100 Del Code Regs.
> § 14110.7a. Therefore, on their face, the state regulations appear
> to trap Duffy in North Carolina.

Even if Duffy could become a resident in the manner described by Defendants, it is unclear whether a regulatory scheme that forces a prospective resident to go through the extra step of paying for private placement before becoming eligible for Medicaid is constitutional anyway. The court also queries why the parties have failed to address the effect, if any, of one of Medicaid's "specific prohibitions," which states:

> The agency may not deny Medicaid eligibility to an individual in an institution, who satisfies the residency rules set forth in this section, on the grounds that the individual did not establish residence in the State before entering the institution.

42 C.F.R. § 435.403(j)(2). . . . Additionally, Duffy has not elucidated the nature of the expenses, if any, Medicaid would pay (e.g., travel expenses, placement expenses, other fees charged by the facility, etc.), but for her residency problem. That is to say, assuming *arguendo* that Duffy could legally establish residence by moving to an in-state ICF/MR facility, it is unclear what expenses she would incur until she qualifies for Medicaid in Delaware.

Opinion (D.I. 34) at 7-8.

### C. Neither the Federal Medicaid Regulations Nor Delaware's Medicaid Regulations "Trap" Plaintiff in North Carolina

1. If Plaintiff Moved to an Appropriate Residential Facility in Delaware, She Would Immediately Become a Delaware Resident

The applicable federal Medicaid regulations on residency state that for "any institutionalized individual who became incapable of indicating intent before age 21, the State of residence" is:

> (ii) The parent's or legal guardian's State of residence at the time of placement . . . ; or

> (iii) The current State of residence of the parent or legal guardian who files the application if the individual is institutionalized in that State . . . .

42 C.F.R. § 435.403(i)(2). If plaintiff applied to, was accepted at, and moved into an appropriate residential facility in Delaware, both (ii) and (iii) above would make her a Delaware resident since her parents' State of residence – both currently and at the time of placement in the Delaware facility – would be Delaware (assuming plaintiff's parents do not move outside of Delaware prior to plaintiff's placement). See Tyranski Decl. ¶ 11 (App. A025).

The Court's first concern stemmed from the fact that Delaware does not have a regulation parallel to 42 C.F.R. § 435.403(i)(2)(iii) ("The current State of residence of the parent or legal guardian who files the application if the individual is institutionalized in that State."). See Opinion (D.I. 34) at 7. As explained in the Tyranski Decl., at ¶¶ 11-17 (App. A025-27), however, there are several reasons why this difference between the federal Medicaid regulations and Delaware's regulations is not material here.

First, by participating in the Medicaid program, Delaware is required to follow the federal Medicaid regulations. See, e.g., Pa. Pharmacists Ass'n v. Houstoun, 283 F.3d 531, 533 (3d Cir. 2002) ("If a state chooses to participate in the [Medicaid] program, it must comply with the Medicaid Act and implementing regulations promulgated by the Secretary of Health and Human Services"); Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 502 (1990) (same); Alaska Dept. of Health and Soc. Servs. v. Ctrs. For Medicare and Medicaid Servs., 424 F.3d 931, 935 (9th Cir. 2005) (same); S.D. v. Hood, 391 F.3d 581, 586 (5th Cir. 2004) (same); Evergreen Presbyterian Ministries v. Hood, 235 F.3d 908, 915 (5th Cir. 2000) (same); Clark v. Richman, 339 F. Supp. 2d 631, 637 (M.D. Pa. 2004) (same). See also Tyranski Decl. ¶ 14 (App. A026). Thus, if a conflict or a discrepancy exists between federal and state Medicaid regulations, the federal Medicaid regulations govern. Under the federal Medicaid regulations, plaintiff, were she to be placed in a residential facility in Delaware, would be a resident of Delaware because her parents are resi-

dents of Delaware, both "currently" and "at the time of placement."  See 42 C.F.R. § 435.403(i)-(2)(ii); 42 C.F.R. § 435.403(i)(2)(iii).  Delaware must (and does) follow those federal regulations.  See Tyranski Decl. ¶ 14 (App. A026).

