# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| MARIANNE DUFFY, by her parents and legal guardians, Sean and Elise Duffy, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO.  1:05-cv-127 GMS |
| VINCENT MECONI, Secretary, Delaware Department of Health & Social Services, in his official capacity, | ) ) ) ) | |
| MARIANNE SMITH, Director, Division of Developmental Disabilities Services, in her official capacity, | ) ) ) ) | |
| ELAINE ARCHANGELO, Director, Division of Social Services, in her official capacity, and | ) ) ) | |
| HARRY HILL, Director, Division of Medicaid and Medical Assistance, | ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFF'S OPENING BRIEF IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

MaryBeth Musumeci (#4128)
Daniel Atkins (#2970)
Disabilities Law Program
Community Legal Aid Society, Inc.
100 W. 10th Street, Suite 801
Wilmington, DE 19801
(302) 575-0660, ext. 228 or 229
(302) 575-0840 (fax)
mmusumeci@declasi.org
datkins@declasi.org

Dated:  May 12, 2006

Sarah Somers
Jane Perkins
National Health Law Program
211 N. Columbia Street
Chapel Hill, NC 27516
(919) 968-6308
(919) 968-8855 (fax)
somers@healthlaw.org
perkins@healthlaw.org

Attorneys for Plaintiff

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

NATURE AND STAGE OF PROCEEDINGS ............................................................... 1

SUMMARY OF ARGUMENT ....................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 3

STANDARD OF REVIEW ............................................................................................. 8

ARGUMENT ................................................................................................................... 8

   I.    The Medicaid Residency Requirements ................................................................ 8

   II.   The Constitutional Right to Travel ..................................................................... 10

   III.  The Defendants' Application of Their Medicaid Residency Rule to Plaintiff
   Violates the Equal Protection Clause of the Fourteenth Amendment. ........................ 11

      A.   Defendants' Medicaid Residency Rule Impermissibly Burdens Plaintiff's
      Fundamental Right to Interstate Travel. .................................................................. 11

      B.   Defendants' Application of the Medicaid Residency Rules to Ms. Duffy Cannot
      Withstand Strict Scrutiny. ........................................................................................ 15

   IV.  Defendants' Residency Requirement Violates Plaintiff's Right to Travel Secured
   by the Privileges and Immunities Clause of the Fourteenth Amendment .................... 17

      A.  Defendants' Residency Requirement Prevents Plaintiff From Exercising Her
      Right to Interstate Travel ......................................................................................... 17

      B.  The Seventh Circuit Court of Appeals Has Struck Down a State Statute That
      Unconstitutionally Burdened the Right to Interstate Travel of Persons with
      Significant Disabilities. ............................................................................................. 19

   V.   Delaware's Residency Requirement Violates the Privileges and Immunities
   Clause of Article IV of the U.S. Constitution. ............................................................. 22

   VI.  The Existence of the Federal Regulation Defining State Residency Does Not
   Authorize Delaware to Violate Ms. Duffy's Constitutional Right To Travel. ............. 23

CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

**CASES**

*Bethesda Lutheran Homes and Servs., Inc., v. Leann,* 122 F.3d 443 (7th Cir. 1997).  2, 11, 13, 19, 20, 24

*Boyle v. County of Allegheny Pa.,* 139 F.3d 386 (3d Cir. 1998)........................................ 8

*Bush Indus., Inc. v. O'Sullivan Indus., Inc.,* 722 F. Supp. 1442 (D. Del. 1991) ................ 8

*Doe v. Bolton,* 410 U.S. 179 (1973)................................................................. 22

*Dunn v. Blumstein*, 405 U.S. 330 (1972) ............................................................. 10, 12, 13

*Maldonado v. Houston,* 157 F.3d 179 (3d Cir. 1998).......................... 2, 10, 11, 12, 15, 24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986)......................... 8

*Mem'l Hosp. v. Maricopa County*, 415 U.S. 250 (1974)...................................... 10, 15, 16

*Olson v. Gen. Elec. Aerospace*, 101 F. 3d 947 (3d Cir. 1996)........................................... 8

*Saenz v. Roe*, 526 U.S. 489 (1999) ......................... 2, 10, 11, 12, 13, 15, 16, 17, 18, 22, 23

*Shapiro v. Thompson,* 394 U.S. 618 (1969)................. 2, 10, 12, 13, 14, 15, 16, 18, 23, 24

**RULES**

Fed. R. Civ. P. 56(c) ............................................................................................. 8

**REGULATIONS**

42 C.F.R. § 435.403(a)............................................................................................ 8

42 C.F.R. § 435.403(c)................................................................................... 9, 16, 25

42 C.F.R. § 435.403(i)(1)(i)................................................................................. 9

42 C.F.R. § 435.403 (i)(2)(ii)............................................................................ 9, 21

42 C.F.R. § 435.403 (i)(2)(iii).............................................................................. 21

42 C.F.R. § 435.403 (j)(2)................................................................................. 9, 22

42 C.F.R. § 435.1009 ............................................................................................ 3

16-5000-5100 *Del. C. Regs.* § 14110................................................................. 8

16-5000-5100 *Del. C. Regs.* § § 14110 – 14110.8.2........................................................ 8

16-5000-5100 *Del. C. Regs.* § 14110.1.................................................................... 9

16-5000-5100 *Del. C. Regs.* § 14110.2.................................................................... 9

16-5000-5100 *Del. C. Regs.* §§ 14110.7................................................................ 9, 21

16-5000-5100 *Del. C. Regs.* §§ 14110.8.1............................................................. 9, 22

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. IV.......................................................................... 2, 22, 23

U.S. Const. amend. XIV, § 1, cl. 2(i).......................................................... 2, 17

U.S. Const. amend. XIV, § 1, cl. 2 (iii) ....................................................... 1, 11

## NATURE AND STAGE OF PROCEEDINGS

Marianne Duffy is a 33-year-old Medicaid beneficiary with developmental disabilities who lives in an intermediate care facility for mental retardation (ICF/MR) in North Carolina. Her parents and legal guardians live in Delaware, more than 400 miles away. Though her parents desire it, and it would be in her best interest, Ms. Duffy cannot move to Delaware. Her health and developmental conditions prohibit her from physically relocating without first obtaining an appropriate residential placement and services; yet, she cannot gain access to these services without first meeting the Delaware Medicaid program's residency requirements. She is physically and financially unable to meet these requirements. Thus, her parents and legal guardians, Sean and Elise Duffy, have brought this action on her behalf, seeking declaratory and injunctive relief to remedy this unconstitutional restriction on Ms. Duffy's fundamental constitutional right to interstate travel.

