## MEDICAID IDENTIFICATION CARD

| C. DEPT. OF HEALTH AND HUMAN SERVICES DIVISION OF MEDICAL ASSISTANCE | | | | VALID | |
|---|---|---|---|---|---|
| COUNTY CASE NO. | ISSUANCE | PROGRAM | CLASS | FROM | THRU |
| 03516 | 01075 R | M AB | C | 01-01-95 | 04-30-01 |

| RECIPIENT I.D. | ELIGIBLES FOR MEDICAID | INS.NO. | BIRTHDATE | SEX |
|---|---|---|---|---|
| -03-5205-Q | MARIANNE S DUFFY | | 03-06-1973 | F |

| LAKE CODE | POLICY NUMBER | TYPE |
|---|---|---|

APR 2001 MAB 67 36747335 708
MARIANNE   S DUFFY
CAROBELS
198 CINNAMON DR
HUBERT NC 28539-4441

RECIPIENT (Signature) _Cherry [signature]_  (Not valid unless signed)

ISUSE MAY RESULT IN FRAUD PROSECUTION

DMA5005 (REV 8/99)

---

this stub with your personal records. The other side contains important mation.

### YOUR SOCIAL SECURITY CARD

Detach the card below and sign it in ink immediately.
Keep your card in a safe place to prevent loss or theft.
Do not laminate your card.



MARIANNE SHANNON DUFFY
CAROBELL INC
198 CINNAMON DRIVE
HUBERT NC 28539-4441



D 0003



BOOK 1    PAGE

## CAROBELL, INC.

KNOW ALL MEN BY THESE PRESENTS: That I/We, **Mr. and Mrs. Sean Duffy**, residents of the State of **North Carolina**, currently residing at **157 Aldersgate Rd., Jacksonville, NC 28546** do make, constitute and appoint Vanessa Ervin, Cherry Goodfred, and Suzanne Lambert of 198 Cinnamon Dr., Hubert, North Carolina, our true and lawful attorneys-in-fact to act as follows, GIVING AND GRANTING unto our said attorneys jointly and severally full powers to have temporary guardianship and control, and to provide for the education, health, care comfort, and necessities of life for our child/ward as herein named below, as if said attorneys were standing in loco parentis and hereby authorize any and all medical and hospital care and treatment, including major surgery, deemed necessary by a duly licensed staff physician, at any hospital or medical facility at which by child/ward is eligible for benefits for the health and well-being of our child/ward as herein named.

NAME: Marianne Shannon Duffy    AGE: 27    RELATIONSHIP: Daughter

Further, I/We do authorize our aforesaid attorneys-in-fact to perform all necessary acts in the execution of the aforesaid authorizations with the same validity as I/We could effect if personally present. Any act or thing lawfully done hereunder by our said attorneys shall be binding on ourselves and our heirs, legal and personal representatives and assigns.

PROVIDED, however, that all business transacted hereunder for us, or for our account shall be transacted in our name, and that all endorsements and instruments executed by our said attorneys for the purpose of carrying out the foregoing papers shall contain our name, followed by that of our said attorneys and the description "attorneys-in-fact."

FURTHER, this Power of Attorney shall not be effected by our subsequent incapacity or mental incompetence.

FURTHER, this special Power of Attorney shall be in effect until such time as it is revoked or terminated by me.

IN WITNESS WHEREOF, I/We have hereunto set our hand and seal this **15** day of **September**, **2000**.

_____  Signature / Guardian (Sean Duffy)

WITNESSES:

_____  Signature / Guardian (Elise C Duffy)

State of **North Carolina** County of **Onslow**

I, **Martha Cecil**, Notary Public, do hereby certify that **SEAN DUFFY & ELISE C DUFFY** personally appeared before me and acknowledged the due execution of the aforegoing instrument. Witness our hand and official seal this **15th** day of **September**, **2000**.

**Martha Cecil** Notary Public
My commission expires: **11/6/2001**

[Seal: MARTHA CECIL NOTARY PUBLIC ONSLOW COUNTY, NC]

Form No: C: 03-00 (Rev.)

Power of Attorney

D 0004

NORTH CAROLINA, ONSLOW COUNTY
The foregoing certificate(s) of MARTHA CECIL

Notary(ies) Public is (are) certified to be correct. This instrument was presented for registration and recorded in this office in Book 1657 Page 325 This 4th day of OCTOBER 2000 A.D., at 1:40 o'clock P. M.

