# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARIANNE DUFFY, by her parents and legal guardians, Sean and Elise Duffy, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| VINCENT MECONI, Secretary, Delaware Department of Health & Social Services, in his official capacity, | ) ) ) ) |
| MARIANNE SMITH, Director, Division of Developmental Disabilities Services, in her official capacity, | ) ) ) ) |
| ELAINE ARCHANGELO, Director, Division of Social Services, in her official capacity, and | ) ) ) |
| HARRY HILL, Director, Division of Medicaid and Medical Assistance, | ) ) ) |
| Defendants. | ) ) |

NO.  1:05-cv-127 GMS

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

MaryBeth Musumeci (#4128)  
Daniel Atkins (#2970)  
Disabilities Law Program  
Community Legal Aid Society, Inc.  
100 W. 10th Street, Suite 801  
Wilmington, DE 19801  
(302) 575-0660, ext. 228 or 229  
(302) 575-0840 (fax)  
mmusumeci@declasi.org  
datkins@declasi.org  

Sarah Somers  
Jane Perkins  
National Health Law Program  
211 N. Columbia Street  
Chapel Hill, NC 27516  
(919) 968-6308  
(919) 968-8855 (fax)  
somers@healthlaw.org  
perkins@healthlaw.org  

Dated:  June 12, 2006

Attorneys for Plaintiff

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF PROCEEDINGS .................................................................. 1

SUMMARY OF ARGUMENT .......................................................................................... 2

STATEMENT OF FACTS .................................................................................................. 3

ARGUMENT ....................................................................................................................... 6

    I.   Defendants are not entitled to summary judgment because, as a matter of law, their application of the Medicaid residency rules to Ms. Duffy unconstitutionally burdens her fundamental right to interstate travel. ........................................................... 6

        A.  Marianne cannot relocate from North Carolina without first becoming eligible for Delaware Medicaid. ................................................................................................ 6

        B.  Requiring Ms. Duffy to pay out of pocket for a placement is a violation of her right to travel. ............................................................................................................ 10

        C.  Defendants' refusal to find Ms. Duffy eligible for Delaware Medicaid before she relocates impinges on her fundamental right to travel without compelling justification. .................................................................................................................. 12

        D.  Marianne is being treated differently from in-state residents because individuals already living in Delaware who desire to move to another ICF/MR have already been determined eligible for Delaware Medicaid .................................................... 15

CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

**CASES**

*Bethesda Lutheran Homes and Servs., Inc. v. Leean.* 122 F. 3d 443 (7th Cir. 1997)... 9, 12

*Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974) ............................ 10, 11, 13

*Saenz v. Roe,* 526 U.S. 489 (1999) ................................................................................ 11

*Shapiro v. Thompson,* 394 U.S. 618 (1969) ............................................................. 11, 14

**OTHER AUTHORITY**

Delaware State Medicaid Plan § 3.1-A at 7 ....................................................................... 4

**REGULATIONS**

42 C.F.R. § 431.52 (b)(3) ................................................................................................... 4

42 C.F.R. § 435.403(i)(2)(ii) ......................................................................................... 7, 12

42 C.F.R. § 435.403(i)(2)(iii) ........................................................................................ 7, 12

42 C.F.R. § 435.905. ......................................................................................................... 13

16-5000-5001 *Del. C. Regs.* § 14100.5 ............................................................................... 7

16-5000-5001 *Del. C. Regs.* § 14110.7 .......................................................................... 7, 12

## NATURE AND STAGE OF PROCEEDINGS

Marianne Duffy is a 33-year-old Medicaid beneficiary with developmental disabilities who lives in an intermediate care facility for mental retardation (ICF/MR) in North Carolina. Her parents and legal guardians live in Delaware, more than 400 miles away. Though her parents desire it, and it would be in her best interest, Ms. Duffy cannot relocate to live closer to them. Her health and developmental conditions prohibit her from physically relocating without first obtaining an appropriate residential placement and services; yet, she cannot gain access to these services without first physically relocating to meet the Delaware Medicaid program's residency requirements.

