IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARIANNE DUFFY, by her parents and legal guardians, Sean and Elise Duffy,<br><br>Plaintiff,<br><br>v.<br><br>VINCENT MECONI, Secretary, Delaware Department of Health & Social Services, in his official capacity, *et al.*,<br><br>Defendants. | No. 1:05-cv-127 GMS |

## SUPPLEMENTAL AFFIDAVIT OF SEAN DUFFY

1. I am the father of Plaintiff, Marianne Duffy, born March 6, 1973. Marianne's mother, Elise Duffy, and I are Marianne's legal guardians. The statements contained in this affidavit supplement my May 12, 2006 affidavit, which was attached as Exhibit A to Plaintiff's Opening Brief in Support of Her Motion for Summary Judgment.

2. Marianne's mother and I expected that locating a new placement for Marianne would not be easy. Marianne needs an environment that can accommodate her multiple disabilities and keep her safe. But, we are confident that, while the process may be time-consuming, this can be done, because we were able to move interstate with Marianne before, without the problems that we are experiencing now with obtaining Medicaid in a new state. In December, 1993, we moved from Pennsylvania to North Carolina. In January, 1994, Marianne relocated from her residential placement in Pennsylvania to Carobell in North Carolina. We were able to obtain a new residential placement for Marianne in our new state and secure the necessary funding to ensure that all of the services she needed would be in place upon her arrival, without any of the problems we are currently experiencing with Delaware. We had no reason to believe that we

would not be able to accomplish this again and that things would not go as smoothly as they had in the past.

3. In order for Marianne to move, we need to have at least two things in place: (1) an appropriate residential placement and (2) funding for that placement and medical services. Because Marianne has lived in a residential placement for most of her life, we are aware of the significant cost, and we knew that neither we nor Marianne could afford to pay out-of-pocket, even for a short time. As a result, we focused our initial efforts on applying for services, including Medicaid benefits, in Delaware, so that Marianne would have the means of paying for a new placement. This was the logical starting point for us, as things had worked smoothly this way during our prior interstate move. We had no way of anticipating the problems with establishing Delaware Medicaid eligibility for Marianne that we have encountered. These problems never arose for us in the past.

4. After we encountered difficulty with establishing Delaware Medicaid eligibility for Marianne, we contacted an attorney, and then began this litigation. Subsequently, we have explored potential residential placements for Marianne to see what other options are available for her. This process has made all the more clear to us that Marianne will never be able to leave North Carolina unless she can first obtain Medicaid as a means of funding a new residential placement. We have not found any facility that would allow Marianne to move in without first making payment arrangements, even if she otherwise met all of the admission criteria. We will continue our efforts to explore potential placements for Marianne, but this does not change the fact that she still will be required to have funding in place prior to a physical move.

5. We also have explored some group homes in Delaware as potential placements for Marianne. Community Systems, Inc. never returned our phone calls. We discussed Marianne's

needs with Bancroft, and were told by staff that they served higher-functioning residents. Chimes staff referred us to Chesapeake Care Resources, Inc. (CCRI). CCRI is an ICF/MR located ten miles over the Delaware state line, in North East, Maryland, and we learned that they serve several Delaware residents in their residential program, and many more attend their day programs.

6. While CCRI recently determined that it was unable to meet Marianne's needs, our experience with CCRI's application process confirmed for us the importance of getting funding in place prior to a final commitment for admission from an ICF/MR or an actual move-in date. For example, CCRI uses a four-step process. We visited CCRI and met with staff. We submitted an application and Marianne's medical records. Then, the CCRI Admissions Committee reviewed the records. Even if the Admissions Committee had accepted Marianne as potentially appropriate for services, we still would not have been able to comply with the fourth and final step required for admission – securing funding. CCRI's process is consistent with all of the other ICF/MRs and group homes which we have explored. A facility is not going to commit to providing services for free, and given the high cost of these services, we are not surprised that payment arrangements must be made up front.

7. If Marianne were to move to a group home funded under Delaware's home and community-based services Medicaid waiver, instead of an ICF/MR, we understand that she is only one of many people seeking those services and that funding is limited. We have never asked that Marianne be given special priority over others. We only want to have Marianne take her place in line so that she can wait her turn for services, should funding become available.

8. We are committed to continuing our search for an appropriate placement for Marianne. In order to make a move a reality for her so that she can once again live closer to her

family, however, it is essential to get Medicaid funding in place first for the placement and services that Marianne needs. If the process were as simple as Defendants make it out to be – simply have Marianne apply to a facility, get accepted, and move – we would have done that years ago instead of delaying her move and pursuing this litigation. The funding piece is critical, and if Marianne cannot have her Medicaid application approved so that funding will be in place and effective on the date of her arrival, she will never be able to leave North Carolina.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of June, 2006, at Wilmington, Delaware.

_____
Sean Duffy
Father and Legal Guardian of Plaintiff,
Marianne Duffy

4