# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARIANNE DUFFY, by her parents and legal guardians, Sean and Elise Duffy, ) ) ) | |
| Plaintiff, ) ) | NO. 1:05-cv-127 GMS |
| v. ) ) | |
| VINCENT MECONI, Secretary, Delaware Department of Health & Social Services, in his official capacity, ) ) ) ) | |
| MARIANNE SMITH, Director, Division of Developmental Disabilities Services, in her official capacity, ) ) ) ) | |
| ELAINE ARCHANGELO, Director, Division of Social Services, in her official capacity, and ) ) ) | |
| HARRY HILL, Director, Division of Medicaid and Medical Assistance, ) ) ) | |
| Defendants. ) ) | |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
## HER MOTION FOR SUMMARY JUDGMENT

MaryBeth Musumeci (#4128)
Daniel Atkins (#2970)
Disabilities Law Program
Community Legal Aid Society, Inc.
100 W. 10th Street, Suite 801
Wilmington, DE 19801
(302) 575-0660, ext. 228 or 229
(302) 575-0840 (fax)
mmusumeci@declasi.org
datkins@declasi.org

Sarah Somers
Jane Perkins
National Health Law Program
211 N. Columbia Street
Chapel Hill, NC 27516
(919) 968-6308
(919) 968-8855 (fax)
somers@healthlaw.org
perkins@healthlaw.org

Dated: July 7, 2006                    Attorneys for Plaintiff

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT ........................................................................................................................ 1

    I.  The Effect of Delaware's Medicaid Residency Rules on Ms. Duffy's Right to Travel Is the Same Or More Substantial Than the Burden Imposed By the Laws Invalidated by the U.S. Supreme Court. ............................................................................................. 1

    II.  The Undisputed Facts of Ms. Duffy's Case Demonstrate that Delaware's Medicaid Residency Rules Unconstitutionally Burden Her Ability To Relocate From North Carolina. ............................................................................................................................ 6

CONCLUSION ...................................................................................................................... 10

# **TABLE OF AUTHORITIES**

CASES

*Bethesda Lutheran Homes and Servs. v. Leean*, 122 F.3d 443 (7th Cir. 1997)............ 3, 4, 5

*Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974) ................................. 1, 2, 3

*Saenz v. Roe*, 526 U.S. 489 (1999) .......................................................................... 1, 2, 3

*Shapiro v. Thompson*, 394 U.S. 618 (1969)............................................................ 1, 2, 3, 5

OTHER AUTHORITY

Delaware State Medicaid Plan § 3.1-A at 7 ....................................................................... 6

REGULATIONS

42 C.F.R. § 431.52(b)(3)..................................................................................................... 6

42 C.F.R. § 435.403(i)(2)(ii).............................................................................................. 4

42 C.F.R. § 435.403(i)(2)(iii)............................................................................................. 4

16-5000-5001 *Del. C. Regs.* § 14100.5............................................................................... 5

16-5000-5001 *Del. C. Regs.* § 14110.7............................................................................... 4

**ARGUMENT**

**I. The Effect of Delaware's Medicaid Residency Rules on Ms. Duffy's Right to Travel Is the Same Or More Substantial Than the Burden Imposed By the Laws Invalidated by the U.S. Supreme Court.**

Defendants' contention that the "undisputed facts [of Ms. Duffy's case] <u>do not</u> establish that the Delaware Medicaid residency rules are in any way preventing or hindering plaintiff from moving to an appropriate residential facility" (Defs.' Answering Br. at 2 (D.I. 60) (emphasis in original)) is incorrect as a matter of law. Defendants do not contest the fundamental nature of Ms. Duffy's right to interstate travel or the applicability of strict scrutiny analysis as outlined in Plaintiff's opening brief (D.I. 55). In fact, Defendants' opening brief in support of their motion for summary judgment (D.I. 50) and answering brief in opposition to Plaintiff's cross-motion (D.I. 60) do not even mention the United States Supreme Court's seminal cases on the right to travel. These binding precedents demonstrate that the application of Delaware's Medicaid residency regulations to Ms. Duffy's case unconstitutionally burdens her right to interstate travel.

