IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARIANNE DUFFY, by her parents and legal guardians, SEAN and ELISE DUFFY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 05-CV-127-GMS |
| VINCENT MECONI, Secretary, Delaware Department of Health & Social Services, in his official capacity, <u>et al.</u> | ) ) ) ) ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Noel C. Burnham
(DE Bar I.D. No. 3483)
MONTGOMERY, McCRACKEN,
   WALKER & RHOADS, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE 19801
(302) 504-7800

Patrick T. Ryan
Jessica C. Goebeler
MONTGOMERY, McCRACKEN,
   WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500

Date: July 7, 2006

A. Ann Woolfolk
(DE Bar I.D. No. 2642)
Deputy Attorney General
State of Delaware – Department of Justice
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400

Counsel for Defendants

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................... 1

II. THE DELAWARE MEDICAID RESIDENCY RULES DO NOT
PREVENT PLAINTIFF FROM OBTAINING A MEDICAID-FUNDED
RESIDENTIAL PLACEMENT IN DELAWARE................................................ 3

III. ANY REQUIREMENT OF A DELAWARE FACILITY THAT
PLAINTIFF OR HER PARENTS BE TEMPORARILY RESPONSIBLE
FOR THE COST OF PLAINTIFF'S FIRST FEW DAYS IN THE
FACILITY WOULD NOT CONSTITUTE A CONSTITUTIONALLY
SIGNIFICANT BURDEN ON HER RIGHT TO TRAVEL................................. 5

IV. CONCLUSION................................................................................................ 7

## TABLE OF AUTHORITIES

**Page**

**CASES**

Memorial Hospital v. Maricopa County, 415 U.S. 250 (1974) .......................................... 5

Miller v. Reed, 176 F.3d 1202 (9th Cir. 1999) ..................................................................... 6

Shapiro v. Thompson, 394 U.S. 618 (1969) ........................................................................ 5

Starns v. Malkerson, 326 F. Supp. 234 (D. Minn. 1970), aff'd, 401 U.S. 985 (1971) ....... 6

**STATUTES & REGULATIONS**

16 Del. Adm. Code § 14110.7a............................................................................................. 4

I.    **INTRODUCTION**

Plaintiff's Answering Brief in Opposition to Defendants' Motion for Summary Judgment (D.I. 59) ("Pl.'s Ans. Br.") now presents a somewhat different argument on how it is that the federal and Delaware Medicaid residency rules allegedly prevent plaintiff from being able to exercise her constitutional right to travel.

In her pleadings and in her Motion for Summary Judgment, plaintiff asserted that the Medicaid residency rules prevent her from being able to access a residential placement and needed services in Delaware. See First Amended Complaint (D.I. 36) at ¶ 2 ("she cannot gain access to those services"); Plaintiff's Opening Brief in Support of Her Motion for Summary Judgment (D.I. 55) ("Pl.'s Opening Br."), at 1 ("she cannot gain access to these services"), 21 ("she cannot access an appropriate placement and services without Medicaid coverage").

Now, while still asserting that the residency rules prevent plaintiff from moving to Delaware, Plaintiff's Answering Brief acknowledges that there is no legal barrier to her parents applying directly to residential facilities in Delaware that might be appropriate for their daughter. See Pl.'s Ans. Br. (D.I. 59) at 3-5. However, plaintiff now argues that the Medicaid residency rules prevent her from getting access to the Medicaid funding she needs to pay for the cost of living in an appropriate facility in Delaware. Id. at 3. The Answering Brief asserts:

> In order to relocate from North Carolina, Ms. Duffy requires that her eligibility for Delaware Medicaid benefits be determined in advance of her arrival, so that she can secure a residential placement and access medically necessary services on the day of her arrival. Yet, Delaware requires her first to physically relocate prior to determining her eligibility for Medicaid benefits.

