IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARIANNE DUFFY, by her parents and }
legal guardians, SEAN and ELISE DUFFY, }
                                       }
           Plaintiff,                  }   No. 05-CV-127-GMS
                                       }
    v.                                 }
                                       }
VINCENT MECONI, Secretary, Delaware    }
Department of Health & Social Services, in }
his official capacity, et al.,         )
                                       )
           Defendants.                 }

## PLAINTIFF'S SUPPLEMENTAL ANSWERS TO
## DEFENDANTS' FIRST SET OF INTERROGATORIES -- *CORRECTED*[1]

---

[1] ~~Additions are indicated in boldface type, and deletions are indicated by strike-out.~~ Changes in this document from Plaintiff's Supplemental Answers to Defendants' First Set of Interrogatories (D.I. 62) are reflected by boldface type for additions and strike-out for deletions. Plaintiff provides these corrected supplemental answers to address a recently discovered clerical error which resulted in an unintentional change in her responses to Interrogatory Nos. 4 and 10. Specifically, in the supplemental answers filed at D.I. 62, the first sentence of Plaintiff's answer to Interrogatory No. 4 was inadvertently omitted, and Plaintiff's answer to Interrogatory No. 10 was inadvertently changed. *Compare* Plaintiff's Answers to Defendants' First Set of Interrogatories (Appendix in Support of Defendants' Motion for Summary Judgment at A007-A-021, D.I. 50) *with* Plaintiff's Supplemental Answers to Defendants' First Set of Interrogatories (D.I. 62). The inadvertence is evidenced by the fact that all other changes in the supplemental answers (D.I. 62) were marked by bold or strike-out type. These errors came to Plaintiff's attention as a result of Defendants' reference to an apparent revision to Plaintiff's answers, *see* Reply Br. in Support of Defs.' Mot. for Summ. J. at 6, n.5 (D.I. 64), and resulted from Plaintiff cutting and pasting from the wrong document when preparing her supplemental answers. Plaintiff apologizes for her errors and any inconvenience to Defendants and the Court. Plaintiff files these corrected supplemental answers because the version containing the errors was filed with the Court (D.I. 62) and is referenced in Plaintiff's Reply Brief in Support of Her Motion for Summary Judgment (D.I. 63) at 8.

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Marianne Duffy, by her parents and legal guardians, Sean and Elise Duffy, responds to Defendants' First Set of Interrogatories as follows:

### Qualification of Answers

To the extent any of the individual interrogatories are vague, ambiguous and/or confusing, Plaintiff's response to any such interrogatory is based upon Plaintiff's best understanding of the interrogatory and/or the terms used therein, and such response cannot properly be used as evidence except in the context in which Plaintiff understood the interrogatory and/or the terms thereof.

### Interrogatory No. 1

Do you contend in this lawsuit that plaintiff Marianne Duffy should be able to establish eligibility for services that are provided by the Delaware DDDS even if she is not a Delaware resident? If so, explain the factual and legal basis upon which you are making that contention.

ANSWER: Plaintiff objects to the term "establish eligibility for services" to the extent it is vague and ambiguous. Plaintiff contends that she should be permitted to establish Delaware residency without first being required to physically move to Delaware. Plaintiff's physical and mental disabilities prevent her from physically relocating to Delaware without first obtaining appropriate residential placement and services; yet, due to her limited income, she cannot gain access to those services without first meeting the Delaware Medicaid program's residency requirements. (D.I. 36 at ¶ 2).

**Interrogatory No. 2**

Do you contend in this lawsuit that plaintiff Marianne Duffy should be able to establish eligibility under the Delaware Medicaid program even if she is not a resident of Delaware? If so, explain the factual and legal basis upon which you are making that contention.

ANSWER: Plaintiff objects to the term "establish eligibility" to the extent it is vague and ambiguous. Plaintiff contends that she should be permitted to establish Delaware residency without first being required to physically move to Delaware. Plaintiff's physical and mental disabilities prevent her from physically relocating to Delaware without first obtaining appropriate residential placement and services; yet, due to her limited income, she cannot gain access to those services without first meeting the Delaware Medicaid program's residency requirements. (D.I. 36 at ¶ 2).

