

# DISABILITIES LAW PROGRAM
COMMUNITY LEGAL AID SOCIETY, INC.
100 W. 10th Street, Suite 801
Wilmington, Delaware 19801
(302) 575-0690  (TTY) (302) 575-0696  Fax (302) 575-0840

August 24, 2006

BY E-FILING

The Honorable Gregory M. Sleet
U.S. District Court for the District of Delaware
844 North King Street
Lock Box 19
Wilmington, DE 19801

    RE:    *Duffy v. Meconi, et al.*, 05-cv-127 (GMS)

Dear Judge Sleet:

    Pursuant to Local Rule 7.1.2(c), I write to call to the Court's attention the recent decision in *Lee v. Minner*, No. 05-3329, 2006 WL 2361463 (3d Cir. Aug. 16, 2006), as it is relevant to the pending cross-motions for summary judgment in the above-captioned case. (D.I. 50, 54, 55, 59, 60, 63, 64). In *Lee*, the United States Court of Appeals for the Third Circuit held that a Delaware state statute restricting the rights of out-of-state residents to public documents violates the Privileges and Immunities Clause of the United States Constitution, Article IV, § 2.

    A copy of the opinion is attached pursuant to Local Rule 7.1.3(a)(7).

    Thank you for Your Honor's consideration of this case.

                                              Respectfully,

                                              MaryBeth Musumeci
                                              Attorney for Marianne Duffy

Enclosure

cc:    Patrick Ryan, Esq. (by e-filing)
       Noel C. Burnham, Esq. (by e-filing)
       Sarah Somers, Esq.
       Jane Perkins, Esq.
       Daniel Atkins, Esq.
       Sean and Elise Duffy

KENT COUNTY    840 Walker Road, Dover, DE 19901    (302) 674-8500
SUSSEX COUNTY    144 E. Market Street, Georgetown, DE 19947    (302) 856-3742
DELAWARE'S PROTECTION AND ADVOCACY SYSTEM FOR PERSONS WITH DISABILITIES

2006 WL 2361463                                                                                                          Page 1
--- F.3d ----, 2006 WL 2361463 (3rd Cir.(Del.))
(Cite as: 2006 WL 2361463 (3rd Cir.(Del.)))
H

Only the Westlaw citation is currently available.

United States Court of Appeals,
Third Circuit.
Matthew LEE
v.
Ruth Ann MINNER, in her official capacity as
Governor of the State of Delaware;
M. Jane Brady, in her official capacity as Attorney
General of the State of
Delaware, Appellants.
No. 05-3329.

Argued May 9, 2006.
Opinion Filed Aug. 16, 2006.

On Appeal from the United States District Court For the District of Delaware, (D.C. Civ. Action No. 03-1063), District Judge: The Honorable Joseph J. Farnan, Jr.

W. Michael Tupman, (Argued), Delaware Department of Justice Dover, DE, for Appellant.

David C. Vladeck, (Argued), Georgetown University Law Center, Washington, DC, for Appellee.

Lucy A. Dalglish The Reporters Committee for Freedom of the Press Arlington, VA,1 for Amicus Curiae-Appellee.

Before BARRY and SMITH, Circuit Judges, and DITTER, District Judge. [FN*]

> FN* The Honorable J. William Ditter, Jr., Senior District Judge for the Eastern District of Pennsylvania, sitting by designation.

*OPINION OF THE COURT*

SMITH, Circuit Judge.

*1 The question presented in this appeal is whether Delaware's Freedom of Information Act ("FOIA"), 29 Del.Code Ann. § 10003, violates the Privileges and Immunities Clause of the United States Constitution by restricting noncitizens' rights to access, inspect, and copy public documents. We conclude that it does. Accordingly, we will affirm the District Court's orders granting summary judgment in favor of Matthew Lee and enjoining the State of Delaware from limiting FOIA benefits to its own citizens.