Second, by the terms of Delaware's Medicaid Plan, Delaware has agreed to abide by the federal Medicaid regulations. The Delaware State Medicaid Plan provides:

> As a condition for receipt of Federal funds under title XIX of the Social Security Act, the Delaware Department of Health and Social Services submits the following State plan for the medical assistance program, and hereby agrees to administer the program in accordance with the provisions of this State plan, the requirements of titles XI and XIX of the Act, <u>and all applicable Federal regulations</u> and other official issuances of the Department.

See State Plan Under Title XIX of the Social Security Act, at page 1 (State Plan Submittal Statement) (emphasis added), a copy of which is attached as Exhibit "1" to the Tyranski Decl. (App. A032).  Thus, Delaware has agreed in its State Plan to abide by <u>all</u> the residency provisions in 42 C.F.R. § 435.403.  See Tyranski Decl. ¶ 15 (App. A026-27).

Third, even under Delaware's own Medicaid regulations, plaintiff would be a Delaware resident immediately upon being placed in a residential facility in Delaware.  The relevant Delaware regulation on residency states:

> For any institutionalized individual who became incapable of indicating intent before age 21, the State of residence is: the parent's or legal guardian's State of residence at the time of placement….

16 Del. Adm. Code § 14110.7a.  Even if only the Delaware regulations governed, plaintiff would become a Delaware resident if she moved directly into a Delaware facility because Delaware would be her "parent's or legal guardian's State of residence at the time of placement."  See Tyranski Decl. ¶ 16 (App. A027).

The state regulations thus do not "trap" plaintiff's residency in North Carolina.  If she applied to, was accepted at, and moved into a Delaware facility, she would become a Delaware resident.

> 2.   If Plaintiff Moved to an Appropriate Residential Facility in Delaware, She Would Immediately Become Eligible for Delaware Medicaid

This Court also expressed concern that even if plaintiff were considered a Delaware resident immediately upon placement in a Delaware residential facility, she may be "force[d] … to go through the extra step of paying for private placement before becoming eligible for Medicaid."  Opinion (D.I. 34) at 7.  As the Court noted, however, both the federal and Delaware Medicaid regulations prohibit the State from denying Medicaid eligibility once plaintiff is deemed a Delaware resident.

The federal Medicaid statute prohibits approval of "any [state] plan which imposes, as a condition of eligibility for medical assistance under the plan – … (2) any residence requirement which excludes any individual who resides in the State, regardless of whether or not the residence is maintained permanently or at a fixed address…."  42 U.S.C. § 1396a(b)(2).  Section 435.403(j)(2) of the federal Medicaid regulations further specifies:  "The agency may not deny Medicaid eligibility to an individual in an institution, who satisfies the residency rules set forth in this section, on the grounds that the individual did not establish residence in the State before entering the institution."  42 C.F.R. § 435.403(j)(2).  As previously stated, by participating in the Medicaid program, Delaware is required to, has agreed to, and does comply with the federal Medicaid regulations.  See Tyranski Decl. ¶¶ 14-15 (App. A026-27).

Delaware's own Medicaid regulations likewise provide:  "A State cannot deny Medicaid eligibility: c. to an institutionalized individual because the individual did not establish residence

- 16 -

in the community prior to admission to an institution." 16 Del. Adm. Code § 14110.8.1. <u>See</u> <u>also</u> Tyranski Decl. ¶ 22 (App. A029).

Plaintiff would thus immediately become a Delaware resident – and (assuming financial eligibility) eligible for Medicaid – if she moved directly from the North Carolina ICF/MR where she currently lives into a Delaware residential facility. For this reason, the residency rules are not impinging on her right to travel.

### D. Neither the Medicaid Statute Nor Delaware's Medicaid Plan Obligates the State Defendants to Provide a Residential Placement for Plaintiff

Plaintiff's Amended Complaint is correct in pointing out that the type of residential services plaintiffs' parents desire for their daughter can be covered by Medicaid either as "ICF/MR services" or as home and community-based ("HCB") services under a Medicaid HCB Waiver. <u>See</u> Am. Compl. (D.I. 36) ¶¶ 19-20.