The complaint in this action was filed on March 4, 2005. Defendants filed a motion to dismiss on May 25, 2005, which was denied by this court on October 28, 2005. Plaintiff filed a motion for summary judgment on May 12, 2006. This is her opening brief in support of her motion.

## SUMMARY OF ARGUMENT

1.      Defendants' application of the Medicaid residency rule violates Plaintiff's fundamental right to interstate travel as secured by the Equal Protection Clause of the Fourteenth Amendment, which prohibits states from denying persons within their jurisdictions the equal protection of the laws. U.S. Const. amend. XIV, § 1, cl. 2(iii).

Defendants' eligibility determination policy cannot survive strict scrutiny because they cannot show that it is necessary to promote a compelling state interest.

2.    Defendants' application of the Medicaid residency rule to Plaintiff violates her rights under the Privileges and Immunities Clause of the Fourteenth Amendment, which protects the fundamental right of a citizen of the United States to travel interstate. U.S. Const. amend. XIV, § 1, cl. 2(i); *Saenz v. Roe*, 526 U.S. 489, 503 (1999). Delaware's residency requirement cannot survive strict scrutiny.  Moreover, the Seventh Circuit Court of Appeals has held that a state law with a similar effect upon the right to travel is unconstitutional.  *Bethesda Lutheran Homes and Servs., Inc., v. Leann,* 122 F.3d 443 (7th Cir. 1997).

3.    Defendants' application of the Medicaid residency rule to Plaintiff violates her rights under the Privileges and Immunities Clause of Article IV of the U.S. Constitution because it discriminates against citizens of other states when there is no substantial reason for discrimination beyond the fact that they are citizens of other states. U.S. Const. art. IV; *Saenz,* 526 U.S. at 502.

4.    The existence of the federal Medicaid residency rule does not insulate Defendants' policy from constitutional attack.  The federal government cannot authorize the states to violate the Fourteenth Amendment.  *Saenz*, 526 U.S. at 507; *Shapiro v. Thompson,* 394 U.S. 618, 642 (1969).  *See also Maldonado v. Houston,* 157 F.3d 179, 182 (3d Cir. 1998).  Moreover, the Seventh Circuit has found the federal Medicaid residency regulation at issue in this case to be an unconstitutional violation of the right to travel.  *Bethesda,* 122 F.3d at 447.

## STATEMENT OF FACTS

Plaintiff Marianne Duffy has resided at Carobell, an intermediate care facility for mental retardation (ICF/MR) group home in Hubert, North Carolina, since 1994. (Affidavit of Sean Duffy, ¶ 2, attached as Exhibit A) (hereinafter "S. Duffy Aff."); (Carobell, Inc. Psychological Report, Nov. 26, 2005, attached as Exhibit B-B, at 1; Carobell, Inc. Psychological Evaluation, Nov. 30, 2004, attached as Exhibit C-1, at 1.) An ICF/MR is "an institution (or distinct part of an institution) that is primarily for the diagnosis, treatment or rehabilitation of the mentally retarded or persons with related conditions; and provides, in a protected residential setting, ongoing evaluation, planning, 24-hour supervision, coordination, and integration of health or rehabilitative services to help each individual function at his greatest ability." 42 C.F.R. § 435.1009.

Marianne's disabilities include blindness, autism, profound mental retardation, and a seizure disorder. (Carobell, Inc. Psychological Report, Nov. 26, 2005, Ex. B-B, at 1; Carobell, Inc. Psychological Evaluation, Nov. 26, 2005, Ex. C-1, at 1; Annual Health Summary, Dec. 13, 2005, Exhibit B-D at 1; Annual Health Summary, Dec. 15, 2004, attached as Exhibit C-2, at 1.) She is non-verbal and requires a highly structured living environment with constant supervision and care due to her susceptibility to seizures, falling, and self-abusive behavior. (Carobell, Inc. Psychological Report, Nov. 26, 2005, Ex. B-B, at 1; Annual Health Summary, Dec. 13, 2005, Ex. B-D, at 2; Carobell, Inc. Psychological Evaluation, Nov. 30, 2004, Ex. C-1, at 1, 4; Annual Health Summary, Dec. 15, 2004, Ex. C-2, at 2.) Recent evaluations indicate that Marianne experiences "significant periods of self-injurious behavior, including hitting herself with her fist, hitting herself on hard surfaces, biting her lip, and digging her fingernails into her skin."

3

(Carobell, Inc. Individual Habilitation Plan, Dec. 15, 2005, Ex. B-A, at 5.)  Between May and October 2005, she averaged more than 26 episodes of self-abusive behavior. (Carobell, Inc. Psychological Report, Nov. 26, 2005, Ex. B-B, at 3.)  "She continues to require frequent supervision to prevent injury to herself."  (Carobell, Inc. Individual Habilitation Plan, Ex. B-A, at 5.)  Marianne may remain awake for periods up to twenty-four or forty-eight hours  on a regular basis and will sometimes scream or laugh for hours at a time.  (S. Duffy Aff., Ex. A, ¶ 3.)

Because of Marianne's need for constant intensive supervision, her parents cannot care for her in their home, even for a day.  ((Affidavit of Marc Goldman, Attached as Exhibit D, ¶ 8) (hereinafter "M. Goldman Aff.); S. Duffy Aff., Ex. A,  ¶¶ 3, 4, 14.))  She has lived in residential placements since she was eleven years old.  (S. Duffy Aff., Ex. A, ¶ 4.)  Until approximately 1998 or 1999, Marianne would spend one night per week at her parents' home in North Carolina.  *Id.*   Her parents were increasingly concerned about her safety during those visits.  Among other dangers, her seizures cause her to fall easily. Once, Marianne had a seizure in the shower when her mother was taking care of her.  *Id.* Thus, the weekly overnight visits ended because her parents were afraid that she would seriously injure herself.  *Id.*  Thereafter, until 2001, Marianne would stay with her family for a period of about twenty-four hours during the Christmas holidays, when her parents and her two adult brothers were available to take shifts monitoring her around the clock. (S. Duffy Aff., Ex. A,  ¶ 4.)  She has not had an overnight visit since the Duffys moved to Delaware.

In April 2001, Marianne's father, Sean Duffy, relocated to Delaware as a result of a new job, and her mother, Elise Duffy, followed in 2002.  (S. Duffy Aff., Ex. A, ¶ 5.)