_____
Register of Deeds, Onslow County

By _____ Register of Deeds

D 0005



**DELAWARE HEALTH AND SOCIAL SERVICES**
DIVISION OF MENTAL RETARDATION

OFFICE OF THE DIRECTOR

April 17, 2001

Ms. Marianne Duffy
C/o Mr. And Mrs. Sean Duffy
157 Aldergate Road
Jacksonville, North Carolina   28546

Dear Ms. Duffy:

Your request for Division of Mental Retardation services has been reviewed. It has been determined that you are a person who may benefit from the services provided by our agency; however, in order to access our services, you will need to first be a resident of the State of Delaware.

I am temporarily placing your request on inactive status pending you relocation to Delaware. When you have completed your move, please give me a call at 302 739-4881 and I will be glad to activate your application and have a case manager assigned to assist you with whatever services you need.

I will look forward to hearing from you soon and wish you a very happy summer.

Yours truly,

Susan Morrison Smith
Division Intake Coordinator

SMS
cc:   File

Exhibit 3

D 0057

JESSE C. COOPER BUILDING  •  FEDERAL STREET  •  DOVER  •  DELAWARE

September 3, 2002

1301 North Harrison Street
Unit 406
Wilmington, DE 19806

RECEIVED
SEP 6 2002
DIRECTOR'S OFFICE
D.M.R.

Susan M. Smith
Division Intake Coordinator
Division of Mental Retardation
Delaware Health & Social Services
P.O. Box 637
Dover, DE 19903

RE: Request for DMR Services for Marianne Duffy

Dear Ms. Smith:

This is a follow-up to a series of letters, phone calls and the filing of an application for services from the Division of Mental Retardation on behalf of my daughter, Marianne Duffy that was initiated in March 2001.

Our initial contact with the Division was immediately prior to my move to Delaware and was done with the realization that it takes time to provide services. However, 18 months later I am residing in Delaware and my daughter is still in North Carolina.

From what I understand the reason the Division cannot provide services for Marianne is because Marianne is not a resident of Delaware. The reason Marianne cannot become a resident of Delaware is because she cannot live in Delaware without the provision of special services which she needs from the Division of Mental Retardation. Marianne is a multi-handicapped 29-year old female who is currently living in a group home in North Carolina. Marianne needs to live in a highly structured environment which meets her special needs, something, which we as parents are unable to provide at home. This is why we filed an application on behalf of Marianne with Delaware's Health and Social Services.

I am both Marianne's father and legal guardian. I have difficulty comprehending your statement in a previous letter that said Marianne cannot access services because she is not a resident of this state. We have made it very clear that we are not requesting services for Marianne **until she becomes a resident of Delaware.** I am sure that the intent of your rules is not to have the State of Delaware pay for services of people living in other states. I am sure it was not intended to prevent people moving into Delaware who might need special services. However, that is how the rules are being applied to my daughter Marianne.

Exhibit 4

D 0055

In the highly mobile society in which we live I cannot believe that the Division of Mental Retardation is not more helpful to people moving into this state. Our recent experience contrasts very unfavorably with our experience with Social Services personnel when we moved to North Carolina. Marianne's application has not even progressed to the point where a case manager has been assigned to her. Nobody from your office has ever contacted us to find out more about Marianne's needs or condition.

The purpose of this correspondence is to remind you of Marianne Duffy and her need for services. I am also reminding you of our position, this time in writing. Attached are copies of the three letters we received from you. Your last letter, dated May 7, 2001, seems at odds with your letter dated April 17, 2001. As Marianne's legal guardian I am requesting that you respond to us both in writing and by phone with the actions you propose to take on Marianne's application for services and the reasons why. If you plan to reiterate your previous position, we are requesting that you provide us a copy of the applicable departmental regulation or the appropriate state law.

I wish to remind you that we are separated from our daughter and it is not easy to take 1,000 mile round trips to visit her. This separation places an emotional strain on our family. We are determined to take whatever action is necessary to remedy this situation. As Delaware residents and taxpayers we will not hesitate to contact our local state representatives to intervene on our behalf. If this does not produce results we will not hesitate to take our case to a sympathetic news media or take legal action against the Division of Mental Retardation. However, we do believe that there are reasonable people within state government who can understand our situation and will use common sense to resolve our dilemma and do the right thing for Marianne.

We await your timely response. I can be reached at 302-426-0419 (home) or 302-573-5799 (work).

Yours truly,

Sean Duffy

CC   Marianne Smith, Director, Division of Mental Retardation

D 0056



**DELAWARE HEALTH AND SOCIAL SERVICES**

DIVISION OF DEVELOPMENTAL DISABILITIES SERVICES

OFFICE OF THE DIRECTOR

September 30, 2002

Sean Duffy
1301 North Harrison Street
Unit 406
Wilmington, DE 19806

Dear Mr. Duffy,

Your letter of September 3, 2002, in which you expressed your concerns about services that your daughter, Marianne Duffy, has applied for from the Division of Developmental Disabilities Services (DDDS) has been received in the Office of the Director. Although your letter is addressed to Susan M. Smith, the Division's Intake Coordinator, I am taking the liberty of responding to you on behalf of Ms. Smith and the DDDS. My intent is to make sure that the Division is giving you information that clearly addresses the fundamental issues involved in your daughter's case.