Ms. Duffy is unable to move to an appropriate residential placement closer to her parents without first securing Delaware Medicaid funding. She cannot afford to pay out-of-pocket for a residential placement and services, and requiring her to relocate without necessary medical services, even for a short period of time, poses a significant risk to her health and safety. In order to relocate from North Carolina, Ms. Duffy requires that her eligibility for Delaware Medicaid benefits be determined in advance of her arrival, so that she can secure a residential placement and access medically necessary services on the day of her arrival. Yet, Delaware requires her first to physically relocate prior to determining her eligibility for Medicaid benefits. Thus, her parents and legal guardians, Sean and Elise Duffy, have brought this action on her behalf, seeking declaratory and injunctive relief to remedy this unconstitutional restriction on Ms. Duffy's fundamental right to interstate travel.

The complaint in this action was filed on March 4, 2005 (D.I. 1), and amended on November 11, 2005 (D.I. 36). Defendants filed a motion to dismiss on May 25, 2005 (D.I. 11), which was denied by this court on October 28, 2005 (D.I. 34). The parties filed cross-motions for summary judgment and opening briefs on May 12, 2006 (D.I. 50, 54, 55). This is Plaintiff's answering brief in opposition to Defendants' motion for summary judgment.

## SUMMARY OF ARGUMENT

Defendants claim that they have shown, as a matter of law, that there is no legal obstacle preventing Marianne Duffy from establishing residency in Delaware. This is incorrect. As she has demonstrated in her opening brief in support of her motion for summary judgment (D.I. 55), Ms. Duffy is prevented from establishing Delaware residency by Defendants' residency rules, which unconstitutionally burden her fundamental right to interstate travel. In order to move from North Carolina, Defendants concede that Ms. Duffy must relocate directly to a facility that will provide her with appropriate medical and supportive services. Ms. Duffy's parents cannot safely provide that care. Moreover, Ms. Duffy cannot afford to pay for such a placement, even for a very short period of time, thus, she must establish eligibility for Delaware Medicaid before entering a facility. In their opening brief in support of their motion for summary judgment, Defendants claim that Ms. Duffy need only move into a Delaware facility in order to "immediately" establish residency. (D.I. 50 at 1). They have failed to explain, however, how Ms. Duffy would be able to move into a residential placement in Delaware if she is not first eligible for Delaware's Medicaid program.

## **STATEMENT OF FACTS**[1]

In order for Marianne to move, the Duffys must both find an appropriate placement and obtain necessary funding for that placement. (Supplemental Affidavit of Sean Duffy, ¶ 3, attached as Exhibit A) (hereinafter "S. Duffy Supplemental Aff."). Because the Duffys are aware of the significant expense associated with residential placements, they focused their initial efforts on seeking Delaware Medicaid eligibility for Marianne. *Id.* Their separate but parallel search for an appropriate placement has confirmed that once a potential appropriate residential placement is located for Marianne, she will be unable to access it by physically relocating until her eligibility for Delaware Medicaid funding has been secured. *Id.* at ¶ 4.

The Duffys expected that locating an appropriate placement for Marianne would not be easy as a result of her significant disabilities and needs. *Id. at* ¶ 2. The Duffys have moved interstate with Marianne before – from Pennsylvania to North Carolina – and at that time were able to both locate an appropriate residential placement and secure the necessary Medicaid funding prior to Marianne's arrival without any of the difficulties that they are currently experiencing with her Delaware Medicaid eligibility. *Id.* When they first moved to Delaware, based on their experience, the Duffys expected that they would be able to accomplish another move for Marianne. *Id.*

After it became clear that accessing Delaware Medicaid for Marianne was not going to be easy, the Duffys began to explore potential group home placements. *Id.* at ¶ 5. The Duffys contacted Community Systems, Inc. (CSI), Bancroft, and Chimes. *Id.* CSI never returned the Duffys' telephone call. *Id.* After discussing Marianne's needs

---

[1] For a complete statement of facts, see Plaintiff's Opening Brief in Support of her Motion for Summary Judgment (D.I. 55), at 3-7.