Rather than focusing solely on legal obstacles that completely foreclose interstate travel, the United States Supreme Court has invalidated laws that merely penalize or burden the exercise of that right. In *Shapiro v. Thompson*, 394 U.S. 618, 622 (1969), the Court struck down laws that denied welfare benefits to state residents "who had not resided within their jurisdictions for at least one year immediately preceding their applications for such assistance." Similarly, in *Saenz v. Roe*, 526 U.S. 489 (1999), the Court found unconstitutional a state law that provided a reduced level of cash assistance benefits to recently arrived state residents. And, in *Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974), the Court held that a state law or practice of denying

1

publicly-funded health care benefits to newly arrived state residents placed an unconstitutional burden on the right to travel.

In Ms. Duffy's case, Defendants argue that Delaware's residency rules do not "in any way prevent. . . or hinder. . . plaintiff from moving to an appropriate residential facility. . . ." (Defs.' Answering Br. at 2 (D.I. 60)). Defendants contend that Ms. Duffy must move to Delaware before she can be eligible for Delaware Medicaid, and that she is trapped in North Carolina because she has been unable to locate a new residential placement due to factors separate and apart from her Delaware Medicaid eligibility. Defendants' argument centers on their assertion that Delaware Medicaid benefits are not necessary to secure such a placement. Applying Defendants' logic to the facts of *Shapiro, Saenz,* and *Maricopa County* demonstrates that the state's position in Ms. Duffy's case is legally incorrect.

Defendants argue that "[i]f a particular facility is unable or unwilling to accept Ms. Duffy, or if the Duffys themselves conclude that a facility will not meet their daughter's needs, then it is those factors – and not her current status as a North Carolina resident under the Medicaid residency rules – that would prevent her from moving to the Delaware facility." (Defs.' Answering Br. at 4 (D.I. 60)). In essence, Defendants seek to rewrite *Shapiro* and *Saenz.* Their position in this case in untenable in light of the U.S. Supreme Court's holdings in those cases.

In each of the cases examined by the United States Supreme Court, the laws at issue did not trap the plaintiffs in their original states of residence; rather, the circumstances of their poverty led to their inability to access public benefits that were otherwise available to long-standing state residents. The laws themselves did not present

2

complete bars to travel; instead, the laws merely placed a burden on the exercise of that fundamental right. Delaware's Medicaid residency rules similarly burden Ms. Duffy's right to travel by preventing her from securing that funding for a residential placement prior to her physical relocation. These rules would not have a discriminatory effect on Ms. Duffy but for her significant disabilities, which Defendants concede require her to first obtain an appropriate residential placement and services prior to a move.[1] *See,* Defs.' Answering Br. (D.I. 60) at 1; Letter from Vincent Meconi to Elise Duffy, Feb. 4, 2004, attached as Exhibit A-12 to Pl.'s Opening Br. (D.I. 50) at 2. Ms. Duffy's disabilities create circumstances, like the poverty experienced by the *Shapiro, Saenz,* and *Maricopa County* plaintiffs, that unconstitutionally burden her right to travel. As explained in more detail at Argument II, *infra,* Ms. Duffy cannot obtain a new residential placement without first securing funding to pay for the placement in advance of her move, and because she cannot privately pay, she must establish Medicaid eligibility prior to her move in order for it to be effective on the day of her arrival.

Defendants' argument that their Medicaid residency rules do not impede Ms. Duffy's right to travel raises the same questions as the argument rejected by the Seventh Circuit Court of Appeals in *Bethesda Lutheran Homes and Servs. v. Leean*, 122 F.3d 443 (7th Cir. 1997). Regarding the non-resident *Bethesda* plaintiffs, Judge Posner observed that

---

[1] To illustrate Ms. Duffy's predicament, consider a person without disabilities receiving Medicaid in North Carolina who moves to Delaware. If this person needs, for example, a dental examination, the fact that eligibility for Delaware Medicaid cannot be established until the person is living in Delaware presents no particular burden. In contrast, because of her needs for a residential placement, Ms. Duffy faces a severe burden if required to actually establish residency before such a placement can be obtained.