\*   \*   \*

> In order for Marianne to move, the Duffys must both find an appropriate placement and obtain necessary funding for that placement. (Supplemental Affidavit of Sean Duffy, ¶ 3, . . .). Because the Duffys are aware of the significant expense associated with residential placements, they focused their initial efforts on seeking Delaware Medicaid eligibility for Marianne. *Id.* Their separate but parallel search for an appropriate placement has confirmed that once a potential appropriate residential placement is located for Marianne, she will be unable to access it by physically relocating until her eligibility for Delaware Medicaid funding has been secured. *Id.* at ¶ 4.
>
> \*   \*   \*
>
> The Duffys are continuing their search for an appropriate placement for Marianne. *Id.* at ¶ 8. They also must continue to pursue the concurrent track of obtaining Medicaid funding for such a placement. *Id.* This is because, in their experience, funding must be in place prior to a final commitment for services from an ICF/MR. *Id.* at ¶ 6. Moreover, there is no reason to expect that a facility would provide services for free, and given the high cost of these services, no reason to expect that Marianne could move into a facility without making payment arrangements before she moves in. *Id.*

Plaintiff's Answering Brief (D.I. 59) at 1, 3, 4.[1]

Defendants' Motion for Summary Judgment (D.I. 50) explained that the residency rules do not violate Ms. Duffy's right to travel because her parents need only find an appropriate residential facility in Delaware that is prepared to accept Ms. Duffy and, once she is accepted at the facility, move her directly from the North Carolina ICF/MR to the

---

[1] Although Plaintiff's Answering Brief now describes the Duffys' efforts to locate an appropriate residential facility as a "separate but parallel search," there is no evidence that the Duffys contacted any Delaware facilities until July 2005, after the state defendants filed their Motion to Dismiss. See Plaintiff's Answers to Defendants' First Set of Interrogatories, a copy of which is included in the Appendix in Support of Defendants' Motion for Summary Judgment (D.I. 50) at Answers to Interrogatory Nos. 6 and 8 (App. A012-14, 015-16). Plaintiffs recently supplemented those answers and identified additional facilities contacted since May 2006. See Exhibit "B" hereto.

Delaware facility. See Defendants' Opening Brief in Support of Their Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(b) (D.I. 50), at 13-17. Upon her arrival at the Delaware facility, she would immediately become a Delaware resident and eligible for Delaware Medicaid. Id. The Supplemental Affidavit of Sean Duffy (plaintiff's father) responds as follows:

> We are committed to continuing our search for an appropriate placement for Marianne. In order to make a move a reality for her so that she can once again live closer to her family, however, it is essential to get Medicaid funding in place first for the placement and services that Marianne needs. If the process were as simple as Defendants make it out to be – simply have Marianne apply to a facility, get accepted, and move – we would have done that years ago instead of delaying her move and pursuing this litigation. The funding piece is critical, and if Marianne cannot have her Medicaid application approved so funding will be in place and effective on the date of her arrival, she will never be able to leave North Carolina.

Supplemental Affidavit of Sean Duffy (D.I. 59) ¶ 8.

Without in any way intending to denigrate the fervor with which plaintiff's parents have pursued their desire of moving their daughter to Delaware, the state defendants respectfully submit that the process – while not necessarily "simple" – simply does not have the obstacles in it that plaintiff's papers in this lawsuit suggest. It does not place an unconstitutional burden on her right to travel.

## II. THE DELAWARE MEDICAID RESIDENCY RULES DO NOT PREVENT PLAINTIFF FROM OBTAINING A MEDICAID-FUNDED RESIDENTIAL PLACEMENT IN DELAWARE

As demonstrated in the Supplemental Declaration of Pamela J. Tyranski ("Suppl. Tyranski Decl."), attached hereto as Exhibit "A," once plaintiff's parents find an appropriate residential facility in Delaware that is prepared to accept Ms. Duffy, they should

communicate that fact to Delaware's Division of Developmental Disabilities Services ("DDDS") and Division of Medicaid and Medical Assistance ("DMMA") and submit the paperwork necessary for a Delaware Medicaid application.  See Suppl. Tyranski Decl. ¶¶ 12-16.