**Interrogatory No. 3**

Do you contend in this lawsuit that plaintiff Marianne Duffy should be able to establish that she is a Delaware resident, for purposes of establishing eligibility for either DDDS services or Delaware Medicaid, before physically relocating to Delaware? If so, explain the factual and legal basis upon which you are making that contention.

ANSWER: Plaintiff objects to the term "establishing eligibility" to the extent it is vague and ambiguous. Plaintiff contends that she should be permitted to establish Delaware residency without first being required to physically move to Delaware. Plaintiff's physical and mental disabilities prevent her from physically relocating to Delaware without first obtaining appropriate residential placement and services; yet,

due to her limited income, she cannot gain access to those services without first meeting the Delaware Medicaid program's residency requirements. (D.I. 36 at ¶ 2).

The factual basis for Plaintiff's claim arises from her multiple severe disabilities, including blindness, autism, and mental retardation. As a result, she requires a highly structured living environment with constant supervision and care due to her susceptibility to seizures, falling, and self-abusive behavior. Her parents are unable to provide her care in their own home, even for a weekend. (D.I. 36 at ¶ 22).

Plaintiff's parents and legal guardians applied for services, primarily seeking an ICF/MR or community residential placement in Delaware, through DDDS. (D.I. 36 at ¶ 25). Defendants' response to Plaintiff's application was to place it on "inactive" status unless or until Plaintiff physically relocated to Delaware from North Carolina. (D.I. 36 at ¶ ¶ 25, 26).

The legal basis for Plaintiff's claim is that she cannot access her right to become a citizen of another state, and thereby access the corresponding privileges and immunities afforded by that state to its citizens, because her disabilities prevent her from establishing a residence in a new state without the willingness of the new state to provide her with Medicaid services, including a residential placement and necessary medical services, on the day of her arrival. (D.I. 36 at ¶ 28). The federal and state Medicaid residency provisions at 42 C.F.R. § 435.403 and Division of Social Services Manual § § 14110-14110.8.2 operate to permanently trap Plaintiff in the state in which she is currently living (North Carolina), because she is incapable of indicating intent and requires an institutional level of care. (D.I. 36 at ¶ 18). This violates Plaintiff's fundamental right to interstate travel as protected by the Privileges and Immunities

Clause of Article IV, the Privileges and Immunities Clause of the Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment. (D.I. 36 at ¶¶ 29-34).

### Interrogatory No. 4

Do you contend in this lawsuit that either (or both) of the following facts are (or ought to be) sufficient to make plaintiff Marianne Duffy a Delaware resident for purposes of eligibility for DDDS services and/or eligibility under the Delaware Medicaid program, regardless of where plaintiff Marianne Duffy herself lives: (a) both of her parents are Delaware residents; and/or (b) her parents desire that she live in an appropriate residential facility in Delaware? If so, explain the legal basis upon which you contend that one or both of those facts are (or ought to be) sufficient to make plaintiff Marianne Duffy a Delaware resident for purposes of eligibility for DDDS services and/or eligibility under the Delaware Medicaid program.

ANSWER: **Plaintiff objects that the information elicited in this interrogatory response is not relevant.** Plaintiff contends that she should be permitted to establish Delaware residency without first being required to physically move to Delaware. Plaintiff's physical and mental disabilities prevent her from physically relocating to Delaware without first obtaining appropriate residential placement and services; yet, due to her limited income, she cannot gain access to those services without first meeting the Delaware Medicaid program's residency requirements. (D.I. 36 at ¶ 2).

### Interrogatory No. 5

Do you contend that there are any facts or circumstances other than the two listed above in Interrogatory No. 4 that are (or ought to be) sufficient to make plaintiff

Marianne Duffy a Delaware resident for purposes of eligibility for DDDS services and/or eligibility under the Delaware Medicaid program, regardless of where plaintiff Marianne Duffy herself lives. If so, identify what those facts or circumstances are and explain the legal basis upon which you contend that those facts or circumstances are (or ought to be) sufficient to make plaintiff Marianne Duffy a Delaware resident for purposes of eligibility for DDDS services and/or eligibility under the Delaware Medicaid program.

ANSWER: Plaintiff contends that she should be permitted to establish Delaware residency without first being required to physically move to Delaware. Plaintiff's physical and mental disabilities prevent her from physically relocating to Delaware without first obtaining appropriate residential placement and services; yet, due to her limited income, she cannot gain access to those services without first meeting the Delaware Medicaid program's residency requirements. (D.I. 36 at ¶ 2).