I.
Plaintiff-Appellee Matthew Lee is a citizen of New York. He serves as the Executive Director of Inner City Press/Community on the Move, a community and consumer organization based in New York City. He is also a lawyer and author. Much of Lee's published work focuses on alleged predatory practices of banks and other financial service companies and the regulation of these entities by state and federal authorities. Lee regularly publishes articles on these issues in print media and online sources. In addition to these activities, Lee submits testimony and public comments on behalf of Inner City Press/Community on the Move to banking and other regulatory agencies on related topics.

On January 12, 2003, Lee requested records from Delaware's Attorney General regarding Delaware's decision to join a nationwide settlement with Household International, Inc., resolving an investigation into Household's deceptive lending practices. The request was made pursuant to Delaware's FOIA. Ten days later, State Solicitor Malcolm Cobin sent Lee a letter denying his request. In relevant part, the letter stated:

> You request records of this office relating to the recent settlement with Household International Inc. and "for actions by your office on Household's continuing predatory lending and insurance in connection therewith." Your request is hereby denied. Pursuant to 29 Del. C. § 10003, "All public records shall be open to inspection and copying by any citizen of the State during regular business hours ..." Your address indicates that you are not a citizen and therefore would not be entitled to inspect and copy public records under FOIA.

App. at 167. [FN1]

> FN1. In its entirety, § 10003 provides:
> (a) All public records shall be open to inspection and copying by any citizen of the State during regular business hours by the custodian of the records for the appropriate public body. Reasonable access to and reasonable facilities for copying of these records shall not be denied to any citizen. If the record is in active use or in storage and, therefore, not available at the time a citizen requests access, the custodian shall so inform the citizen and make an appointment for said citizen to examine such records as expediently as they may be made available. Any reasonable expense involved in the copying of

> such records shall be levied as a charge on the citizen requesting such copy.
> (b) It shall be the responsibility of the public body to establish rules and regulations regarding access to public records as well as fees charged for copying of such records.
> 29 Del.Code Ann. § 10003.

On September 3, 2003, Lee again requested information pursuant to § 10003 regarding the Household settlement, including any records related to a potential conflict of interest. State Solicitor Cobin denied Lee's request, citing the reasons set forth in his previous letter.

On November 24, 2003, Lee filed a complaint in the United States District Court for the District of Delaware against Governor Ruth Ann Minner and Attorney General M. Jane Brady, [FN2] alleging that the citizenship requirement in Delaware's FOIA violates the Privileges and Immunities Clause of the United States Constitution. Delaware filed an answer and, on January 14, 2004, Lee moved for summary judgment. Delaware objected, indicating that it would need to take discovery to determine whether the citizenship requirement interfered with Lee's fundamental right to engage in his trade as a journalist. The Court deferred consideration of Lee's summary judgment motion and set a discovery schedule. Lee and Cobin were the only two witnesses deposed. After the close of discovery, Lee renewed his motion for summary judgment and Delaware filed a cross-motion for summary judgment.

> FN2. Lee sued Governor Minner and Attorney General Brady only in their official capacities. The District Court subsequently dismissed the Governor as a defendant because she had no particular enforcement authority under Delaware's FOIA. Lee does not challenge that ruling on appeal. For purposes of this opinion, we will refer to the Defendant-Appellant as "Delaware" or "the State."

*2 On May 13, 2004, the District Court issued an order granting summary judgment in favor of Lee and denying Delaware's cross-motion. In its accompanying opinion, the Court explained that Delaware's citizen-only provision violated Lee's fundamental right to "practice his common calling as a journalist and consumer activist on the same terms and conditions" as Delaware citizens who share his profession and to "engage in the political process with regard to matters of both national political and economic importance." App. at 18, 21. The Court also considered Delaware's argument that the citizenship requirement is substantially related to the State's interest in "defin[ing] the political community and strengthen[ing] the bond between citizens and their government officials." *Id.* at 22 (citation omitted). Although the Court acknowledged that the State's asserted interest might be valid in other contexts, it concluded that, in this case, Delaware had failed to "demonstrate [ ] how allowing noncitizens access to the same public information available to the State's citizens impedes or thwarts those interests ." *Id.* at 22. It further explained:

> If, as Defendants contend, one of the goals of the FOIA is to strengthen the bond between citizens and their government by ensuring transparency and accountability in government, then nonresidents are no more a threat to this goal than residents. Indeed, consumer advocates and journalists like [Lee] are particularly suited to advancing the goals of transparency and accountability, whether they are Delaware citizens or not, and it is difficult to understand how such external scrutiny might undermine the bond between citizens and their government.

*Id.* at 24. The Court also issued an order permanently enjoining Delaware's Attorney General "from refusing to honor or respond to [FOIA] requests ... on the basis of the requestor's **residency** or citizenship" and directing the Attorney General to "process and evaluate FOIA requests from nonresidents or noncitizens in the same manner in which FOIA requests from citizens of Delaware are processed and evaluated." *Id.* at 34-35.

After the District Court entered the injunction, Delaware sought a stay pending appeal. The District Court denied the motion for a stay. Delaware filed this timely appeal, challenging the Court's order granting summary judgment in favor of Lee and the order granting Lee's request for injunctive relief.

II.

The District Court exercised jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Because the District Court entered a final order, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

Our review of a District Court's order granting summary judgment is plenary. *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 354 (3d Cir.2003). We apply the standard set forth in Federal Rule of Civil Procedure 56(c), under which we may affirm the District Court's order if, when viewing the evidence in the light most favorable to the nonmoving party, there is "no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of

law." Fed.R.Civ.P. 56(c).

### III.

*3 Article IV, section 2 of the United States Constitution provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2. The Privileges and Immunities Clause was designed to "fuse into one Nation a collection of independent sovereign States," *Toomer v. Witsell,* 224 U.S. 385, 395 (1948), and its object was "to place the citizens of each State upon the same footing ... so far as the advantages resulting from citizenship in those States are concerned," *Paul v. Virginia,* 75 U.S. 168, 180 (1868). As the Supreme Court explained, "[t]he section, in effect, prevents a State from discriminating against citizens of other States in favor of its own." *Hague v. CIO,* 307 U.S. 496, 511 (1939).

The Supreme Court has set forth a three-prong test to determine whether a state action or policy violates the Privileges and Immunities Clause. *See Toomer,* 334 U.S. at 396; *A.L. Blades & Sons, Inc. v. Yerusalim,* 121 F.3d 865, 870 (3d Cir.1997). Under that test, a court must: (1) determine whether the policy at issue burdens a right protected by the Privileges and Immunities Clause; (2) consider whether the state has a "substantial reason" for the discriminatory practice; and (3) evaluate whether the practice bears a substantial relationship to the state's objectives. *See Toomer,* 334 U.S. at 396; *Supreme Court of New Hampshire v. Piper,* 470 U.S. 274, 284 (1985); *A.L. Blades,* 121 F.3d at 870.

We agree with the District Court that the citizens-only provision of Delaware's Freedom of Information Act burdens noncitizens' right to "engage in the political process with regard to matters of national political and economic importance." Although in some cases the State's asserted objective of "defining its political community" might justify a discriminatory practice, in this case, there is an insufficient nexus between the State's policy of excluding noncitizens from receiving FOIA benefits and that objective. For that reason, we will affirm the judgment of the District Court.

### A.

The first prong of the Supreme Court's test requires us to determine whether the right asserted by the plaintiff is protected by the Privileges and Immunities Clause. The contours of the Privileges and Immunities Clause, however, have not been "precisely shaped by the process and wear of constant litigation and judicial interpretation," and the reach of the Clause is not "well developed." *See Baldwin v. Fish & Game Comm'n of Montana,* 436 U.S. 371, 379-80 (1978). Consequently, in deciding whether a given right is protected under Article IV, section 2, we have limited guidance.