There can be no argument, however, that, by including these services in its Medicaid Plan, Delaware itself is obligated to <u>provide</u> the services to plaintiff. First, the Amended Complaint does not assert an entitlement to residential placement. Second, the Medicaid statute itself does not require a participating state to provide the covered services. It merely requires the participating state to provide "payment of part or all of the cost" of the covered services. Third, it is clear that plaintiff does not meet the eligibility criteria for HCB services under the Medicaid HCB waiver.

1.    Plaintiff's Amended Complaint Does Not Claim Entitlement
      to a Residential Placement

Nowhere in the Amended Complaint is there an assertion that plaintiff is constitutionally

(or otherwise) entitled to be given a residential placement in Delaware by the State of Delaware.

Rather, her lawsuit challenges the Medicaid rules by which her residency is determined.

Moreover, plaintiff has confirmed that she is <u>not</u> challenging the requirement that Dela-

ware Medicaid is available only to Delaware residents.  Her Answering Brief on Defendants'

Motion to Dismiss stated:

> Ms. Duffy does not argue that she does not need to establish
> residency to be eligible for Medicaid benefits.  Rather she argues
> that the manner in which Delaware applies this requirement
> prevents her from *becoming* a Delaware resident.

Answering Brief (D.I. 17) at 13 (emphasis in original).  <u>See also</u> Am. Compl. (D.I. 36) ¶¶ 30, 32,

and 34 (defendants' "process for determining Plaintiff's eligibility for Medicaid services" is

alleged to be unconstitutional).

In addition, in response to Defendants' First Set of Interrogatories, plaintiff stated her

contention as follows:

> Plaintiff contends that she should be permitted to establish Dela-
> ware residency without first being required to physically move to
> Delaware.

Plaintiff's Answers to Defendants' Interrogatory Nos. 1-5 (App. A007-12).

She is thus <u>not</u> asserting that Delaware must provide her with a residential placement.

And she is <u>not</u> challenging the Medicaid residency requirement itself.  She is challenging the

rules by which residency is determined – and asserting that a different rule should apply to the

determination of her residency.

2.     The Medicaid Statute Obligates the States to Pay for – Not
Provide – ICF/MR Services

"Medical assistance" is clearly defined in the Medicaid Act as "<u>payment of part or all of</u>
<u>the cost</u> of the following care and services." 42 U.S.C. § 1396d(a) (emphasis added). One of the
services listed is "services in an intermediate care facility for the mentally retarded." 42 U.S.C.
§ 1396d(a)(xiii)(15). The obligation to provide "medical assistance" is thus an obligation to pro-
vide payment for covered services – not an obligation to provide the services themselves.

In <u>Bruggeman v. Blagojevich</u>, 324 F.3d 906, 910 (7th Cir. 2003), a group of develop-
mentally disabled adult Illinois residents alleged violation of 42 U.S.C. § 1396a(a)(8) because
the locations of ICF/MRs in Illinois were unfairly distributed geographically within the state. In
discussing the state's obligations under Medicaid, Judge Posner held:

> [T]he statutory reference to "assistance" appears to have reference
> to <u>financial</u> assistance rather than to actual medical <u>services</u>,
> though the distinction was missed in <u>Bryson v. Shumway</u> and <u>Doe</u>
> <u>v. Chiles</u>. Medicaid is a payment scheme, not a scheme for state-
> provided medical assistance, as through state-owned hospitals.
> The regulations that implement the provision indicate that what is
> required is a prompt determination of eligibility and prompt
> provision of funds to eligible individuals to enable them to obtain
> the covered medical services that they need, see 42 C.F.R. §§
> 435.911(a), .930(a)-(b); a requirement of prompt <u>treatment</u> would
> amount to a direct regulation of medical services.

324 F.3d at 910 (internal citations omitted) (emphases in original). <u>See also</u> <u>Westside Mothers v.</u>
<u>Olszewski</u>, 368 F. Supp. 2d 740, 763 (E.D. Mich. 2005) (holding that "[a] plain reading of
§ 1396a(a)(10) and § 1396d(a) supports the conclusion that Michigan is not required to provide
medical services directly under §§ 1396a(a)(8) or (a)(10) [because] '[m]edical assistance' means
'<u>payment</u> of part or all of the cost of [listed] care and services.' 42 U.S.C. § 1396d(a) (emphasis
added)"); <u>Clark v. Richman</u>, 339 F. Supp. 2d 631, 641 (M.D. Pa. 2004) ("We do not believe
§ 1396a(a)(10)(A) imposes an obligation on the Commonwealth to provide any services directly.