Marianne's parents are her legal guardians, and they want her to live in Delaware so that she can live closer to her family. (S. Duffy Aff., Ex. A, ¶¶ 1, 5.) Marianne has a very close relationship with her parents. (S. Duffy Aff., Ex. A, ¶ 6.) While Mr. and Mrs. Duffy lived in North Carolina, they would visit with Marianne once a week to go out to lunch and bring her to their home once a week for a day visit. *Id.* They also could drop in at the group home unannounced to check on how Marianne was doing and monitor her care. *Id.* Now that Marianne has been unable to move to Delaware, Mr. and Mrs. Duffy must travel to North Carolina to visit her. Marianne is now only able to see her parents every three months. *Id.* She has no other way to communicate with her parents because she is essentially nonverbal. (*Id.*; Carobell, Inc. Psychological Report, Nov. 26, 2005, Ex. B-B, at 3; Carobell, Inc. Psychological Evaluation, Nov. 30, 2004, Ex. C-1, at 1; Annual Health Summary, Dec. 13, 2005, Ex. B-D, at 4; Annual Health Summary, Dec. 15, 2004, Ex. C-2, at 3; October 22, 2002 letter from Sean Duffy to Roy Lafontaine, attached as Exhibit A-6, at 2.)

Marianne currently receives Medicaid benefits in North Carolina. Mr. and Mrs. Duffy have applied for services on her behalf through Delaware's Division of Developmental Disabilities Services (DDDS). (S. Duffy Aff., Ex. A, ¶ 7; April 17, 2001 letter from Susan Morrison Smith to the Duffys, attached as Exhibit A-3; September 3, 2002 letter from Sean Duffy to Susan Smith, attached as Exhibit A-4.) According to DDDS, Marianne's application for DDDS services has been placed on "inactive status" because, although Marianne was determined to meet the clinical eligibility criteria, she had to establish Delaware residency before she could access DDDS services. (S. Duffy Aff., Ex. A, ¶ 7; Defendants' Resp. to Plaintiff's First Set of Interrogs., Interrog. Nos. 2,

6, D.I. 51; Defendants' Resp. to Plaintiff's First Req. for Admis., Req. No. 1, D.I. 52;

April 17, 2001 letter from Susan Morrison Smith to the Duffys, Ex. A-3; September 30,

2002 letter from Roy A. Lafontaine to Sean Duffy, attached as Exhibit A-5.)

After Delaware's initial denial of Marianne's DDDS application, Mr. and Mrs.

Duffy pursued an internal DDDS appeal on Marianne's behalf.  (S. Duffy Aff., Ex. A, ¶

9; June 2, 2003 letter from Mary T. Anderson to Elise Duffy, attached as Exhibit A-8;

June 11, 2003 Hearing Appeal from the Duffys, attached as Exhibit A-9.)  In July 2003,

the DDDS Director Marianne Smith determined that Marianne was not a state resident

and her residential placement needs were not "urgent" according to the state registry

system and, therefore, determined that Marianne would not be provided with community

residential services.  (Defendants' Resp. to Plaintiff's First Set of Interrogs., Interrog.

Nos. 3, 4, 6, D.I. 51; Defendants' Resp. to Plaintiff's First Req. for Admis., Req. Nos. 1,

2, D. I. 52.)  Marianne was, however, assigned a DDDS case manager, and her parents

were instructed to contact DDDS if Marianne moved to Delaware and became a state

resident.  (S. Duffy Aff., Ex. A, ¶ 9; Defendants' Resp. to Plaintiff's First Set of

Interrogs., Interrog. Nos. 4, 6, D.I. 51; July 3, 2003 letter from Marianne Smith to Mr.

and Mrs. Duffy, attached as Exhibit A-10.)

Marianne is stuck in North Carolina.  She cannot move to Delaware to establish

residency before qualifying for Medicaid because she must have an appropriate

residential placement and services into which she can move when she arrives.  Her

psychologist, Marc Goldman, has stated that "she could not live safely in a private home

with untrained family members or other individuals for even a day."  (M. Goldman Aff.,

Ex. D, ¶ 8.)  Defendant Meconi has acknowledged this, writing that "it is readily

6

apparent . . . that Marianne cannot move to Delaware for the purpose of establishing

residency unless provisions are made to relocate her directly from her current placement

to one that would be able to support her needs." (Letter from Vincent Meconi to Elise

Duffy, Feb. 4, 2004, attached as Exhibit A-12, at 2.)  *See also,* S. Duffy Aff., Ex. A, ¶ 10.

Residential placements are too expensive for her to pay for without the assistance

of Medicaid.  For example, the Mary Campbell Center, an ICF/MR in Delaware, costs

between $275.00 to $300.00 per day for private pay patients.[1] (S. Duffy Aff., Ex. A, ¶

12.)  The estimated average daily rate for the Stockley Center, another Delaware

ICF/MR, is approximately $373.00.  (Defendants' Resp. to Second Req. for Production

of Documents, D.I. 53, Cost Projection Data Sheet, at D0234.)  In addition, Marianne

also requires Medicaid benefits to pay for her other health care costs, such as prescription

drugs, medical tests, hospitalizations, and doctors' visits.  (S. Duffy Aff., Ex. A, ¶ 12.)

Marianne's only source of income is her Supplemental Security Income (SSI) benefits

and negligible income (approximately $113.00 total in 2004) for piecework in her

vocational day program.  She has minimal savings and no other resources.[2]  (S. Duffy

Aff., Ex. A, ¶ 11.)

Thus, Delaware's application of the Medicaid residency rule completely

forecloses Marianne's ability to exercise her constitutional right to travel.  Delaware's

rejection of Marianne's application for services based upon her failure to first establish

state residency is unconstitutional.

---

[1] Mary Campbell Center has determined that it cannot meet Marianne's needs.  (S. Duffy Aff., Ex. A, ¶ 12.)  The cost for services at that facility is included for illustration.

[2] The total SSI grant is approximately $600 per month.  Currently, all but a personal needs allowance of $30 of Marianne's grant is paid to Carobell for her care. *See,* S. Duffy Aff., Ex. A, ¶ 11.)

## STANDARD OF REVIEW

A party may move for summary judgment when there are no genuine issues of material fact. Fed. R. Civ. P. 56(c). There is no issue of material fact if "the record, taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *see also Bush Indus., Inc. v. O'Sullivan Indus., Inc.,* 772 F. Supp. 1442, 1449 (D. Del. 1991). The court may consider pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. Fed. R. Civ. P. 56(c); *Boyle v. County of Allegheny Pa.,* 139 F.3d 386, 393 (3d Cir. 1998). The nonmoving party must demonstrate the existence of a material fact which provides adequate evidence—not simply allegations—for a fact-finder to find in its favor. *See Olson v. Gen. Elec. Aerospace*, 101 F. 3d 947, 951 (3d Cir. 1996) (citation omitted).