First and foremost, your daughter's application for services has been formally processed to determine eligibility. Marianne was found to meet clinical criteria for eligibility, but because she is currently a resident of the State of North Carolina, her case was placed on inactive status until such time as she relocates to Delaware. As long as Marianne relocates with the intention of becoming a resident of the state (e.g., living with you and your wife), there is no "waiting period" for residency. Marianne's case would be activated as soon as the Division was informed that she had moved to Delaware. I regret any confusion that may have resulted from letters that you have received, previously.

However, it is <u>critically important</u> for you to understand that if you make the decision to move Marianne from her current placement in North Carolina to Delaware, there is no group home or other similar residential placement available for Marianne at this time. Residential placement via DDDS residential services is based on a number of criteria that guide us in the task of prioritizing the placement needs of individuals who are eligible for and request residential services from the Division. An essential criterion is that a comprehensive evaluation of an individual's case results in their assignment to the "Urgent" category of the Division's *Registry* (the DDDS system of prioritizing service needs). The evaluation that was completed on Marianne's case did not result in a prospective assignment to the *Registry's* "Urgent" category.



Exhibit 5    D 0053

JESSE C. COOPER BUILDING • FEDERAL STREET • DOVER • DELAWARE

Therefore, I strongly encourage you and Mrs. Duffy to give very serious consideration to maintaining Marianne's current group home placement in North Carolina. While I completely understand the emotional and other challenges that her out-of-state placement presents to your family, your letter indicated that Marianne is living in a safe and supportive group home. Given Marianne's prospective *Registry* status, I cannot give you any assurances relative to the prospects for Marianne's placement in Delaware.

Please do not hesitate to contact me directly at (302) 744-4559 if you have any further questions.

Sincerely,

Roy A. Lafontaine, Ph.D.
Deputy Director

pc: Marianne Smith
    Kathi Weiss
    Joseph B. Keyes, Ph.D.
    Susan Morrison-Smith
    File

October 22, 2002

RECEIVED
OCT 2 5 2002
DIRECTOR'S OFFICE
D.M.R.

1301 North Harrison Street
Unit 406
Wilmington, DE 19806

Roy A. Lafontaine, PhD
Deputy Director
Division of Developmental Disabilities Services
P.O. Box 637
Dover, DE 19903

RE:  Request for DMR Services for Marianne Duffy

Dear Mr. Lafontaine:

We are in receipt of your letter dated September 30, 2002. While your letter attempts to address questions raised in my previous letter, it remains silent on other issues. I had specifically asked for a copy of the State laws or departmental policies that are used by the department to make decisions on my daughter's eligibility for services. I am of the opinion that your policies are applied in an arbitrary manner.

In addition, you had spoken with my wife previously about Delaware residency requirements and she had told you that although my daughter Marianne is an adult, we are still her legal guardians. You stated that you would look into how that affected her status and get back to her with an answer. We have not received your response yet.

You state in your letter that as long as Marianne relocates with the intention of becoming a resident of Delaware, there is no waiting period for residency. Our initial application to your office in March 2001 was our attempt on her behalf to let you know that she intends to relocate and become a resident of Delaware. I thought that was apparent. As I have stated previously she cannot relocate until everything has been set in place and there are suitable facilities available that she can move to.

Rather than continue trying to find creative excuses why you cannot provide services to Marianne, why not try finding ways to meet her needs. A Case Manager needs to be assigned to Marianne to meet with us and understand her needs. This should have been done a long time ago. We also request that Marianne be immediately placed on the "waiting list" and her place in the queue be made retroactive to March/April 2001 when we first made application for Marianne.

Exhibit 6

1

D 0064

Although you believe that Marianne's current residence in North Carolina provides a safe and supportive environment, this is not really the case. Marianne's mental health suffers greatly while she is away from her family. Her home visits and visits by her family to her residence is an essential part of her well being. In addition, Marianne is non-verbal and long distance communication (by phone) just does not work. The only way communication can be maintained is by frequent visits to Marianne and also have Marianne visit her family at home.

As I stated earlier we plan relocating Marianne to Delaware. We have no plans to abandon Marianne in North Carolina. Marianne's needs are great and separation from her family only makes her life more difficult. We are again requesting that you assign her a Case Manager and have the Case Manager make contact with us as soon as possible.

Yours truly,

Sean Duffy

CC   Marianne Smith, Director, Division of Mental Retardation

D 0065

2