3

with Bancroft staff, the Duffys were advised that Bancroft residents functioned at a higher level than Marianne.  *Id.*  The Duffys did apply for services at Chimes; however, Chimes staff determined that they were unable to meet Marianne's needs, and instead recommended that the Duffys explore Chesapeake Care Resources, Inc. (CCRI), an ICF/MR located ten miles over the Delaware state line in North East, Maryland.[2]  *Id.*  The Duffys learned that CCRI serves several Delaware residents in their residential program.  *Id.*  CCRI recently determined, however, that it is unable to meet Marianne's needs.  *Id.* at ¶ 6.

The Duffys are continuing their search for an appropriate placement for Marianne.  *Id.* at ¶ 8.  They also must continue to pursue the concurrent track of obtaining Medicaid funding for such a placement.  *Id.*  This is because, in their experience, funding must be in place prior to a final commitment for services from an ICF/MR.  *Id.* at ¶ 6.  Moreover, there is no reason to expect that a facility would provide services for free, and given the high cost of these services, no reason to expect that Marianne could move into a facility without making payment arrangements before she moves in.  *Id.*

For purposes of illustration, the Duffys have learned that there are recognized steps associated with an application for CCRI services. The final step prior to acceptance

---

[2] Contrary to Defendants' contention (Defendants' Opening Br. in Support of Their Motion for Summary Judgment, at 6, fn. 3 (D.I. 50)), acceptance of Marianne's application for residential services at an out-of-state facility would not render Marianne's claims in this case moot.  If Marianne becomes a Delaware resident, and no appropriate placement is available to her in-state, then Delaware still must provide ICF/MR and other medically necessary services to Marianne pursuant to its state Medicaid plan, just as it does for any other Delaware Medicaid beneficiary.  *See,* Delaware State Medicaid Plan § 3.1-A at 7, at http://www.cms.hhs.gov/medicaid/stateplans/State_Data/DE/3.1/Attachments/A/A_002.pdf.  *See also* 42 C.F.R. § 431.52 (b)(3) (providing that states must pay for services furnished in another state to a state resident if it "is the general practice for recipients in a particular locality to use medical resources in another state.")

for admission requires the potential applicant to "[h]ave necessary paperwork and obtain funding and approvals of [the] state agency." *See*, Chesapeake Care Resource, Inc., Steps Individuals Must Take to Apply for Services, at http://www.dhmh.state.md.us/dda/DDAtext/chesapeakecare.htm; *see also* S. Duffy Supplemental Aff., Ex. A., ¶ 6). Even if Marianne had met all of the other admission criteria, she still would not have been able to comply with the final step required for admission – she is unable to obtain a funding commitment from Delaware's Medicaid program, because Defendants contend that she first must physically relocate. (S. Duffy Supplemental Aff.*,* Ex. A., ¶ 6).

Thus, Delaware's application of the Medicaid residency rule unconstitutionally burdens Marianne's ability to exercise her fundamental right to interstate travel. Contrary to Defendant Smith's contention, Marianne does not have alternatives available to her in lieu of Medicaid funding. *Compare* Defendants' Opening Br. in Support of Their Motion for Summary Judgment (D.I. 50), at 6 (quoting Smith Decl. ¶ 15) *with* Plaintiff's Opening Br. in Support of Her Motion for Summary Judgment (D.I. 55), at S. Duffy Aff., Ex. A, ¶ 11, 12 (she is unable to afford to pay out-of-pocket for a placement due to her limited income) and M. Goldman Aff., Ex. D, ¶ 8 (opinion of her treating psychologist that "she could not live safely in a private home with untrained family members or other individuals for even a day."). If obtaining a residential placement and services for Marianne were as simple as Defendants claim, the Duffys would have followed that course years ago, instead of pursuing litigation to obtain the Medicaid eligibility that Marianne needs in place prior to a physical move. (S. Duffy Supplemental Aff., Ex. A, ¶ 8).