3

> [t]he Attorney General of Wisconsin assures us that the applicant doesn't have to show up in the state until the very day of the hearing on his petition, and if the petition is granted on the spot he can go directly to the Watertown facility. But what if it isn't granted on the spot? And more important, how can someone establish residence whose intent (or, more to the point in these cases, his guardian's intent) is that he shall remain in Wisconsin only if his petition is granted?

*Id*. at 446. Similarly, in Ms. Duffy's case, Defendants contend that "[i]f she moves directly into a Delaware residential facility, *and is financially eligible*, she will immediately become eligible for Delaware Medicaid." (Defs.' Answering Br. (D.I. 60) at 10) (emphasis added). Defendants' argument leaves open the essential questions as to where Ms. Duffy should live and how her residential placement should be funded if her Delaware Medicaid application is *not* approved on the day of her arrival, a result that could very well be the case, given Delaware law and the record in this case.

At the outset, under Delaware regulations, which provide that the state of residence of an institutionalized individual is that of the parent's at the time of placement, Marianne would still be a North Carolina resident when she moved to Delaware. *See,* 16-5000-5001 *Del. C. Regs.* § 14110.7; *see also* 42 C.F.R. § 435.403(i)(2)(ii). As this court has observed, "on their face, the state regulations appear to trap Duffy in North Carolina." (Op. at 7 (D.I. 34)). Even though Defendants have claimed that they would instead follow a federal regulation, 42 C.F.R. § 435.403(i)(2)(iii), there is no guarantee that they would do so, given the clear language of the state regulations. Moreover, there is no guarantee that Marianne's eligibility for Medicaid would be finalized on the date of

4

her arrival. Defendants have 90 days after application to determine Medicaid eligibility – including financial eligibility. *See,* 16-5000-5001 *Del. C. Regs.* § 14100.5. There is nothing requiring them to act more quickly and, in fact, their own argument indicates that additional steps – such as establishing financial eligibility -- would need to be taken before Medicaid eligibility would be established even after Ms. Duffy moved into a facility. Ms. Duffy would be giving up her North Carolina placement and Medicaid eligibility, without any assurance that she will have the funding to secure a safe appropriate place to live and the services that her disabilities require once she moves. Not only would such a result be contrary to her psychologist's recommendation, it would be reckless and foolish to require her parents to take such a risk. *See,* Pl.'s Opening Br. at 6 (D.I. 55), *quoting* M. Goldman Aff., Ex. D. Because Ms Duffy cannot afford to privately pay for the services she requires, even for a short period of time, this result is unavoidable unless her eligibility for Delaware Medicaid is determined in advance of her move, to be effective on the date of her relocation. *See id.* at 7.

The Seventh Circuit's observations about the non-resident *Bethesda* plaintiffs are equally applicable to Ms. Duffy's case. Regarding the same residency rules at issue in Ms. Duffy's case, Judge Posner wrote that "[t]he Medicaid regulations do not forbid anyone to change his state of residence. But neither did the welfare provisions struck down in *Shapiro v. Thompson*. All that either set of provisions does or did is impose a severe monetary penalty on indigents who move from one state to another." 122 F.3d at 448. This is exactly Ms. Duffy's situation. Defendants' regulations do not forbid Ms. Duffy from moving to Delaware; however, the record makes clear that Ms. Duffy will be significantly penalized for exercising this right. She will be required to relocate without

5

first having Medicaid funding in place for an appropriate residential placement and necessary services. She is unable to pay out-of-pocket and, as discussed below, unable to finalize a residential placement without first securing funding.

**II. The Undisputed Facts of Ms. Duffy's Case Demonstrate that Delaware's Medicaid Residency Rules Unconstitutionally Burden Her Ability To Relocate From North Carolina.**

Defendants contend that "if plaintiff was accepted at and moved into a Delaware residential facility, she would immediately become a Delaware resident – and no longer be a North Carolina resident – without any action by this Court." (Defs.' Answering Br. at 6 (D.I. 60)). Were Ms. Duffy able to physically relocate without Medicaid funding, she would not have had to file this lawsuit. The fundamental problem is that Ms. Duffy cannot leave her current placement in North Carolina and secure a new placement without first obtaining Delaware Medicaid funding for a new placement. Defendants' application of their residency rules to Ms. Duffy places her in a Catch-22 that requires relief from this Court in order for her to exercise her right to travel without unconstitutional burdens.