To the extent the facility requires some type of payment source or guarantee of payment, the Duffys need only agree to be responsible for paying for Ms. Duffy's first few days in the Delaware facility.  Id. ¶¶ 18-19.  Once Ms. Duffy moves from the North Carolina ICF/MR to the Delaware facility, she will immediately become a Delaware resident, eligible for Medicaid.  Id. ¶¶ 7-10.[2]  Her Delaware Medicaid application should be approved within about two business days after DDDS and DMMA are notified that Ms. Duffy has arrived at the Delaware facility.  Id. ¶¶ 5, 19.

Moreover, as long as the Medicaid application is submitted within 90 days of Ms. Duffy's arrival at a Delaware facility, the Medicaid approval will be <u>retroactive</u> to the date of her arrival – so any actual payment the Duffys make to a facility for their daughter's first day or so at the facility would likely be refunded to them by the facility. Id. ¶¶ 11, 18-19.[3]

---

[2] At two places in Plaintiff's Answering Brief – at page 7 and again at page 12 – plaintiff asserts that the Delaware Medicaid regulations would cause Ms. Duffy's State of residency to remain North Carolina, even if she moved to a Delaware facility.  This is absolutely incorrect.  The Delaware regulation – 16 Del. Adm. Code § 14110.7a – provides that the State of residency of an institutionalized person who became incapable of expressing intent before age 21 is "the parent's or legal guardian's State of residence at the time of placement[.]"  As explained in both the initial Declaration of Pamela J. Tyranski (at ¶¶ 16-17) and the Supplemental Declaration of Pamela J. Tyranski (at ¶¶ 9-10), the Delaware regulation would make Ms. Duffy a Delaware resident if she moved to a Delaware facility – because her parents live in Delaware.  Delaware would be the "parent's or legal guardian's State of residence at the time of placement" in the Delaware facility.

[3] What actual procedure any particular Delaware facility follows concerning payment, guarantees and refunds will depend upon the facility.  See Suppl. Tyranski Decl. ¶ 18.

Thus, even assuming that it is correct that a residential facility will require some demonstration of a source of funding <u>before</u> accepting a prospective resident and <u>before</u> permitting that prospective resident to move into the facility, there is a relatively straight-forward, non-burdensome way that the Duffys can satisfy that requirement. By agreeing to be responsible for their daughter's first few days in the facility, the Duffys can get her into the facility and submit a Medicaid application that, based on everything DDDS and DMMA knows about Ms. Duffy, ought to be approved within two business days and will be retroactive to the date of Ms. Duffy's arrival.[4]

### III. ANY REQUIREMENT OF A DELAWARE FACILITY THAT PLAINTIFF OR HER PARENTS BE TEMPORARILY RESPONSIBLE FOR THE COST OF PLAINTIFF'S FIRST FEW DAYS IN THE FACILITY WOULD NOT CONSTITUTE A CONSTITUTIONALLY SIGNIFICANT BURDEN ON HER RIGHT TO TRAVEL

Long ago, in <u>Shapiro v. Thompson</u>, 394 U.S. 618 (1969), the Supreme Court recognized that some residence requirements "may not be penalties upon the exercise of the constitutional right of interstate travel." <u>Id.</u> at 638 n.21. Plainly, a requirement or classification that deprives someone of "a basic necessity of life," such as food, shelter or needed medical care, would be a "penalty." <u>See</u> <u>Memorial Hospital v. Maricopa County</u>, 415 U.S. 250, 256-59 (1974). But denying a non-resident (or even a resident who has not been a resident of the state for one year) the lower in-state tuition that residents pay at a