The legal basis for Plaintiff's claim is that she cannot access her right to become a citizen of another state, and thereby access the corresponding privileges and immunities afforded by that state to its citizens, because her disabilities prevent her from establishing a residence in a new state without the willingness of the new state to provide her with Medicaid services, including a residential placement and necessary medical services, on the day of her arrival. (D.I. 36 at ¶ 28). The federal and state Medicaid residency provisions at 42 C.F.R. § 435.403 and Division of Social Services Manual § § 14110-14110.8.2 operate to permanently trap Plaintiff in the state in which she is currently living (North Carolina), because she is incapable of indicating intent and requires an institutional level of care. (D.I. 36 at ¶ 18). This violates Plaintiff's fundamental right to interstate travel as protected by the Privileges and Immunities Clause of Article IV, the

Privileges and Immunities Clause of the Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment. (D.I. 36 at ¶¶ 29-34).

**Interrogatory No. 6**

Identify (by facility name and address) each residential placement facility located in Delaware (or organization that owns or operates a residential placement facility located in Delaware) that plaintiff Marianne Duffy's parents or other representatives have contacted since January 1, 2001, in an effort to locate an appropriate residential placement for plaintiff Marianne Duffy. For each, state:

(a) the dates of contact;

(b) the persons with whom such contact was made;

(c) the substance of the discussions that occurred concerning plaintiff Marianne Duffy;

(d) whether an application was made for plaintiff Marianne Duffy's acceptance into the residential facility;

(e) if no application was made, the reason(s) why no application was made; and

(f) if an application was made, the current status of that application.

ANSWER:   (1) Mary Campbell Center, 4641 Weldin Road, Wilmington, Delaware 19803.

(a) Intermittently from approximately July, 2005 to the present.

(b) Joanne Arena, Admissions Coordinator.

(c) Plaintiff's disabilities and medical needs and the services offered by Mary Campbell Center.

(d) Yes.

7

(e) N/A.

(f) The Mary Campbell Center has rejected Ms. Duffy's application.

    (2) Chimes Delaware, 514 Interchange Boulevard, Newark, DE 19711.

(a) Intermittently from approximately July, 2005 to the present.

(b) Don Bilyew.

(c) Plaintiff's disabilities and medical needs and the services offered by Chimes.

(d) Yes.

(e) N/A.

(f) Chimes does not believe that it can meet Plaintiff's needs and referred her to Chesapeake Care Resources, Inc., in Maryland.

    (3) CSI, EH Pencader Corporate Center, 250 Corporate Blvd., Suite A, Newark, DE 19702.

(a) Approximately July, 2005.

(b). No one returned the call.

(c) No conversation took place.

(d) No.

(e) No one returned the call.

(f) N/A.

    (4) Bancroft, address unknown.

(a) Approximately July, 2005.

(b) Karen Race.

(c) Plaintiff's medical needs and disabilities and the services offered by Bancroft.

(d) No.

(e) Bancroft's residents are higher functioning than Plaintiff.

(f) N/A.

    (5) Advoserv, St. Georges, DE.

(a) June 15, 2006

(b) Gail Courtney, Admissions.

(c) Plaintiff's medical needs and disabilities and the services offered by Advoserv.

(d) No.

(e) Adovserv's residential services are for children only.

(f) N/a.

### Interrogatory No. 7

Unless already supplied in response to Interrogatory No 6 above, state the information that the following persons and organizations (identified in Plaintiff's First Supplement to Her Initial Disclosures Under Federal Rule of Civil Procedure 26(a)(1)) have regarding the Duffys' efforts to locate an appropriate residential placement for plaintiff Marianne Duffy in Delaware:

    (a) Deb Nock and The ARC of Delaware;

    (b) Don Bilvew [sic] and Chimes, Delaware; and

    (c) Joanne Arena and Mary Campbell Center.

ANSWER:

    (a) Information regarding Plaintiff's disabilities and search for an appropriate residential placement in Delaware provided verbally by Plaintiff's guardians.

(b) Information regarding Plaintiff's disabilities and search for an appropriate residential placement in Delaware provided verbally by Plaintiff's guardians and application for services.