Despite the relative paucity of judicial pronouncements regarding the reach of the Privileges and Immunities Clause, there are basic principles that we can distill from the existing case law. On one hand, it is clear that a state need not apply *all* its laws or extend *all* its services equally to citizens and noncitizens. *Id.* at 383. The Clause does not prohibit, for example, the use of citizenship as a basis for suffrage rights or qualification for elective office. *Id.* (citations omitted). On the other hand, it is equally clear that a state may not deprive noncitizens of the ability to "engage in an essential activity or exercise a basic right." *Id.* at 387. Such rights and activities include those that are " 'fundamental' to the promotion of interstate harmony," " 'bear[ ] upon the vitality of the Nation as a single entity,' " *United Bldg. & Constr. Trades Council v. Mayor & Council of Camden,* 465 U.S. 208, 218 (1984) (quoting *Baldwin,* 436 U.S. at 388), and are "important to the 'maintenance of the Union.' " *Piper,* 470 U.S. at 281 (quoting *Baldwin,* 436 U.S. at 388)). Along those lines, the Supreme Court has held that the pursuit of a common calling, the ownership or disposition of privately held property, and access to the courts are protected under the Privileges and Immunities Clause. *Baldwin,* 436 U.S. at 383 (citing *Ward v. Maryland,* 12 Wall. 418 (1871); *Blake v. McClung,* 172 U.S. 239 (1898); *Canadian Northern R. Co. v. Eggen,* 252 U.S. 553 (1920)); *but cf. id.* at 388 (rejecting challenge to Montana law which imposed a higher fee for elk hunting licenses on nonresidents than on residents and explaining that elk hunting is "a recreation and a sport" and that "[e]quality in access to Montana elk is not basic to the maintenance and well-being of the Union").

### 1.

*4 In this case, Lee alleges that the citizens-only provision of Delaware's FOIA burdens two fundamental rights: (1) his right to pursue his "common calling" as a journalist and (2) his right to "engage in the political process with regard to matters of political and economic importance." *See* Appellee's Br. at 14-15. The District Court concluded that both of these rights were protected under the Privileges and Immunities Clause. On appeal, the State concedes--as it must [FN3]--that the right to pursue one's "common calling" is one that is protected by the Privileges and Immunities Clause. It argues, however, that (1) Lee has failed to establish that his "common calling" is

journalism and (2) the citizens-only provision does not impose a sufficiently substantial burden on Lee's right to pursue his journalistic activities to render its Freedom of Information Act constitutionally infirm. Because we conclude that the second right asserted by Lee--the right to "engage in the political process with regard to matters of national political and economic importance"--is protected under the Privileges and Immunities Clause, we need not address these arguments.

> FN3. *See United Bldg. & Constr. Trades Council v. Mayor & Council of Camden*, 465 U.S. 208, 219 (1984) (holding that Privileges and Immunities Clause protected right of noncitizen to engage in construction work and noting that "the pursuit of a common calling is one of the most fundamental of those privileges protected by the Clause"); *see also Piper*, 470 U.S. 274 (holding that New Hampshire policy which restricted practice of law by out-of-state residents violated Privileges and Immunities Clause); *Toomer*, 334 U.S. 385 (concluding that South Carolina statute which imposed higher licensing fee on nonresident shrimp fisherman was unconstitutional); *Mullaney v. Anderson*, 342 U.S. 415 (1952) (holding that licensing fee for nonresident commercial fishermen constituted discriminatory tax in violation of Privileges and Immunities Clause); *Ward v. Maryland*, 79 U.S. 418 (1871) (striking down Maryland state licensing scheme that imposed higher financial burden on noncitizens who sought to trade in goods manufactured outside of Maryland); *but cf. Salem Blue Collar Workers Ass'n v. City of Salem*, 33 F.3d 265, 270 (3d Cir.1994), *cert. denied*, 513 U.S. 1152 (1995) (holding that direct public employment is not a right protected by the Privileges and Immunities Clause).