The most reasonable interpretation of § 1396a(a)(10)(A) is that medical assistance, i.e., financial assistance, must be provided for *at least* the care and services listed in paragraphs (1) through (5), (17) and (21) of section 1396d(a). To read the provision any other way would mean that the definition of medical assistance would be expanded, for purposes of § 1396a(a)(10)(A) only, beyond mere financial assistance and would oblige states to directly provide services as well, which would run contrary to the entire scheme envisioned under Title XIX"); <u>Sanders v. Kansas Dep't of Social and Rehab. Servs.</u>, 317 F. Supp. 2d 1233, 1250-51 (D. Kan. 2004) (stating that "the statutory reference to 'assistance' appears to refer to 'financial assistance rather than to actual medical services.' The statute simply provides no support for plaintiff's claim that he has a right or entitlement to a specific piece of durable medical equipment") (quoting <u>Bruggeman</u>, 324 F.3d at 910).

Thus, the Medicaid obligation that Delaware would incur if plaintiff became a Delaware resident would be an obligation to provide "payment" for covered Medicaid services – such as ICF/MR services. There is no separate obligation to provide the actual ICF/MR services.

> 3. Delaware's Home and Community-Based Waiver Program is Properly Limited to a Target Population That Does Not Include Plaintiff

Under § 1915(c) of the Medicaid statute, 42 U.S.C. § 1396n(c), Congress created an opportunity for states to apply for a federally-approved waiver of certain of the normal require-ments that govern Medicaid plans. <u>See</u> 42 U.S.C. § 1396n(c). The Medicaid regulations describe the purpose of a Medicaid waiver program as follows:

> Waivers are intended to provide the flexibility needed to enable States to try new and different approaches to the efficient and cost-effective delivery of health care services or to adapt their programs to the special needs of particular areas or groups of recipients. Waivers allow exceptions to State plan requirements and permit a

> State to implement innovative programs or activities on a time-
> limited basis, and subject to specific safeguards for the protection
> of recipients and the program.

42 C.F.R. § 430.25(b).  A waiver provides the state with more flexibility in choosing the types of services to provide and in defining (and limiting) the eligible population that will be targeted to receive those services.  See, e.g., 42 C.F.R. §§ 430.25(h)(3)(ii) and 441.301(b)(6).

Delaware has an approved Home and Community-Based ("HCB") waiver.  See Smith Decl. ¶ 3 (App. A001-2).  Under its HCB waiver, Delaware offers an array of services that include (a) case management services, (b) clinical support services, (c) residential habilitation services, (d) day habilitation services, (e) respite care services, and (f) environmental modifications.  Id.

To be eligible for HCB services under the waiver, a developmentally disabled person must be a resident of Delaware and meet the following eligibility criteria:

> An individual shall be eligible for the DDDS Home and
> Community-Based Services (HCBS) Waiver when they are:
>
> (1)  eligible for DDDS services;
> (2)  determined to need the ICF/MR level care and are financially
>      eligible for Medicaid; and
> (3)  in need of residential services (as identified via the "Emer-
>      gency" category of the DDDS Registry) or a resident of
>      Stockley Center.

See Smith Decl. ¶¶ 4, 8-12 (App. A002-4).

As explained in the Smith Declaration, after plaintiff's parents submitted an application for DDDS services, DDDS informed the Duffys that their daughter was not eligible for DDDS services because she was not (and is not) a resident of Delaware.  Smith Decl. ¶¶ 5-6 (App. A002-3).  DDDS nevertheless did an informal evaluation of the risk assessment factors that it uses to assess a person's need for residential services and communicated the results of that

evaluation to the Duffys.  Id. ¶ 14 (App. A005).  Largely because she appears to be living in a

safe and supportive group home in North Carolina, the informal evaluation suggested that

plaintiff would not be placed in the "Emergency" category.  She would therefore not be eligible

for residential placement by DDDS – even if she were considered to be a Delaware resident.  Id.

Plaintiff's Amended Complaint does not contend otherwise.