## ARGUMENT

### I.    The Medicaid Residency Requirements

Federal Medicaid regulations require states to provide Medicaid to eligible state residents. 42 C.F.R. § 435.403(a). Delaware state policies require that an individual be a resident of Delaware before she can receive Medicaid-covered services.[3] 16-5000-5100 *Del. C. Regs.* § 14110. Generally, the state of residence of an individual over age 21 is the state in which she is living with the intent to remain permanently or indefinitely. 42

---

[3] The Delaware Division of Social Services Manual substantially tracks the federal criteria for determining state residency. 16-5000-5100 *Del. C. Regs.* § § 14110 – 14110.8.2. *See also*, Defendants' Br. in Support of their Mot. to Dismiss at 4, D.I. 11.

C.F.R. § 435.403(i)(1)(i); 16-5000-5100 *Del. C. Regs.* § 14110.1.  Special rules apply to individuals who are living in institutions.  The state of residence for an individual over the age of 21 who lives in an institution, and who became incapable of indicating intent before age 21, is the state of residence of the parent or legal guardian "at the time of placement" in the institution.  42 C.F.R. § 435.403 (i)(2)(ii); 16-5000-5100 *Del. C. Regs.* §§ 14110.7.  An individual is considered incapable of indicating intent if:

> [T]he individual has an IQ of 49 or less or has a mental age of 7 or less, based on tests acceptable to the mental retardation agency in the State; is judged legally incompetent; or is found incapable of indicating intent based on medical documentation obtained from a physician, psychologist, or other person licensed by the State in the field of mental retardation.

42 C.F.R. § 435.403 (c); *see also* 16-5000-5100 *Del. C. Regs.* § 14110.2.[4]

As a result of her significant disabilities, Marianne is and has always been incapable of indicating intent within the meaning of the federal and Delaware residency rules.  Her parents were living in North Carolina when she was placed at Carobell.  Thus, under the federal and Delaware rules and despite the fact that her parents and legal guardians have been living Delaware for several years, she remains a North Carolina resident, and would remain so forever, unless this court provides her with relief.

---

[4] In addition, a state is prohibited from denying Medicaid eligibility

> to an individual in an institution, who satisfies the residency rules of this section, on the grounds that the individual did not establish residence in the state before entering the institution.

42 C.F.R. § 435.403(j)(2).  Delaware law has a similar requirement.  16-5000-5100 *Del. C. Regs.* § 14110.8.1 (providing that "a State cannot deny Medicaid eligibility . . . to an institutionalized individual because the individual did not establish residence in the community.")

**II.    The Constitutional Right to Travel**

It has long been recognized that the right to travel is fundamental, "a virtually unconditional personal right, guaranteed by the Constitution to us all." *Saenz v. Roe,* 526 U.S. 489, 498 (1999) (concurring opinion).  In its most recent case addressing the issue, the Supreme Court identified "at least" three separate components of this right:  (1) the right of a citizen to enter and leave another state; (2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second state; and (3) for those travelers who elect to become permanent residents, the right to be treated like citizens of other states.  *Saenz,* 526 U.S. at 500.  "It is a privilege of citizenship of the United States, protected from state abridgment, to enter any State of the Union, either for temporary sojourn or for the establishment of permanent residence therein and for gaining resultant citizenship thereof.  If national citizenship means less than this, it means nothing."  *Id.* at 511 (citation omitted).  S*ee also Mem'l Hosp. v. Maricopa County*, 415 U.S. 250, 255 (1974); *Maldonado v. Houstoun*, 157 F.3d 179, 185 (3d Cir. 1998).  To trigger strict scrutiny, such a penalty must be significant, such as a denial of one of the "basic necessities of life," for example, medical care or public assistance benefits.  *Maricopa County,* 415 U.S. 250 at 259.  Because the right to travel is fundamental, a rule that burdens or penalizes that right is subject to strict scrutiny and will be struck down if a state cannot demonstrate that it is  necessary to promote a compelling governmental interest.  *Saenz*, 526 U.S. at 504-05; *Dunn v. Blumstein*, 405 U.S. 330, 339 (1972); *Shapiro v. Thompson,* 394 U.S. 618, 634 (1969).

Though this right to travel is "firmly embedded in our jurisprudence," it is not mentioned explicitly in the Constitution.  *Saenz,* 526 U.S. at 498.  In various cases, courts

have found that the right to travel can be derived from the Equal Protection Clause of the Fourteenth Amendment, the Privileges and Immunities Clauses of Article IV and of the Fourteenth Amendment, and the Commerce Clause. *See Saenz,* 526 U.S. at 499; *Maldonado,* 157 F.3d at 184-85. *See also Bethesda Lutheran Homes and Servs., Inc. v. Leean,* 122 F.3d 443, 445 (7th Cir. 1997). In this case, Plaintiff has alleged claims that Defendants' manner of applying their residency requirement violates the Equal Protection Clause and the Privileges and Immunities Clauses of Article IV and the Fourteenth Amendment. (First Amended Compl., ¶¶ 29-34, D. I. 36.) Proof of a violation of any one of these constitutional provisions would authorize this court to grant Plaintiff the relief she seeks. As set forth below, the evidence in the record can lead only to the conclusion that Defendants are violating each one of these provisions.

III.    **The Defendants' Application of Their Medicaid Residency Rule to Plaintiff Violates the Equal Protection Clause of the Fourteenth Amendment.**

A.    **Defendants' Medicaid Residency Rule Impermissibly Burdens Plaintiff's Fundamental Right to Interstate Travel.**

Under the Equal Protection Clause, no state may "deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1, cl. 2 (iii). Ms. Duffy is within the jurisdiction of Delaware and thus may claim a violation of this Clause. *See,* Op. Denying Defendants' Mot. to Dismiss, at 12, D.I. 34. This Clause applies to state actions that create classifications of individuals and subject those groups to different treatment. When asserting a violation of the Equal Protection Clause, the plaintiff must demonstrate either that the classification at issue burdens the exercise of a fundamental right *or* that it operates to the disadvantage of some suspect class.[2] *See, e.g.,*

───────────────

*Shapiro*, 394 U.S. at 634. In either instance, the classification is subject to strict scrutiny and can only be upheld if it is shown to be necessary to promote a compelling governmental interest. *Id.; see also Maldonado,* 157 F.3d at 184. As discussed above, it is well-settled that the right to travel is fundamental. *See, e.g., Dunn,* 405 U.S. at 338. The compelling interest test is therefore triggered whenever a classification burdens, deters or "*penalizes* the exercise of that right." *Dunn,* 405 U.S. at 340 (emphasis in original); *see also Saenz*, 526 U.S. at 504-05.