5

# ARGUMENT

I. **Defendants are not entitled to summary judgment because, as a matter of law, their application of the Medicaid residency rules to Ms. Duffy unconstitutionally burdens her fundamental right to interstate travel.**

   **A. Marianne cannot relocate from North Carolina without first becoming eligible for Delaware Medicaid.**

Defendants' assertion that the Medicaid residency rules "are not in any way impinging upon or penalizing plaintiff's ability to exercise her constitutional right to travel" is incorrect. (Defendants' Opening Br. in Support of Their Motion for Summary Judgment (D.I. 50) at 1). First, as set forth in Plaintiff's Opening Brief in Support of Her Motion for Summary Judgment, Marianne cannot simply move to her parents' home to establish Delaware residency. *See, e.g.,* Plaintiff's Opening Br. (D.I. 50), at 6-7. Her psychologist, Marc Goldman, has stated that "she could not live safely in a private home with untrained family members or other individuals for even a day." (M. Goldman Aff., Ex. D to Plaintiff's Opening Br. (D.I. 50), ¶ 8.) Defendant Meconi has acknowledged this, writing that "it is readily apparent . . . that Marianne cannot move to Delaware for the purpose of establishing residency unless provisions are made to relocate her directly from her current placement to one that would be able to support her needs." (Letter from Vincent Meconi to Elise Duffy, Feb. 4, 2004, attached as Exhibit A-12 to Plaintiff's Opening Br. (D.I. 50) , at 2.) *See also,* S. Duffy Aff., Ex. A to Plaintiff's Opening Br. (D.I. 50), at ¶ 10. Her only alternative is to move directly into an appropriate residential facility.

Defendants assert that there is no obstacle to prevent Ms. Duffy from moving into a Delaware residential facility, because as soon as she moved into such a facility, she would "immediately become a Delaware resident and *(assuming financial eligibility)*

6

eligible for Medicaid." Def. Opening Br. (D.I. 50), at 17 (emphasis added). While the Defendants' arguments in this case sound reassuring, they are contradicted by Delaware law and the record in this case. Under Delaware regulations, which provide that the state of residence of an institutionalized individual is that of the parent's at the time of placement, Marianne would still be a North Carolina resident when she moved to Delaware. 16-5000-5001 *Del. C. Regs.* § 14110.7; *see also* 42 C.F.R. § 435.403(i)(2)(ii). As this court has observed, "on their face, the state regulations appear to trap Duffy in North Carolina." Op. at 7 (D.I. 34).

Defendants have claimed that they would instead follow a federal regulation, 42 C.F.R. § 435.403(i)(2)(iii); however, there is no guarantee that they would do so, given the clear language of the state regulations. Even if they did, there is no guarantee that Marianne's eligibility for Medicaid would be finalized on the date of her arrival. Defendants have 90 days after application to determine Medicaid eligibility – including financial eligibility. *See* 16-5000-5001 *Del. C. Regs.* § 14100.5. There is nothing requiring them to act more quickly and, in fact, their own argument indicates that additional steps would need to be taken before Medicaid eligibility would be established even after Ms. Duffy moved into a facility. *See,* Def. Opening Br. (D.I. 50), at 17 (stating that Ms. Duffy would become a Delaware resident "assuming financial eligibility."). The Defendants are asking the Duffys to move their daughter 400 miles to Delaware, without a placement, based only on assurances provided in briefs that Marianne will ultimately be eligible for Medicaid. Defendants essentially contend that Marianne's move to Delaware must precede her Medicaid eligibility. However, Defendants' contention illustrates quite clearly the catch-22 the Duffys have been confronting – they cannot

7

obtain a placement for Marianne without Medicaid eligibility. Defendants' expectation for the Duffys to move Marianne to Delaware, without a placement, contrary to her psychologist's recommendation, for an indefinite time period, until Medicaid eligibility is granted and a placement is obtained, and incur liability for thousands of dollars of care, cannot be legally acceptable.