The material facts are undisputed: Marianne needs an appropriate residential placement and services in order to live in Delaware,[2] she and her parents cannot afford to pay for these services without Medicaid funding, and the Medicaid residency rules

---

[2] Acceptance of Marianne's application for residential services at an out-of-state facility would not render Marianne's claims in this case moot. If Marianne becomes a Delaware resident, and no appropriate placement is available to her in-state, then Delaware still must pay for ICF/MR and other medically necessary services for Marianne pursuant to its state Medicaid plan, just as it must for any other Delaware Medicaid beneficiary. *See*, Delaware State Medicaid Plan § 3.1-A at 7, at http://www.cms.hhs.gov/medicaid/stateplans/State_Data/DE/3.1/Attachments/A/A_002.pdf; *see also* 42 C.F.R. § 431.52(b)(3) (providing that states must pay for services furnished in another state to a state resident if it "is the general practice for recipients in a particular locality to use medical resources in another state.").

6

require Marianne to physically move before she can be determined eligible for Delaware Medicaid. *See,* Defs.' Answering Br. at 2 (D.I. 60). Defendants' contention that these "undisputed facts . . . [do] not implicate plaintiff's constitutional right to travel," (Defs.' Answering Br. at 3 (D.I. 60)), is incorrect as a matter of law.

Although Defendants contend that their residency rules do not present an obstacle to Marianne's relocation, there is no evidence in the record that supports this assertion. It is unreasonable to assume – and in fact contrary to the Duffys' experience -- that a private residential facility would allow Ms. Duffy to move into their facility before she can guarantee that she can pay for the placement.[3] Because Ms. Duffy cannot afford to pay out of pocket, this would mean establishing that she is eligible for Medicaid, the only source of funding available to her. For example, in order to move into Chesapeake Care Resources, Inc., a new resident must "[h]ave necessary paperwork and obtain funding and approvals of [the] state agency." *See*, Chesapeake Care Resource, Inc., Steps Individuals Must Take to Apply for Services, at http://www.dhmh.state.md.us/dda/DDAtext/chesapeakecare.htm; *see also* Supplemental Affidavit of Sean Duffy at ¶ 6, Ex. A to Pl's Answering Br. in Opp'n to Defs.' Mot. for Summ. J. (D.I. 59)). This last requirement is precisely what Ms. Duffy cannot fulfill,

---

[3] Ms. Duffy does not contend that Defendants must locate a placement for her. *Cf.* Defs.' Answering Br. at 8 (D.I. 60). In fact, the efforts her parents have made to identify an appropriate placement, made without any assistance from Defendants, make this clear. This does not change the fact, however, that if Ms. Duffy cannot secure placement prior to relocating, including Medicaid funding to pay for that placement, she must either live outside an appropriate residential placement or pay for it out-of-pocket – both options that Defendants concede are infeasible. Especially given the high cost of ICF/MR services, it is unreasonable to expect a facility to accept Marianne for free for any length of time. Moreover, Defendants' assertions reveal a lack of certainty about finalizing Marianne's Delaware Medicaid eligibility were she to move. *See,* Defs.' Answering Br. at 9, 10 (D.I. 60) (referring to "assuming financial eligibility" without further specifying what in Defendants' view Ms. Duffy must establish).

7

even if she were deemed medically eligible for placement there – because she cannot obtain this funding and approval until *after* she moves to Delaware.