---

[4] A copy of plaintiff's recent Supplemental Answers to Defendants' First Set of Interrogatories is attached hereto as Exhibit "B." These supplemental answers show that plaintiff's parents are continuing to contact residential facilities in Delaware and elsewhere. <u>See</u> Answers to Interrogatory Nos. 6 and 8. The answers do not suggest that plaintiff's parents are facing any obstacle to finding an appropriate facility for their daughter, except particular facilities' ability to meet Ms. Duffy's needs.

state university is not a "penalty" on the right to travel.  Id. at 260 n.15; see also Starns v. Malkerson, 326 F. Supp. 234 (D. Minn. 1970), aff'd, 401 U.S. 985 (1971).

Plaintiff acknowledges that the claimed penalty must be "significant" to constitute a constitutionally cognizable burden on the right to travel.  See Pl.'s Opening Br. (D.I. 55) at 10.  One court expressed it as follows:  "Burdens placed on travel generally, such as gasoline taxes, or minor burdens impacting interstate travel, such as toll roads, do not constitute a violation of [the] right [to travel]."  Miller v. Reed, 176 F.3d 1202, 1205 (9th Cir. 1999).

Here, at most, plaintiff (or her parents) might be required to be responsible – most likely temporarily – for the cost of the first few days of plaintiff's stay in a Delaware facility.  Plaintiff herself uses as an example the Mary Campbell Center's fees, which are reported to be "between $275.00 to $300.00 per day for private pay patients."  See Pl.'s Ans. Br. (D.I. 59) at 8.  This is not a significant expense (compared to the difference between in-state and non-resident tuition) – even if the Duffys would actually be required to pay it for a few days.

However, since an approved Medicaid application would be retroactive to the date Ms. Duffy arrived at the Delaware facility, see Suppl. Tyranski Decl. ¶¶ 11, 18-19, it is likely either that the Duffys would not actually pay the cost of the first few days or, if they did pay it, that they would be entitled to a refund.  Id. ¶¶ 18-19.[5]

---

[5] Plaintiff's Supplemental Answers to Defendants' First Set of Interrogatories (Exhibit "B" hereto) revise plaintiff's answer to Interrogatory No. 10 and now clarify that, in response to one of the concerns this Court expressed in its October 28, 2005 opinion denying the state defendants' Motion to Dismiss (D.I. 34), at 7-8, plaintiff now states, "There are no expenses associated with a person's moving into a Delaware residential facility that Medicaid would pay but for Plaintiff's residency problem."  This Court's concern is therefore no obstacle to granting Defendants' Motion for Summary Judgment.

This one possible temporary undertaking – agreeing to be responsible for the cost of the first few days of their daughter's stay in a Delaware facility – cannot be a constitutionally significant burden. It surely does not prevent her from moving to a Delaware facility that is appropriate to her needs and prepared to accept her.

## IV. CONCLUSION

For the foregoing reasons, and those set out in more detail in the state defendants' Motion for Summary Judgment (D.I. 50) and Answering Brief to Plaintiff's Motion for Summary Judgment (D.I. 60), this Court should deny plaintiff's Motion for Summary Judgment and grant the state defendants' Motion for Summary Judgment.

Respectfully submitted,

Dated: July 7, 2006

/s/ Noel C. Burnham
Noel C. Burnham
(DE Bar I.D. No. 3483)
Richard M. Donaldson
(DE Bar I.D. No. 4367)
MONTGOMERY, MCCRACKEN,
    WALKER & RHOADS, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE 19801
(302) 504-7800

Patrick T. Ryan
Jessica C. Goebeler
MONTGOMERY, MCCRACKEN,
    WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500

– and –

          A. Ann Woolfolk
          (DE Bar I.D. No. 2642)
          Deputy Attorney General
          State of Delaware – Department of Justice
          Carvel State Office Building
          820 N. French Street, 6th Floor
          Wilmington, DE  19801
          (302) 577-8400

          Counsel for Defendants