(c) Information regarding Plaintiff's disabilities and search for an appropriate residential placement in Delaware provided verbally by Plaintiff's guardians and application for services.

### Interrogatory No. 8

Identify (by facility name and address) each residential placement facility located in any state other than Delaware (or organization that owns or operates a residential placement facility located in ay state other than Delaware) that plaintiff Marianne Duffy's parents or other representatives have contacted since January 1, 2001, in an effort to locate an appropriate residential placement for plaintiff Marianne Duffy. For each, state:

(a) the dates of contact;

(b) the persons with whom such contact was made;

(c) the substance of the discussions that occurred concerning plaintiff Marianne Duffy;

(d) whether an application was made for plaintiff Marianne Duffy's acceptance into the residential facility;

(e) if no application was made, the reason(s) why no application was made; and

(f) if an application was made, the current status of the application.

ANSWER: (1) Chesapeake Care Resources, Inc., (CCRI), 80 Marysville Road, North East Maryland 21901.

(a) April 13, 2006.

(b) Jolene M. Paruch, Program Coordinator.

(c) Plaintiff's medical needs and disabilities and the services offered by Bancroft.

(d) Plaintiff's parents are in the process of applying.

(e) N/A.

(f) CCRI has determined that Plaintiff does not meet their admission criteria.

    (2) Devereux at Whitlock, 139 Leopard Road, Berwyn, Pennsylvania 19312.

(a) June 12, 2006.

(b) Debbie Sulli, Director of Admissions.

(c) Plaintiff's medical needs and disabilities and the services offered by Devereux.

(d) No application has been made, for the reasons explained in (e) below.

(e) Plaintiff's parents were informed that, while Devereux does accept Delaware Medicaid, and while Devereux does provide residential services for people like Plaintiff (including people whose disabilities include the combination of blindness, seizures, autism, and behaviors), a referral from the state agency is necessary prior to making application and securing admission. Plaintiff's parents were encouraged to seek Delaware state agency approval and Medicaid funding prior to making application for services at Devereux.

(f) N/a.

    (3) Bancroft NeuroHealth, 425 Kings Highway East, Haddonfield, New Jersey.

(a) June 21, 2006.

(b) Theresa, Admissions.

(c) Plaintiff's medical needs and disabilities and the services offered by Bancroft New Jersey.

(d) No formal application has been made.

(e) Bancroft has asked to review Plaintiff's Individual Habilitation Plan and medical records.

(f) N/a.

(4) Princeton Child Development Institute (PCDI), 300 Cold Soil Road, Princeton, New Jersey 08540.

(a) June 14, 2006.

(b) Unknown.

(c) Plaintiff's medical needs and disabilities and the services offered by PCDI.

(d) No.

(e) PCDI only serves children.

(f) N/a.

(5) Eden Institute, Inc., One Eden Way, Princeton, New Jersey 08540.

(a) June 15, 2006 through the present.

(b) Dave Roussell, Director for Group Home Division.

(c) No substantive discussions have yet occurred as Plaintiff's parents are exchanging phone messages with this facility.

(d) N/a.

(e) N/a.

(f) N/a.

(6) Arc of Washington, Hagerstown, Maryland.

(a) June 20, 2006 through the present.

(b) Phyllis Landry, Director.

(c) No substantive discussions have yet occurred as Plaintiff's parents are exchanging phone messages with this facility.

(d) N/a.

(e) N/a.

(f) N/a.

### Interrogatory No. 9

In paragraph 22 of the Amended Complaint, you allege that plaintiff Marianne Duffy's "parents are unable to provide her care in their own home, even for a weekend." Please explain the factual basis upon which that allegation is made and include in your answer a statement of whether (and, if so, when and for how long) plaintiff Marianne Duffy has ever either lived with her parents in their own home or stayed with her parents in their own home for a period of 24 hours. To the extent pertinent to providing the factual basis for the allegation in paragraph 22 quoted above, please describe those times in which plaintiff Marianne Duffy's parents have attempted provide her care in their own home.