2.

In the proceeding below, the District Court concluded that the "citizenship requirement impacts [Lee's] ability to engage in the political process with regard to matters of both national political and economic importance." App. at 20. It explained: "As the 'corporate home' for thousands of corporations in the United States, Delaware's regulations have nation-wide political and economic impact, and therefore, it seems reasonable that noncitizens should have the same access to public records as Delaware citizens." *Id*. at 20-21. On appeal, Delaware argues that the District Court erred in holding, as a matter of law, that the right of noncitizens to access public records is protected by the Privileges and Immunities Clause. We disagree.

Although the most common types of challenges under the Privileges and Immunities Clause involve "economic discrimination," the Supreme Court noted in *Piper* that it "has never held that the Privileges and Immunities Clause protects only economic interests." *Piper*, 470 U.S. at 281 n. 11 (1985) (citing *Doe v. Bolton*, 410 U.S. 179 (1973) (concluding that a Georgia statute which permitted only residents to secure abortions violated the Clause)). In fact, in *Piper*, the Supreme Court explained that the right to practice law was a protected right not only because of the legal profession's role in the national economy, but also because of lawyers' "noncommercial role" in "rais[ing] unpopular federal claims" and "champion[ing] unpopular causes." *Id*. at 281.

No state is an island--at least in the figurative sense--and some events which take place in an individual state may be relevant to and have an impact upon policies of not only the national government but also of the states. Accordingly, political advocacy regarding matters of national interest or interests common between the states plays an important role in furthering a "vital national economy" and "vindicat[ing] individual and societal rights." *See Tolchin v. Supreme Court of the State of New Jersey*, 111 F.3d 1099, 1111 (3d Cir.1997) (citing *Piper*, 470 U.S. at 280-81).

*5 Effective advocacy and participation in the political process, however, require access to information. In the words of the District Court, access to records is "the hallmark of effective participation in democracy." App. at 20. The very purpose of a freedom of information law "is to ensure an informed citizenry, vital to the functioning of a democratic society...." *See, e.g*., *John Doe Agency v. John Doe Corp*., 493 U.S. 146, 152 (1989) (construing the federal Freedom of Information Act); *see also* 29 Del.Code Ann. § 10001 (acknowledging that "[i]t is vital in a democratic society that public business be performed in an open and public manner...."). Because political advocacy is an "essential activity" which "bear[s] upon the vitality of the Nation as a single entity," *Baldwin*, 436 U.S. at 387, 383, and because access to public records is necessary to the ability to engage in that activity, we conclude that access to public records is a right protected by the Privileges and Immunities Clause.

Noncitizens' access to public records--and the political advocacy enabled by such access--is undoubtedly burdened by § 10003. Delaware's FOIA is facially discriminatory insofar as it limits access to information to those individuals who are citizens of the State.

Moreover, the burden on noncitizens' access to information--and, accordingly, on noncitizens' ability to engage in political advocacy regarding topics upon which that information touches--is not merely incidental. See Tolchin, 111 F.3d at 1111-12 (noting that it is necessary to "distinguish between incidental discrimination against nonresidents and discrimination that imposes too heavy a burden on their privileges") (citations omitted). Because noncitizens are precluded from obtaining any FOIA information, at any time, for any reason, the burden is substantial. [FN4]

> FN4. The State contends that the burden is insubstantial insofar as a noncitizen can obtain records by engaging a citizen to file a FOIA request on his or her behalf. We find this argument unpersuasive. Although some noncitizens may have contacts in Delaware who are willing to submit a request for them, others will be forced to expend considerable effort and money to obtain the assistance of a citizen. Moreover, a requirement which necessitates reliance on the citizen of another state is contrary to the Privileges and Immunities Clause's purpose of promoting interstate harmony.