**E.**     **Plaintiff Has Failed to Identify Any Aspect of Delaware's Medicaid Program That Penalizes Her Constitutional Right to Travel**

The Court's final concern about whether the Medicaid regulations might place an

unjustified burden on plaintiff's exercise of her constitutional right to travel was that there might

be some additional expenses she might incur before qualifying for Medicaid in Delaware that, as

the Court put it, "Medicaid would pay (e.g., travel expenses, placement expenses, other fees

charged by the facility, etc.), but for her residency problem."  Opinion (D.I. 34) at 8.

As explained in the Tyranski Decl., if Ms. Duffy was accepted at a Delaware residential

facility, and was financially eligible for Medicaid, Delaware Medicaid would not treat her any

differently – in terms of what expenses Medicaid covers – than someone who was already a

Delaware resident before moving into the Delaware facility.  See Tyranski Decl. ¶ 19 (App.

A028).  More specifically:

> [T]he fact that Ms. Duffy would be applying to and (if accepted)
> moving to a Delaware facility from out-of-state would not mean
> that, as Judge Sleet expressed the concern, she would be forced "to
> go through the extra step of paying for private placement before
> becoming eligible for Medicaid."  Whatever fees of the residential
> facility Medicaid pays for when someone moves from southern
> Delaware to northern Delaware would likewise be paid by
> Medicaid for someone like Ms. Duffy who would be moving to a
> Delaware facility from out-of-state.

Id. ¶ 20 (App. A028).

In their First Set of Interrogatories Directed to Plaintiff, the state defendants asked plaintiff to identify any expenses she contended might implicate the concern the Court expressed. See Interrogatory No. 10 (App. A018). Plaintiffs' answer identified only those basic medical expenses that Medicaid would cover if plaintiff were a Delaware resident – and did not identify any of the types of expenses that, as the Court put it, "she would incur until she qualifies for Medicaid in Delaware." Opinion (D.I. 34) at 8. Plaintiff answered as follows:

> Plaintiff believes the phrase "moving into" is vague and ambiguous. Yes there are expenses that would be incurred and that Medicaid would cover if Plaintiff were allowed to move to Delaware. The Delaware Medicaid program is legally required to pay for all medically necessary covered services as set out in its state plan for Medicaid beneficiaries, such as inpatient hospital services, outpatient hospital services, laboratory and X-ray services, nursing facility services, physician services, home health services, private duty nursing services, prescription drugs, and ICF/MR services.

Plaintiff's Answer to Interrogatory No. 10 (App. A018).

Clearly, plaintiff has failed to identify any manner in which she would be treated differently than someone already a Delaware resident. In light of the state defendants' evidence that she would not be treated any differently – in terms of Medicaid coverage – than someone who was already a Delaware resident, see Tyranski Decl. ¶¶ 19-20 (App. A028), there is no genuine dispute of material fact on this point that could preclude the entry of summary judgment for the state defendants.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, there is no genuine issue as to any material fact concerning whether the state defendants' application of the Medicaid residency rules to plaintiff Marianne Duffy impinges upon her constitutional right to travel.  Accordingly, the state defendants are entitled to summary judgment in their favor on all claims asserted in plaintiff's Amended Complaint.

                                        Respectfully submitted,

 Dated: May 12, 2006                    /s/ Richard G. Placey
                                        Richard G. Placey
                                        (DE Bar I.D. No. 4206)
                                        Richard M. Donaldson
                                        (DE Bar I.D. No. 4367)
                                        MONTGOMERY, MCCRACKEN,
                                           WALKER & RHOADS, LLP
                                        300 Delaware Avenue, Suite 750
                                        Wilmington, DE 19801
                                        (302) 504-7800

                                        Patrick T. Ryan
                                        Jessica C. Goebeler
                                        MONTGOMERY, MCCRACKEN,
                                           WALKER & RHOADS, LLP
                                        123 South Broad Street
                                        Philadelphia, PA 19109
                                        (215) 772-1500

                                        A. Ann Woolfolk
                                        (DE Bar I.D. No. 2642)
                                        Deputy Attorney General
                                        State of Delaware – Department of Justice
                                        Carvel State Office Building
                                        820 N. French Street, 6th Floor
                                        Wilmington, DE  19801
                                        (302) 577-8400

                                        Counsel for Defendants