Defendants require that Ms. Duffy become a Delaware state resident by physically relocating to Delaware before her application for Medicaid services will be activated. (Defendants' Resp. to Plaintiff's First Set of Interrogs., Interrog. Nos, 2, 6, D.I. 51; Defendants' Resp. to Plaintiff's First Req. for Admis., Admis. Req. No. 1, D.I. 52). The evidence in the record can only support a conclusion that the Defendants are thereby violating Ms. Duffy's right to travel as secured by the Equal Protection Clause. First, her parents and legal guardians wish her to move to Delaware. (S. Duffy Aff., Ex. A, ¶ 5.) Second, the uncontroverted evidence shows, and Defendant Meconi has acknowledged, that Marianne's disabilities prevent her from living outside of an appropriate residential placement and without necessary services. (Letter from Vincent

---

[2] In their Motion to Dismiss, Defendants argued that the Plaintiff cannot succeed in her claim under the Equal Protection Clause because there has been no discrimination against a suspect class. (Defendants' Opening Br. in Support of their Mot. to Dismiss, at 12, D.I. 11.) This is immaterial, because Plaintiff has not asserted that she is a member of a suspect class. Rather, she has shown that the challenged rule burdens her exercise of a fundamental right, which is an independent violation of the Equal Protection Clause. *See* Plaintiff's Answering Br. in Opp'n to Mot. to Dismiss, at 10-11 (D.I. 17,18).

Meconi to Elise Duffy, Ex. A-12, at 2; S. Duffy Aff., Ex. A, ¶¶ 2-4, 14; M. Goldman

Aff., Ex. D, ¶ 8; Carobell, Inc. Psychological Report, Nov. 26, 2005, Ex. B-B, at 1-4;

Carobell, Inc. Individual Habilitation Plan, Ex. B-A, at 2, 5-7; Carobell, Inc.

Psychological Evaluation., Nov. 30, 2004, Ex. C-1 at 14; Annual Health Summary, Dec.

15, 2004, Ex. C-2 at 2)  (describing her need for a highly structured living environment

with close supervision and care due to her susceptibility to seizures, falling and self-

abusive behavior).  Third, due to her limited income, she cannot afford to pay for her

health care and can only gain access to an appropriate placement through Medicaid.  (S.

Duffy Aff., Ex. A, ¶¶ 11-12.)  Other prospective Delaware residents in need of

institutional care who either:  (1) have the financial means to pay for a private placement

or (2) whose disabilities do not prevent them from living in the community while

Medicaid eligibility is being determined are free to exercise their right to settle in

Delaware.  Thus, Defendants' application of the Medicaid residency requirement results

in different classes of potential residents and prevents Ms. Duffy and others like her from

exercising their fundamental right to interstate travel.

In any case, although Plaintiff has done so, it is not necessary to demonstrate that

Ms. Duffy has been completely prevented from becoming a resident of Delaware.

"Obstacles to moving into another state need not be insurmountable in order to be

unconstitutional."  *Bethesda Lutheran Homes and Servs. v. Leann,* 122 F.3d 443, 446

(7th Cir. 1997); *see also* Op. at 4, D.I. 34.   Rather, as discussed above, strict scrutiny is

triggered by showing that a burden or penalty is imposed on the right to travel.  *See, e.g.,*

*Saenz*, 526 U.S. at 504-05; *Dunn*, 405 U.S. at 339; *Shapiro,* 394 U.S. at 634.

A factfinder could only conclude that requiring Ms. Duffy to physically relocate to Delaware before qualifying for Medicaid would constitute such a penalty. The uncontroverted evidence in the record, including sworn statements from her father, a treating psychologist, and medical records, demonstrates the severity of her condition and behaviors. Her tendency to go without sleep for extended periods, combined with her seizure disorder and self abusive behavior, present risks of serious injury at any time. (M. Goldman Aff., Ex. D, ¶¶ 7, 8; S. Duffy Aff., Ex. A, ¶¶ 2-4; Carobell, Inc. Psychological Report, Nov. 26, 2005, Ex. B-B, at 1, 3; Carobell Individual Habilitation Plan, Ex. B-A, at 5.) Marianne's parents do not have the training or expertise of professional ICF/MR staff. Thus, if Marianne were to move into their house, it would not be possible for her parents to care for her and ensure her safety for even a day. (M. Goldman Aff., Ex. D, ¶ 8; S. Duffy Aff., Ex. A, ¶¶ 3-4, 10.) In fact, Marianne has not stayed with her parents for more than 24 consecutive hours for several years. (S. Duffy Aff., Ex. A, ¶ 4.) Even if she were to move to Delaware, the Duffys must expect that it would take considerable time for eligibility to be established, for her application to be activated again, and for her to be placed in an appropriate program. Defendant Smith has informed the family that "[i]t is important to understand that a suitable residential placement for Marianne cannot be immediately guaranteed if she moves to Delaware." (Letter from Marianne Smith to the Duffys, July 3, 2003, Ex. A-10, at 2). Even if processing her eligibility were immediate (contrary to Defendant Smith's warning), there is certain to be a delay while an appropriate placement is located. Considering the risk posed, effectively forcing Marianne to attempt to live without the necessary care and services would be a heavy penalty indeed. Courts have held that similar treatment

14

triggers strict scrutiny.  *See, Shapiro,* 394 U.S. at 627 (holding that denial of cash

assistance is a penalty sufficient to trigger strict scrutiny); *Maricopa County,* 415 U.S.

250, at 259 (denial of non-emergency medical care is a penalty sufficient to trigger strict

scrutiny).

The alternative – that she pay out of pocket for a private placement – also would

be a severe penalty.   Both the Supreme Court and the Third Circuit have found that

imposing monetary penalties on the right to travel by reducing cash assistance benefits or

denying medical care constitutes a burden that triggers strict scrutiny.  *See, Saenz,*

*Maldonado,* and *Maricopa County,* discussed at Section IV.A, *infra*.  Thus, it is not

necessary for Ms. Duffy to prove that she is absolutely barred from entering and staying

in the state of Delaware.   The undisputed evidence shows that it would be a significant

burden on her right to travel, which is enough to trigger strict scrutiny.