Finally, even if Delaware did find that Ms. Duffy was a Delaware resident as soon as she moved into a facility *and* immediately found her eligible for Medicaid – which is by no means certain – this would not help Ms. Duffy. Crucially, it does not explain how she can access a residential placement in the first instance. Residential placements are too expensive for Marianne to afford without the assistance of Medicaid. For example, the Mary Campbell Center, an ICF/MR in Delaware, costs between $275.00 to $300.00 per day for private pay patients.[3] (S. Duffy Aff., Ex. A to Plaintiff's Opening Br. in Support of Her Motion for Summary Judgment (D.I. 55), ¶ 12.) The estimated average daily rate for the Stockley Center, the other Delaware ICF/MR, is approximately $373.00.[4] (Defendants' Resp. to Second Req. for Production of Documents (D.I. 53), Cost Projection Data Sheet, at D0234.) In addition, Marianne requires Medicaid benefits to pay for her other health care costs, such as prescription drugs, medical tests, hospitalizations, and doctors' visits. (S. Duffy Aff., Ex. A to Pl's Opening Br. (D.I. 55), ¶ 12.) Marianne's only source of income is her Supplemental Security Income (SSI) benefits and negligible income for piecework in her vocational day program

---

[3] Mary Campbell Center has determined that it cannot meet Marianne's needs. (S. Duffy Aff., Ex. A to Plaintiff's Opening Br. (D.I. 55), ¶ 12.) The cost for services at that facility is included for illustration.

[4] Stockley Center is not accepting any new applicants.

(approximately $113.00 total in 2004). She has minimal savings and no other resources.[5] (S. Duffy Aff., Ex. A to Plaintiff's Opening Br. (D.I. 55), ¶ 11.)

It is unreasonable to assume – and in fact contrary to the Duffys' experience -- that a private residential facility would allow Ms. Duffy to move into their facility before she can guarantee that she can pay for the placement  Because Ms. Duffy cannot afford to pay out of pocket, this would mean establishing that she is eligible for Medicaid. As set out above, in order to move into CCRI, a new resident must "[h]ave necessary paperwork and obtain funding and approvals of [the] state agency." *See*, Chesapeake Care Resource, Inc., Steps Individuals Must Take to Apply for Services, at http://www.dhmh.state.md.us/dda/DDAtext/chesapeakecare.htm; *see also* S. Duffy Supplemental Aff., Ex. A., ¶ 6). This last requirement is precisely what Ms. Duffy cannot fulfill – because she cannot obtain this funding and approval until *after* she moves to Delaware. Consequently, Defendants' application of the Medicaid residency rules to Marianne traps her in North Carolina.

The catch-22 situation created by Defendants' refusal to determine Marianne eligible for Delaware Medicaid prior to her physical relocation has the same effect as that experienced by the first group of plaintiffs in *Bethesda Lutheran Homes and Services, Inc. v. Leean.* 122 F. 3d 443 (7th Cir. 1997). As this court has noted, the non-resident *Bethesda* plaintiffs' situation is not identical to Marianne's. In *Bethesda,* a state statute required the petition for protective placement to be filed in the person's Wisconsin county of residence. *Id.* at 445. This statute  prevented individuals from moving to

---

[5] The total SSI grant is approximately $600 per month.  Currently, all but a personal needs allowance of $30 of Marianne's grant is paid to Carobell for her care. *See,* S. Duffy Aff., Ex. A to Pl's Opening Br. (D.I. 55), ¶ 11.)