Similarly, the Duffys more recently were informed by another facility, Devereux at Whitlock, that while Devereux does accept Delaware Medicaid, and while Devereux does provide residential services for people like Marianne (including people whose disabilities include the combination of blindness, seizures, autism, and behaviors), a referral from the state agency is necessary prior to making application and securing admission. *See,* Pl.'s Supplemental Answers to Defs.' First Set of Interrogs., Interrog. No. 8 (D.I. 62). The Duffys were encouraged to seek Delaware state agency approval and Medicaid funding prior to making application for services at Devereux. *Id.*

The Duffys' prior experience with moving interstate – and relocating Marianne from a facility in Pennsylvania to her current placement in North Carolina – also demonstrates that funding must be in place prior to relocation. During their past interstate move, the Duffys were able to secure the necessary Medicaid funding for a placement prior to Marianne's arrival. *See,* Supplemental Affidavit of Sean Duffy, Exhibit A to Pl.'s Answering Br. in Opp'n to Defs.' Mot. for Summ. J. (D.I. 59). The question of locating an appropriate residential placement is a separate and parallel question from the question of obtaining funding to secure a placement.[4] There is no

---

[4] The fact that the Duffys have not yet located an appropriate residential placement for Marianne has no bearing on whether Delaware's Medicaid rules unconstitutionally burden her right to interstate travel. Finding an appropriate placement to meet her needs is naturally time-consuming because her needs are complicated, and it is imperative that the future placement be able to accommodate her needs because a move will be a significant change. The Duffys expected that locating an appropriate placement for Marianne would not be easy as a result of her significant disabilities. However, while the Duffys continue to explore potential placements, they also must continue to pursue the concurrent track of obtaining Medicaid funding for such a placement. *See,* Supplemental

8

reason to expect that a facility will provide services for free, and given the high cost of these services, no reason to expect that Marianne could move into a facility without making payment arrangements first. *See,* Supplemental Affidavit of Sean Duffy, at ¶¶ 6, 8, Exhibit A to Pl.'s Answering Br. in Opp'n to Defs.' Mot. for Summ. J. (D.I. 59).

The only evidence in the record on which Defendants rely to support their claim that Ms. Duffy need not secure Medicaid funding prior to a move is the Declaration of Delaware state employee Pamela J. Tyranski in which she contends that "[w]hatever fees of the residential facility Medicaid pays for when someone moves from southern Delaware to northern Delaware would likewise be paid by Medicaid for someone like Ms. Duffy who would be moving to a Delaware facility from out-of-state." Tyranski Decl. ¶ 20 (Defs. App. A028) (D.I. 50). This statement fails to acknowledge the fundamental difference between Ms. Duffy and someone who is moving within the state of Delaware – the person who already resides in a Delaware facility has residency and eligibility for Delaware Medicaid, and thus already has the funding secured for her residential placement. This is exactly what Defendants' Medicaid residency rules prevent Ms. Duffy from doing. Delaware is treating Marianne significantly differently from a person who already resides in Delaware, and thus unconstitutionally burdening her ability to exercise her fundamental right to interstate travel. Defendants' rules cannot withstand strict scrutiny, and Ms. Duffy therefore is entitled to judgment as a matter of law.

---

Affidavit of Sean Duffy, at ¶¶ 2, 6, 8, Exhibit A to Pl.'s Answering Br. in Opp'n to Defs. Mot. for Summ. J. (D.I. 59).

## **CONCLUSION**

For the reasons set forth above and in the pleadings and other evidence, Plaintiff respectfully requests that this court grant her motion for summary judgment and deny Defendants' motion for summary judgment.

Dated:  July 7, 2006                                            Respectfully submitted,


                                          */s/ MaryBeth Musumeci*
MaryBeth Musumeci (#4128)
Dan Atkins (#2970)
Disabilities Law Program
Community Legal Aid Society, Inc.
100 W. 10th Street, Suite 801
Wilmington, DE 19801
(302) 575-0660, ext. 228 or 229
(302) 575-0840 (fax)
mmusumeci@declasi.org
datkins@declasi.org

Jane Perkins
Sarah Somers
National Health Law Program
211 N. Columbia Street
Chapel Hill, NC 27516
(919) 968-6308
(919) 968-8855 (fax)
perkins@healthlaw.org
somers@healthlaw.org

Attorneys for Plaintiff,
Marianne Duffy