ANSWER: Plaintiff's parents are unable to care for Plaintiff in their home, even for a short period of time, because of the intensive care and supervision that Plaintiff needs. For example, Plaintiff's sleep patterns are such that she can stay awake for prolonged periods of time – twenty-four to forty-eight hours – fairly frequently. She needs constant supervision while she is awake because she is at risk for seizures and falling, and it is

unsafe for her to walk on her own. Her residential placement provides staff who are awake all night to monitor her.

Plaintiff also engages in behaviors, such as loud screaming and laughing, which go on for hours at a time. Plaintiff's self-injurious behaviors also can last for hours at a time, during the day and night. During those periods, she must be constantly monitored and restrained from hitting herself or banging her head against a wall. It is unsafe for Plaintiff to live outside of a highly structured residential placement that can provide the care that she needs as a result of her disabilities. Any unplanned interruption, such as the ringing of the telephone, can be upsetting to her.

Plaintiff has lived in a residential placement outside of her parents' home since age eleven. She has not stayed with her parents in their home for a period of twenty-four hours for several years. Until approximately 1998 or 1999, Plaintiff did spend one night per week at home. However, these overnight home visits were stopped due to safety concerns. Specifically, Plaintiff's seizures cause her to fall easily and require supervision and assistance while walking because her reflexes are very slow. At one point, Plaintiff had a seizure in the shower while her mother was alone caring for her, and this raised her parents' concerns about their ability to ensure her safety. In addition, Plaintiff's history of unusual sleep patterns means that someone must constantly be awake to supervise her, and her parents are unable to meet that need unless additional adults are present.

Until 2001, Plaintiff did stay with her parents in their home for a period of twenty-four hours during the Christmas holidays, when her parents and two adult brothers were all available to take shifts monitoring Plaintiff around the clock. Plaintiff has not had any overnight home visits for holidays or otherwise since 2001.

14

### Interrogatory No. 10

In Judge Sleet's October 28, 2005 opinion denying Defendants' Motion to Dismiss in this lawsuit he stated:

> Additionally, Duffy has not elucidated the nature of the expenses, if any, Medicaid would pay (e.g., travel expenses, placement expenses, other fees charged by the facility, etc.), but for her residency problem. That is to say, assuming *arguendo* that Duffy could legally establish residence by moving to an in-state ICF/MR facility, it is unclear what expenses she would incur until she qualifies for Medicaid in Delaware.

Opinion, dated October 28, 2005, at 7-8. Do you contend that there are any expenses associated with a person's moving into a Delaware residential facility that "Medicaid would pay...but for [plaintiff Marianne Duffy's] residency problem"? If so, identify those expenses and explain the legal and/or factual basis of your contention that Medicaid would otherwise pay for such expenses.

ANSWER: ~~There are no expenses associated with a person's moving into a Delaware residential facility that Medicaid would pay but for Plaintiff's residency problem.~~ **Plaintiff believes that the phrase "moving into" is vague and ambiguous. Yes there are expenses that would be incurred and that Medicaid would cover if Plaintiff were allowed to move to Delaware. The Delaware Medicaid program is legally required to pay for all medically necessary covered services as set out in its state plan for Medicaid beneficiaries, such as inpatient hospital services, outpatient hospital services, laboratory and X-ray services, nursing facility services, physician services, home health services, private duty nursing services, prescription drugs, and ICF/MR services.**

15

Dated: ~~June 23, 2006~~
   **July 17, 2006**

/s/ *MaryBeth Musumeci*
MaryBeth Musumeci (#4128)
Daniel Atkins (#2970)
Disabilities Law Program
Community Legal Aid Society, Inc.
100 West 10th Street, Suite 801
Wilmington, DE 19801
(302) 575-0660, ext. 228 or 229
(302) 575-0840 fax
mmusumeci@declasi.org
datkins@declasi.org

Jane Perkins
Sarah Somers
National Health Law Program
211 N. Columbia Street
Chapel Hill, NC 27516
(919) 968-6308
(919) 968-8855 (fax)
perkins@healthlaw.org
somers@healthlaw.org

Attorneys for Plaintiff, Marianne Duffy

16

## VERIFICATION

I, Sean Duffy, hereby state that I am the father and legal guardian of Plaintiff Marianne Duffy. I declare under penalty of perjury that the foregoing supplemental answers to Defendants' First Set of Interrogatories are true and correct to the best of my knowledge, information, and belief.

Dated: June 23, 2006

_____
Sean Duffy