B.

Because the citizens-only provision of Delaware's FOIA burdens a fundamental right under the Privileges and Immunities Clause, it can only withstand constitutional scrutiny if Delaware has a "substantial reason" for the discriminatory practice and if that practice bears a substantial relationship to the State's objectives. Delaware's purported reason for restricting access to information under its FOIA is to "define the political community and strengthen the bond between citizens and their government." Appellant's Br. at 17. The public record law, the State contends, is an "extension of the right to vote." Id. at 18. Because noncitizens are not entitled to vote, it argues, they similarly are not entitled to access public information.

Delaware relies on the Supreme Court's decision in Sugarman v. Dougall, 413 U.S. 634 (1973), to support its contention that the State has an "interest in establishing its own form of government, and in limiting participation in that government to those who are within 'the basic conception of a political community.' " Id. at 642-43 (quoting Dunn v. Blumstein, 405 U.S. 330, 334 (1972)). Indeed, the Court has recognized that this interest is "substantial" and that a state has "broad power to define its political community." Id. at 643. In Sugarman itself, however, the Court further explained that "in seeking to achieve this substantial purpose ... the means the State employs must be precisely drawn in light of the acknowledged purpose." Id. The Court concluded that the New York Civil Service law at issue in that case was unconstitutional because it excluded foreign nationals from employment and this exclusion was "neither narrowly confined nor precise in its application." In this case, Delaware has stated a "substantial reason" for the citizens-only limitation in its public records law-- i.e., defining its political community. As discussed below, however, the citizens-only provision bears little--if any--relationship to this goal.

C.

*6 Under the third prong of the test set forth in Toomer and A .L. Blades, we must evaluate whether the State's discriminatory action bears a substantial relationship to its stated objectives. In this case, Delaware's FOIA discriminates between citizens and noncitizens and its purported interest in "defining its political community" is both recognized and "substantial." Nevertheless, the State has offered no reason why permitting noncitizens to access public information would diminish its ability to define its political community. There is no evidence that allowing noncitizens to directly obtain information will weaken the bond between the State of Delaware and its citizens. [FN5] Put simply, there is no nexus between the State's purported objective and its practice of prohibiting noncitizens from obtaining public records. Accordingly, we conclude that the citizens-only provision of § 10003 violates the Privileges and Immunities Clause.

> FN5. We note that the first section of Delaware's FOIA statute provides that "[i]t is vital in a democratic society that public business be performed in an open and public manner...." 29 Del.Code Ann. § 10001. As the District Court explained, if the goal of Delaware's public records act is to ensure transparency and accountability, permitting noncitizens to access public documents is more likely to advance the goals of Delaware's FOIA than to thwart them. Moreover, because information is not a diminishing resource, there is no risk that permitting noncitizens to access public information will impair a citizen's ability to do so as well. Indeed, the only justification we can see for imposing an absolute bar to noncitizens' access to information is that the very act of exclusion creates a sense of identity among Delaware citizens. Such a justification is contrary to principles of comity inherent in Article IV, section 2.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 2361463  
(Cite as: 2006 WL 2361463, *6 (3rd Cir.(Del.)))

Page 6

### IV.

Pursuant to Article IV, section 2, a state may not discriminate against noncitizens with respect to any protected right unless the state has a substantial reason for the discriminatory policy that bears a substantial relationship to the state's objectives. Delaware's public records law discriminates on its face between citizens and noncitizens. Although the State has a substantial interest in "defining its political community," the citizens-only provision of its public records law does not bear a substantial relationship to that interest. Accordingly, we conclude that the provision violates the Privileges and Immunities Clause of Article IV. We therefore will affirm the District Court's orders granting summary judgment in favor of Lee and enjoining Delaware from limiting FOIA benefits to Delaware citizens.

--- F.3d ----, 2006 WL 2361463 (3rd Cir.(Del.))

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.