**B.        Defendants' application of the Medicaid residency rules to Ms.
           Duffy cannot withstand strict scrutiny.**

Defendants assert that the Medicaid residency rule is justified by a desire to

"fairly apportion the State's limited funds to those residents who need it most."  (Mot. to

Dismiss, at 15, D.I. 11; *see also* Defendants' Resp. to Plaintiff's First Set of Interrogs.,

Interrog. No. 5, D.I. 51.)  This desire is not a sufficiently compelling interest to support

the Defendants' actions.  In fact, though the Supreme Court has acknowledged that states

have an interest in conserving fiscal resources, it has never held that fiscal justifications

similar to the ones Defendants advance are compelling enough to enable a rule to survive

strict scrutiny.  For example, in *Maricopa County*, the Court found that a desire to

prevent an influx of newcomers and "dilute the quality of services provided to long time

residents" was not sufficiently compelling.  415 U.S. at 266; *see also Shapiro,* 394 U.S.

at 632-33 (rejecting similar justification).  It has also rejected the related contention that

the goal of protecting long time state residents who have contributed to the state through

taxes justified such restrictions.  *Maricopa County,* 415 U.S. at 266; s*ee also Shapiro*,

394 U.S. at 632-33.[3]  In sum, the Court found that attempting to conserve fiscal resources

by employing means that burden the right to travel of a class of individuals is forbidden

by the Equal Protection Clause.  415 U.S. at 266-67, *see also Shapiro,* 394 U.S. at 632-

34.

Nor can Defendants show that the means they have employed are necessary to

achieve their purported goal.  First, their process for determining eligibility only

conserves fiscal resources if it were to deter low income people with disabilities from

migrating to Delaware.  It is well-settled that such a goal is "unequivocally

impermissible."  *Saenz,* 526 U.S. at 506; *see also Shapiro,* 394 U.S. at 631; *Maricopa

County,* 415 U.S. at 263.  Second, the amount of money "conserved" by their policy

seems unlikely to be substantial.  It is highly unlikely that a significant number of

individuals are in the same situation as Marianne Duffy.  The only prospective state

residents who would be affected by a positive decision for the Plaintiff would be

individuals who (1) have parents or guardians living in Delaware; (2) cannot live without

appropriate placement and services; (3) cannot afford a comparable private placement

and services; *and* (4) are incapable of living without necessary a residential placement

and services for even a day.  *See,* 42 C.F.R. § 435.403(c).  It defies common sense and

experience to suggest that there are many people who fall into this category.

Accordingly, the fiscal impact of allowing these individuals to migrate to the state can

---

[3] The goal of making budgets more predictable was also rejected as unsupported and
implausible.  *Shapiro,* 394 U.S. at 634.

hardly be significant. In sum, the record can only support a conclusion that Defendants

are violating the Equal Protection Clause of the Fourteenth Amendment.


**IV.  Defendants' Residency Requirement Violates Plaintiff's Right to Travel Secured by the Privileges and Immunities Clause of the Fourteenth Amendment**

### A.  Defendants' Residency Requirement Prevents Plaintiff From Exercising Her Right to Interstate Travel

The Privileges and Immunities Clause of the Fourteenth Amendment provides

that "[n]o State shall make or enforce any law which shall abridge the privileges or

immunities of citizens of the United States. . . ." U.S. Const., amend. XIV, § 1, cl. 2(i);

*see also Saenz*, 526 U.S. at 503.  "One of the privileges conferred by this Clause is that a

citizen of the United States can . . . become a citizen of any State of the Union by a bona

fide residence therein, with the same rights as other citizens of that state."  *Saenz,* 526

U.S. at 503 (citation omitted).  As is the case when the Equal Protection Clause is

implicated, a rule that impinges upon a right secured by the Privileges and Immunities

Clause of the Fourteenth Amendment is subject to strict scrutiny, and Defendants must

demonstrate that the rule is necessary to advance a compelling government interest.

*Saenz,* 526 U.S. at 504-05.

Ms. Duffy has demonstrated that Defendants are violating her fundamental right

to interstate travel secured by the Privileges and Immunities Clause of the Fourteenth

Amendment.  First, she is a citizen of the United States.  (S. Duffy Aff., Ex. A, ¶ 2.)

Second, as discussed, *supra* at Sec. III. A.*,* Defendants' application of the Medicaid

residency requirement prevents her from exercising the privilege of moving to Delaware

because she cannot live outside of an institutional setting without appropriate services but

cannot afford those services without Medicaid coverage.  (M. Goldman Aff., Ex. D, ¶ 8; S. Duffy Aff., Ex. A, ¶ ¶ 2 - 4, 10.)   Even if moving were possible, being forced to remain in her parents' home or to pay out of pocket for institutional care while eligibility is being determined would constitute a substantial penalty.  See Section III.A, *supra*.

In *Saenz v. Roe,* 526 U.S. 489 (1999), the Supreme Court found that the plaintiffs had proven that California's practice of providing a reduced level of cash assistance benefits to new residents violated the Privileges and Immunities Clause of the Fourteenth Amendment, because the state imposed a penalty on recently arrived citizens who were exercising their right to travel.  Here, Ms. Duffy has established that the Medicaid rule levies a similarly substantial penalty.  Her disabilities prevent her from relocating without first securing an appropriate residential placement and services.  *See,* Section III. A., *supra.*  Because she is not Medicaid-eligible in Delaware, the only way to secure such services would be to pay, which would be a substantial financial penalty.  Of course, she is unable to privately pay for these services, and her only means of securing them are through Delaware's Medicaid program.[5]  (M. Goldman Aff., Ex. D, ¶ 8; S. Duffy Aff., Ex. A, ¶ ¶ 2 - 4, 10).  Thus, her right to travel as secured by this clause has been impermissibly burdened.

Moreover, Delaware's residency requirement cannot withstand strict scrutiny.  In *Saenz,* the Court rejected each of the justifications advanced by the state as insufficient to

---

[5] Plaintiff's right to travel is more significantly limited by Defendants' residency rule than the plaintiffs in *Saenz.*  Whereas the rule at issue in *Saenz* affected only citizens who had completed their interstate travel and thus did not absolutely deter their exercise of the right, Defendants' residency policy actually prevents travel and migration. Because the state residency requirements at issue in *Saenz* were found to violate the Privileges and Immunities Clause of the Fourteenth Amendment, Defendants' residency policy, which completely forecloses her ability to travel interstate, cannot be constitutional.

support its residency requirements.  The Court rejected the taxpayer contribution

argument that had failed in *Shapiro*.  526 U.S. at 507.  The claim that the restriction

would save the state more than $10 million was also unavailing.  *Id.*  Defendants'

justification for Delaware's residency determination process – saving money – is

similarly inadequate.  *See* Section III.B, *supra*.