9

Wisconsin regardless of whether they could privately pay for ICF/MR care. The federal and state Medicaid rules at issue in Marianne's case only bar individuals who cannot pay for ICF/MR care and who cannot live outside of a residential facility while waiting for a placement. This is, however, a distinction without a difference. The relevant comparison is the *effect* that the state's rule imposes on both the Bethesda plaintiffs and Ms. Duffy. The obstacle presented by Wisconsin's protective placement statute and Delaware's Medicaid residency requirement is the same – each prevents the plaintiff from relocating to a new state.

> **B. Requiring Ms. Duffy to pay out of pocket for a placement is a violation of her right to travel.**

Even if Marianne could afford to privately pay to access residential placement and services, forcing her to do so would unconstitutionally burden her fundamental right to interstate travel. As this Court observed when denying Defendants' motion to dismiss, "[e]ven if Duffy could become a resident in the manner prescribed by the Defendants, it is unclear whether a regulatory scheme that forces a prospective resident to go through the extra step of paying for private placement before becoming eligible for Medicaid is constitutional anyway." Op. at 7 (D.I. 34). The leading cases protecting the fundamental right to interstate travel demonstrate that such a scheme is not constitutional. In fact, the Supreme Court has held that a state law or practice of denying publicly-funded health care benefits constitutes an unconstitutional burden on the right to travel. In *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 252 (1974), a state statute required a year's residence in the county before an individual could receive free county-funded medical care. The plaintiffs, who had lived in the county for less than a year but could not afford to pay for medical care, challenged this requirement as a violation of the right to travel.

10

*Id.* at 269. The Court struck down the statute as unconstitutional. The *Maricopa County* residents did not allege that they were completely barred from county facilities – only that they were required to pay for care. Even though the plaintiffs theoretically had the opportunity to pay for care, this fact did not save the statute. The Court's decision that the law was unconstitutional rested on its conclusion that medical care is "a basic necessity of life" and that the residency requirement effectively "den[ied] [the plaintiff] the medical care necessary to relieve him from the wheezing and gasping of breath that attended his illness." *Id.* at 259-60.

Similarly, in *Shapiro v. Thompson,* 394 U.S. 618, 622 (1969), the Supreme Court struck down state and District of Columbia statutes that denied welfare benefits to residents "who had not resided within their jurisdictions for at least one year immediately preceding their applications for such assistance." The creation of two classes of state citizens, based upon the length of their residence, was found to violate the Equal Protection Clause of the Fourteenth Amendment. In *Saenz v. Roe,* 526 U.S. 489 (1999), the Court held that California's practice of providing a reduced level of cash assistance benefits to new state residents violated the Privileges and Immunities Clause of the Fourteenth Amendment because the state imposed a penalty on recently arrived citizens who were exercising their right to travel. Thus, in *Maricopa County, Shapiro* and *Saenz,* the Court invalidated laws that impermissibly burdened the right to travel, even though they did not prevent travel but only imposed a financial penalty. If those laws are unconstitutional, the Delaware Medicaid residency rules as applied to Marianne must also be unconstitutional because the effect of that rule is at best to penalize her right to travel and at worst to foreclose it entirely.

Marianne's situation is also similar to that of the second set of plaintiffs in *Bethesda*, who were already residing in ICF-MRs in Wisconsin but were considered residents of Illinois for Medicaid purposes. 122 F.3d at 447-48. Even if Marianne were able to pay out-of-pocket for an institutional placement and could physically relocate, she would still be a North Carolina resident under the Medicaid regulations providing that the state of residence of an institutionalized individual is that of the parent's at the time of placement. 42 C.F.R. § 435.403(i)(2)(ii); 16-5000-5001 *Del. C. Regs.* § 14110.7. As this court has observed, "on their face, the state regulations appear to trap Duffy in North Carolina." Op. at 7 (D.I. 34). Defendants contend that Marianne would become a Delaware resident if she were to relocate to a Delaware institution because her parents currently live in Delaware, pursuant to 42 C.F.R. § 435.403(i)(2)(iii). As discussed above, even if Medicaid eligibility could be established after Marianne moved, she cannot gain admission to a placement in the first place because she cannot afford to pay out-of-pocket for such care. *See*, argument I.A., *supra.* Thus, the Medicaid residency rules at issue in *Bethesda* and Marianne's case have the same unconstitutional effect – both bar individuals with disabilities who need ICF/MR services from establishing residency for Medicaid purposes in a new state.