### B.   The Seventh Circuit Court of Appeals Has Struck Down a State Statute That Unconstitutionally Burdened the Right to Interstate Travel of Persons with Significant Disabilities.

The Seventh Circuit Court of Appeals in *Bethesda Lutheran Homes and Services,*

*Inc. v. Leean* struck down state and federal Medicaid regulations that prevented the

plaintiffs from establishing residency in Wisconsin.[5]  122 F.3d 443 (7th Cir. 1997).  The

*Bethesda* plaintiffs, a group of seven profoundly retarded individuals in need of services

from an ICF-MR, challenged state and federal statutes and regulations preventing them

from establishing residency in Wisconsin.  Four of the plaintiffs, like Ms. Duffy, resided

in other states.  Before any individual could enter an ICF-MR, a Wisconsin statute

required a protective placement order to be issued in response to a petition "filed in the

county of residence of the person to be protected."  *Id.* at 445.  This requirement

prevented individuals who did not live in a Wisconsin county from filing a petition.  The

court found that this requirement violated the right to travel because it required

individuals to move to the state before they entered the ICF-MR, which would be

impossible for them because of their disabilities.  The court observed: "[s]ince anyone

who is approved for protective placement is by definition incapable of living outside [an

---

[5] The court did not identify a source for the right to travel; however, its analysis is essentially the same as that employed under the Privileges and Immunities Clause of the Fourteenth Amendment.

ICF-MR] or its equivalent in restrictiveness, it is unclear where in Wisconsin the applicant for admission is supposed to live while the placement petition being processed." *Id.* at 446. Because this law interfered with the right to travel, the court reasoned, justification was required. The court found both administrative and fiscal justifications advanced by the state insufficient. *Id.* at 446-47. And, because no plausible justification was offered for the law, the court struck the limitation down.[6]

The other three *Bethesda* plaintiffs were already residing in ICF-MRs in Wisconsin. Under the Medicaid regulations, however, because they had always been incapable of indicating intent and because their parents had resided in Illinois at the time they were placed in the institution, they were residents of Illinois. They had no way of establishing residency in Wisconsin - the state in which they were actually present. *Bethesda Lutheran,* at 447-48. This constituted a clear burden on the right to travel. The court held that the regulations could not be upheld on the basis advanced by the defendants and struck them down. *Id.* at 450.

Ms. Duffy faces a predicament similar to both sets of *Bethesda* plaintiffs. The goal is for her to become a Delaware resident. (S. Duffy Aff., Ex. A, ¶ 5.) Like the *Bethesda* plaintiffs, who were by definition incapable of living outside a facility, she has disabilities and behaviors that make it impossible for her to live safely without an appropriate residential placement and services. (M. Goldman Aff., Ex. D, ¶ 8; S. Duffy

---

[6] Defendants have claimed that *Bethesda* is distinguishable. (Defendants' Opening Br. in Support of Mot. to Dismiss, at 9-10, D.I. 11.) It is true that the non-resident *Bethesda* plaintiffs' situation differs slightly from Ms. Duffy's. The protective placement rule at issue in *Bethesda* prevented individuals from moving to Wisconsin regardless of whether they could pay privately for ICF-MR care, while Delaware's rule only bars individuals who cannot pay for such care without Medicaid coverage. This distinction does not save Delaware's requirement, however, because Plaintiff cannot afford to pay for a private placement.

Aff., Ex. A, ¶¶ 2 – 4, 10; Ex. C-1 at 1, 4; Ex. C-2 at 2.)   She is being required to move to Delaware before she can be found eligible for Medicaid and thus satisfy the necessary criteria for entry into an ICF-MR.   It is true that, in contrast to the *Bethesda* plaintiffs, no state law prevents her from entering any institution.   However, she cannot access an appropriate placement and services without Medicaid coverage, and a state rule prevents her from being eligible without actually relocating to Delaware.   Thus, she is effectively shut out of the state.

Even if she were able to pay out of pocket for an institutional placement in Delaware and could move here, she is likely to be in the same situation as the second set of *Bethesda* plaintiffs.   She would still be a North Carolina resident under the Medicaid regulations providing that the state of residence of an institutionalized individual is that of the parent's at the time of placement.   42 C.F.R. § 435.403(i)(2)(ii); 16-5000-5100; *Del. C. Regs*. § 14110.7.   As this court has observed, "on their face, the state regulations appear to trap Duffy in North Carolina."   Op. at 7, D.I. 34.

Another federal regulation could possibly apply if Marianne were to physically relocate to an institution:

> For any institutionalized individual who became incapable of indicating intent before age 21, the state of residence is . . . [t]he current State of residence of the parent . . . who files the application if the individual is institutionalized in that State.

42 C.F.R. § 435.403(i)(2)(iii). As this court has pointed out, however, Delaware has no state counterpart to this federal requirement.  Op., at 7, D.I. 34.   Thus, there is no assurance that this actually is Delaware's policy.   In any case, even if eligibility could be established after Marianne moved into an institution in Delaware, she cannot get into an institution because she cannot afford to pay for such care.  *See,* Section III. A., *supra.*

This court has queried as to the effect of the federal and state Medicaid regulations which provide that a state agency may not deny Medicaid eligibility to an individual in an institution, "who satisfies the residency rules set forth in this section," on the grounds that the individual did not establish residence in the state before entering the institution.  Op., at 7, D. I. (*quoting* 42 C.F.R. § 435.403(j)(2)).  *See also* 16-5000-5100 *Del. C. Regs*. § 14110.8.1.   This regulation does not appear to help Ms. Duffy because it presupposes that an individual has otherwise met the requirements for residency in Delaware.  Under the regulations, however, she is a North Carolina resident.  In any case, as discussed above, she cannot move into another institution without Medicaid coverage.

In sum, both the protective placement rule at issue in *Bethesda* and Delaware's residency rule have the identical effect:  Both states' rules bar disabled individuals who need ICF-MR services from moving into their respective states.  In addition, even if Ms. Duffy could move into a Delaware institution, there is no assurance that she would cease to be a North Carolina resident and become a Delaware resident.  And, as with the illegal Wisconsin requirement, the Defendants can show no sufficiently compelling justification for their rule. (*See,* discussion, Section III.B, *supra*).