### C. Defendants' refusal to find Ms. Duffy eligible for Delaware Medicaid before she relocates impinges on her fundamental right to travel without compelling justification.

Defendants contend that Ms. Duffy is simply "asserting that a different rule should apply to the determination of her residency." (Defendants' Opening Br. in Support of Their Motion for Summary Judgment, at 18 (D.I. 50)). This is not true. Rather, she asserts that Defendants' residency rule creates different classifications of individuals

seeking Delaware residency and treats them differently. Specifically the Delaware residency rule impinges on her fundamental right to travel in a way that it does not for other prospective Delaware residents in need of institutional care who either: (1) have the financial means to pay for a private placement or (2) whose disabilities do not prevent them from living in the community while Medicaid eligibility is being determined. *See,* Plaintiff Opening Br. (D.I. 55) at 13. Both of these groups are free to exercise their right to interstate travel by physically relocating. By contrast, Marianne cannot comply with Defendants' residency rules due to her limited finances, her need for an appropriate placement and services as a result of her disabilities, and the practical reality of being unable to secure a placement without first obtaining funding.[6]

Defendants' regulations cannot withstand strict scrutiny.[7] Their asserted justification for their rule – a desire to "fairly apportion the State's limited funds to those residents who need it most" (Mot. to Dismiss, at 15 (D.I. 11); *see also* Defendants' Resp. to Plaintiff's First Set of Interrogs., Interog. No. 5 (D.I. 51)) – is the type of fiscal justification that repeatedly has been found to fail strict scrutiny analysis by the Supreme Court. *See, Maricopa County*, 415 U.S. at 266 (rejecting state's goal of not "dilut[ing]

---

[6] Defendants' argument that they are obligated only to pay for Medicaid services as opposed to providing a placement for Ms. Duffy is inapposite. First, Ms. Duffy has not argued that Defendants must provide her a placement. She only argues that she be found eligible before actually relocating, so that she can access a placement. Second, Defendants' actions have the effect of denying payment for any placement, public or private. Also, a state Medicaid agency is required to provide information and advice about benefits available under the state Medicaid plan. *See* 42 C.F.R. § 435.905.

[7] Defendants' brief does not contest the fundamental nature of the right to interstate travel or the appropriateness of strict scrutiny analysis. Plaintiff relies upon her opening brief in support of her motion for summary judgment for a more complete recitation of the law on these points. (D.I. 55) at 10-23.

the quality of services provided to long time residents"); *see also Shapiro*, 394 U.S. at 632-33 (rejecting similar justification).

Defendants' contention that all Marianne has to do in order to obtain Delaware Medicaid is move to a residential placement in Delaware distorts the multi-layered process with which the Duffys are faced. A move for someone with Marianne's needs is complex as a result of her significant disabilities and resultant medical needs. Finding an appropriate placement to meet Marianne's needs is expected to be time-consuming because her needs are complicated, and it is imperative that the future placement be able to accommodate her needs because a move will be a significant change. However, these hurdles are not insurmountable – the Duffys have moved interstate and moved Marianne from one residential placement to another before, and have no reason to expect that they will not be able to do so again. *See,* S. Duffy Supplemental Aff., Ex. A, ¶ 2. Just because the Duffys have not yet located an appropriate nearby residential placement for Marianne does not mean that Delaware's Medicaid rules do not unconstitutionally burden Marianne's right to interstate travel, however. The question of locating an appropriate residential placement is a separate and parallel question from the question of obtaining funding to secure a placement. For example, even if CCRI could meet Marianne's needs, she would still have to secure state agency approval and funding in order to be admitted to that facility. (S. Duffy Supplemental Aff., Ex. A, ¶ 6.) This process is consistent with the Duffys' experience at the other ICF/MRs and group homes they have explored. *Id.*