**V.     Delaware's Residency Requirement Violates the Privileges and Immunities Clause of Article IV of the U.S. Constitution.**

Article IV, § 2, provides that:  "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  This clause bars "discrimination against citizens of other States when there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States."  *Saenz,* 526 U.S. at 502.  The Supreme Court has recognized that the clause provides protection for non-residents who are seeking medical services.  *Id.*; *see also Doe v. Bolton,* 410 U.S.

22

179, 200 (1973). This court has held that this clause protects the right of a citizen to reside in any other state. Op. at 8, D.I. 34.

Defendants' residency requirement unconstitutionally burdens her right to travel under the Privileges and Immunities Clause of Article IV. First, Ms. Duffy is currently a citizen of North Carolina. Second, her parents and legal guardians wish for her to become a Delaware resident and avail herself of the privileges and immunities afforded to Delaware citizens. (S. Duffy Aff., Ex. A, ¶ 5.) Finally, Ms. Duffy has shown that, as a result of her disabilities and limited income, she is unable to come to Delaware to establish residency without first obtaining a Medicaid-funded residential placement. (M. Goldman Aff., Ex. D, ¶ 8; S. Duffy Aff., Ex. A, ¶¶ 2 - 4, 10.) At the very least, she has shown that requiring her to come to Delaware would impose a significant penalty on her right to travel. Thus, Ms. Duffy has demonstrated that her right to travel is completely foreclosed as a result of Defendants' application of the Medicaid residency rule.

**VI.     The Existence of the Federal Regulation Defining State Residency Does Not Authorize Delaware to Violate Ms. Duffy's Constitutional Right to Travel.**

The fact that the Defendants have adopted the federal Medicaid definition of residency does not insulate its own residency policy from challenge. In *Saenz,* the defendant argued that the durational residency requirements at issue should be found constitutional because they had been approved by federal statute. 526 U.S. at 507-08. However, the Court rejected this suggestion because "Congress may not authorize the States to violate the Fourteenth Amendment." *Id.* The Court has also noted that "the protection afforded to the citizen by the Citizenship Clause of [the Fourteenth Amendment] is a limitation on the powers of the National Government as well as the States." *Id.* at 507-08. Similarly, in *Shapiro*, the defendants argued that a federal statute

23

had approved the use of one-year waiting periods for public assistance. While the Court did not accept the defendants' characterization of the federal law, it also stated that "even if . . . the constitutionality of [the federal statute] is somehow at issue here, . . . the provision, insofar as it permits the one-year-waiting-period requirement, would be unconstitutional. Congress may not authorize the States to violate the Equal Protection Clause." 394 U.S. at 641.

In *Maldonado*, though the Third Circuit did not reach the issue of the constitutionality of the federal statute, it did not hesitate to strike down Pennsylvania's durational residency requirements, despite observing that the state "received considerable reassurance" from federal welfare reform legislation authorizing states to treat new residents differently than longer-term residents. 157 F.3d at 182. Moreover, not only is Congress powerless to authorize states to violate the right to travel, it must itself also honor that right. For example, as discussed in Section IV.B, *supra,* in *Bethesda Lutheran,* the Seventh Circuit held that the federal Medicaid residency requirement at issue here violates the fundamental right to travel. Four of the *Bethesda Lutheran* plaintiffs were living in an institution in Wisconsin. Because they had never had the capacity to form intent and their parents had placed them in the institution when the parents were living in Illinois, these plaintiffs were residents of Illinois under the federal regulation. 122 F.3d at 447. Thus, despite the fact that they were physically located in Wisconsin, these plaintiffs were unable to establish residency there. Because the regulation prevented these plaintiffs from establishing that they were Wisconsin residents, the Court found it unconstitutional. *Id.* at 450.

Similarly, this same rule prevents Marianne from establishing residency in Delaware, and in fact, prevents her from physically locating in the state. Defendants have acknowledged that Marianne meets the clinical eligibility for services and that the only barrier is that she is not a state resident. Moreover, Defendants admit that "it is readily apparent . . . that Marianne cannot move to Delaware for the purpose of establishing residency unless provisions are made to relocate her directly from her current placement to one that would be able to support her needs." (Letter from Vincent Meconi to Elise Duffy, Ex. A-12, at 2). Thus, the only barrier to her exercise of her fundamental right to interstate travel is the residency requirement. The justifications that Defendants offer for the residency requirement have repeatedly failed to meet the demands of strict scrutiny review. Thus, this court should find that the Delaware residency requirement violates Marianne Duffy's fundamental right to interstate travel in violation of the U.S. Constitution.

## <u>CONCLUSION</u>

For the reasons set forth above and in the pleadings and other evidence, the Plaintiff requests that this court grant her motion for summary judgment and (1) Declare that 42 C.F.R. § 435.403(c) infringes upon Ms. Duffy's fundamental right to interstate travel in violation of the Equal Protection Clause and Privileges and Immunities Clauses of Article IV and the Fourteenth Amendment; (2) Declare that the Defendants' decision to deny Plaintiff eligibility for Medicaid services unconstitutionally infringes on Ms. Duffy's fundamental right to interstate travel in violation of the Equal Protection Clause and Privileges and Immunities Clauses of Article IV and the Fourteenth Amendment; (3)

Enjoin the Defendants from continuing to prevent Plaintiff from accessing Medicaid-covered services in Delaware on the basis of her inability to physically relocate and establish residency in Delaware; and (4) Direct Defendants to find Plaintiff eligible for Delaware Medicaid services and enable her to access the state system for ICF/MR and community residential placements retroactive to the date of her initial application for services.

Dated:  May 12, 2006                        Respectfully submitted,

*/s/ MaryBeth Musumeci*
MaryBeth Musumeci (#4128)
Dan Atkins (#2970)
Disabilities Law Program
Community Legal Aid Society, Inc.
100 W. 10th Street, Suite 801
Wilmington, DE 19801
(302) 575-0660, ext. 228 or 229
(302) 575-0840 (fax)
mmusumeci@declasi.org
datkins@declasi.org

Jane Perkins
Sarah Somers
National Health Law Program
211 N. Columbia Street
Chapel Hill, NC 27516
(919) 968-6308
(919) 968-8855 (fax)
perkins@healthlaw.org
somers@healthlaw.org

Attorneys for Plaintiff,
Marianne Duffy