Defendants' rules also unconstitutionally burden Marianne's right to interstate travel because her ability to access the state system for community residential placements under Delaware's home and community-based services (HCBS) Medicaid waiver has

14

been curtailed.  At the very least, if Marianne had been determined eligible for Delaware Medicaid at the time of her parents' application for her in 2001, she should have been added to the state registry of persons seeking HCBS waiver services.  She has therefore been denied the opportunity to take her place on the waiting list,[8] in the event that state funding becomes available in the future to serve people whom the state considers "non-urgent."[9]  Had Defendants determined Marianne eligible for Medicaid in 2001, she already would have been on the state registry for five years.  The denial of this opportunity constitutes a significant burden on her right to travel.

### D.  Marianne is being treated differently from in-state residents because individuals already living in Delaware who desire to move to another ICF/MR have already been determined eligible for Delaware Medicaid

Defendants' contention that Marianne is being treated the same as someone who wishes to relocate from one Delaware facility to another is incorrect.  The application of the Medicaid residency rules to Marianne treats her significantly differently from a person who already lives in a Delaware facility, because that person by virtue of their physical presence in the state can establish residency and eligibility for Delaware Medicaid and therefore have funding in place prior to a move to another facility.  This is what Defendants' rule prevents Marianne from accomplishing.  Marianne is left with the option of paying out-of-pocket for a placement, which she cannot afford, or with trying to

---

[8] Defendants prefer to characterize the DDDS client registry as "a comprehensive compilation of data on the DDDS services and needs of all the individuals who have been determined to be eligible for DDDS services." Defendants' Resp. to Plaintiff's First Set of Interrogs., Interrog. No. 4, at 5 (D.I. 51).

[9] The Duffys always have asserted that they do not wish for Marianne to displace anyone else in order to receive services. (S. Duffy Supplemental Aff., Ex. A, ¶ 7.) However, they do wish for Marianne to be allowed to take her place in line and be permitted to wait for services.

15

finalize a placement without first securing funding, which is extremely unlikely to succeed. The effect of Defendants' Medicaid residency rules thus significantly burdens her ability to exercise her fundamental right to interstate travel, and for the reasons contained above and in Plaintiff's Opening Brief in Support of Her Motion for Summary Judgment (D.I. 55), cannot withstand strict scrutiny. Defendants therefore have failed to establish that they are entitled to judgment as a matter of law.

## CONCLUSION

For the reasons set forth above and in the pleadings and other evidence, the Plaintiff requests that this court deny Defendants' motion for summary judgment because Defendants are not entitled to judgment as a matter of law.

Dated: June 12, 2006                                                Respectfully submitted,


*/s/ MaryBeth Musumeci*
MaryBeth Musumeci (#4128)
Dan Atkins (#2970)
Disabilities Law Program
Community Legal Aid Society, Inc.
100 W. 10th Street, Suite 801
Wilmington, DE 19801
(302) 575-0660, ext. 228 or 229
(302) 575-0840 (fax)
mmusumeci@declasi.org
datkins@declasi.org

Jane Perkins
Sarah Somers
National Health Law Program
211 N. Columbia Street
Chapel Hill, NC 27516
(919) 968-6308

16

        (919) 968-8855 (fax)
        perkins@healthlaw.org
        somers@healthlaw.org

        Attorneys for Plaintiff,
        Marianne Duffy