IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARIANNE DUFFY, by her parents and legal guardians, Sean and Elise Duffy,<br><br>  Plaintiff,<br><br>  v.<br><br>VINCENT MECONI, Secretary, Delaware Department of Health & Social Services, in his official capacity,<br><br>MARIANNE SMITH, Director, Division of Developmental Disabilities Services, in her official capacity, and<br><br>ELAINE ARCHANGELO, Director, Division of Social Services, in her official capacity,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 05-127 (GMS)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MaryBeth Musumeci, Esquire, and Dan Atkins, Esquire of COMMUNITY LEGAL AID SOCIETY, INC., Wilmington, Delaware, and Jane Perkins, Esquire, and Sarah Somers, Esquire of NATIONAL HEALTH LAW PROGRAM, Chapel Hill, North Carolina. Attorneys for Plaintiff.

Noel C. Burnham, Esquire, and Richard M. Donaldson, Esquire of MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP, Wilmington, Delaware, A. Ann Woolfolk, Esquire, DEPUTY ATTORNEY GENERAL FOR THE STATE OF DELAWARE, Wilmington, Delaware, and Patrick T. Ryan, Esquire, and Jessica C. Goebeler, Esquire of MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP, Philadelphia, Pennsylvania. Attorneys for Defendants.

**OPINION**

September 11, 2007
Wilmington, Delaware

**SLEET, District Judge**

## I.     INTRODUCTION

The above-captioned action is one for declaratory and injunctive relief, pursuant to 28 U.S.C. §§ 2201 and 2202 (1994), and Fed. R. Civ. P. 57 and 65, arising from the Defendants' alleged violations of 42 U.S.C. § 1983 (2003). (D.I. 1 ¶ 5.) The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4) (1993). Pending before the court are cross motions for summary judgment, pursuant to Fed. R. Civ. P. 56. (D.I. 50, 54.) For the following reasons, the court will deny the Defendants' ("the State") motion for summary judgment and will grant the Plaintiff's motion for summary judgment.

## II.    BACKGROUND

The plaintiff, Marianne Duffy ("Ms. Duffy"), is 33 years of age and has resided in Hubert, North Carolina since 1994. (D.I. 55 at 1.) Ms. Duffy, a Medicaid beneficiary, lives in an intermediate care facility for mental retardation ("ICF/MR")[1] because she suffers from "developmental disabilities including blindness, seizures, autism, and mental retardation." (Id. ¶¶ 1-2.) Ms. Duffy is non-verbal and requires a highly structured living environment with constant supervision and care due to her susceptibility to seizures, falling, and self-abusive behavior. In 2001, Duffy's parents ("the Duffys") relocated from North Carolina to Delaware. (Id. ¶ 2.) The Duffys desire to be near their daughter and feel that it is in their daughter's best interest to be near them. As such, the Duffys started the process of relocating Ms. Duffy to Delaware. Because they are unable to care for their daughter on their own for any significant

---

[1] An ICF/MR is "an institution (or distinct part of an institution) that is primarily for the diagnosis, treatment or rehabilitation of the mentally retarded or persons with related conditions; and provides, in a protected residential setting, ongoing evaluation, planning, 24-hour supervision, coordination, and integration of health or rehabilitative services to help each individual function at his greatest ability." 42 C.F.R. § 435.1009.

period of time, the Duffys applied to the Defendants to obtain residential placement and services through Delaware's Medicaid program.[2] (Id. ¶¶ 2, 21.)

Medicaid "authorizes Federal grants to States for medical assistance to low-income persons who are age 65 or over, blind, disabled, or members of families with dependent children or qualified pregnant women or children." 42 C.F.R. § 430.0 (2004). A participating state "must provide Medicaid to eligible residents of the State." § 435.403(a). Accordingly, a person's entitlement to benefits from a particular state depends, in part, on whether she is a resident of that state, which is determined by the State according to its own policies and procedures. "Within broad Federal rules, each State decides eligible groups, types and range of services, payment levels for services, and administrative and operating procedures." *Id.* Because Ms. Duffy is institutionalized and became incapable of indicating her intent before her twenty-first birthday, her state of residence is the same as her parents' state of residence at the time she was placed in an institution, i.e., North Carolina. § 435.403(i)(2)(ii); *see also* 16-5000-5100 Del. Code Regs. § 14110.7(a). Thus, in spite of the fact that her parents currently reside in Delaware, she remains a citizen of North Carolina.

In response to Ms. Duffy's application, Defendant Marianne Smith, Director of the Division of Developmental Disabilities Services ("DDDS"), "determined that [Duffy] was not a [Delaware] resident and her residential placement needs were not 'urgent' according to the state

---

[2] According to the Medicaid regulations, Duffy's state of residence is presently controlled by the following:
For any institutionalized individual who became incapable of indicating intent before age 21, the State of residence is . . . [t]he parent's or legal guardian's State of residence at the time of placement.
42 C.F.R. § 435.403(i)(2)(ii). Furthermore, Delaware's adherence to that regulation is evidenced by its own Medicaid regulations:

> For any institutionalized individual who became incapable of indicating intent before age 21, the State of residence is: the parent's or legal guardian's State of residence at the time of placement or if a legal guardian is appointed and parental rights are terminated, the State of residence of the guardian is used.

registry system and therefore determined that [Duffy] would not be provided with community residential services." (Id. ¶ 25.)

At least some ICF/MR facilities require, as a condition for acceptance, some type of payment source or guarantee of payment**.** (See D.I. 55, ¶ 6, S. Duffy Aff., Ex. A. to Pl.'s Opening Br.) (identifying Chesapeake Care Resource, Inc. as one such facility for which a new resident must "[h]ave necessary paperwork and obtain funding and approvals of [the] state agency"). Ms. Duffy's primary source of income is her Supplemental Security Income (SSI) benefits, which is approximately $600 per month. (See D.I. 55 ¶ 11, S. Duffy Aff., Ex. A. to Pl's Opening Br.) Ms. Duffy also receives negligible income for piecework in her vocational day program (approximately $113.00 total in 2004). (Id.) Ms. Duffy's inability to privately guarantee payment, and the State's refusal to process and approve Medicaid benefits, have become barriers to Ms. Duffy's ability to be accepted and enrolled in an ICF/MR facility in Delaware.

### III. PROCEDURAL POSTURE

Ms. Duffy filed the present action, through her parents, in which she alleges that the Defendants' refusal to provide her with residential placement and services violates the Privileges and Immunities Clause of Article IV of the Constitution (Count I), the Privileges and Immunities Clause of the Fourteenth Amendment (Count II), and the Equal Protection Clause of the Fourteenth Amendment (Count III), by improperly restricting her right to interstate travel. (Id. ¶¶ 28-33.) During a teleconference on October 19, 2006, the parties and the court agreed that a trial in this case would not be necessary and that the court could decide the legal issue on

---

16-5000-5100 Del. Code Regs. § 14110.7(a).

summary judgment. On October 23, 2006, the court heard oral argument on the parties' cross motions.

## IV.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and drawing reasonable inferences in the light most favorable to the nonmoving party, determines that the Rule 56(c) standard has been met. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).

## V.   DISCUSSION

The constitutional issue to be decided in this action is whether the Delaware and federal Medicaid residency rules impose an unconstitutional burden on Ms. Duffy's constitutionally protected right to interstate travel. The right to travel from one State to another is fundamental, and the right has been firmly established and repeatedly recognized in this nation's jurisprudence. *United States v. Guest*, 383 U.S. 745, 757 (1966). Because the right is fundamental, any policy that burdens or impinges upon that right is subject to strict scrutiny. *In re U. S. ex rel. Missouri State High School Activities Ass'n*, 682 F.2d 147 (8th Cir. 1982); *In re Merrill Lynch Relocation Management, Inc.*, 812 F.2d 1116 (9th Cir. 1987).

States may not violate the constitutional right to travel by imposing a term of residency as a condition upon the receipt of public benefits. *Int'l Org. of Masters, Mates & Pilots v.*

*Andrews*, 831 F.2d 843, 846 (9th Cir. 1987), *cert. denied*, 485 U.S. 962 (1988). The states may, however, condition nonessential benefits and rights, such as lower college tuition and dissolution of marriage, on a term of residency. *Id.* Likewise, states may impose bona fide residence requirements to ensure that services and benefits go to actual residents of the state. *Id*. at 847. Insignificant restrictions on travel, however, do not amount to a denial of the fundamental right to interstate travel. *Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991), *cert. denied*, 502 U.S. 907 (1991); *cf. Hawaii Boating Ass'n v. Water Transp. Facilities Div., Dept. of Transp., State of Hawaii*, 651 F.2d 661, 664 (9th Cir. 1981) (holding that a durational residency requirement for preferential rates for mooring privileges in recreational boat harbors did not penalize the fundamental right to travel).

A state law implicates the constitutional right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right. *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986) (internal citations and quotations omitted). *See also Smith v. Paulk*, 705 F.2d 1279, 1284 (10th Cir. 1983) (holding that where a classification operates to penalize the exercise of the constitutional right of interstate migration, the legislative classification must be justified by a compelling state interest). The federal guarantee of interstate travel protects interstate travelers against two sets of burdens—the erection of actual barriers to interstate movement and being treated differently from intrastate travelers. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 277 (1993) (*citing Zobel v. Williams*, 457 U.S. 55, 60 n.6 (1982)). *See also Paul v. Virginia,* 75 U.S. 168 (1869) (holding that Art. IV, § 2, "inhibits discriminating legislation against [citizens of other States and] gives them the right of free ingress into other States, and

egress from them"); *Toomer v. Witsell,* 334 U.S. 385, 395 (1948) (holding that Art. IV, § 2, "insure[s] to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy").

### A. State's Motion for Summary Judgment

The State argues that it is entitled to summary judgment on two grounds. First, the State contends that there is no evidence of any obstacle to Ms. Duffy applying to and, if accepted, moving to a facility in Delaware. In support of this argument, the State reasons that, under the governing federal Medicaid regulations on residency, as well as Delaware's Medicaid regulations, Ms. Duffy would become a Delaware resident, eligible for Delaware Medicaid if she applied to, was accepted at, and moved into an appropriate facility in Delaware. Yet, the parties do not dispute that Ms. Duffy will become a Delaware resident and eligible for Medicaid *once* she moves to Delaware.³ These undisputed facts don't establish, however, that the State is entitled to summary judgment.

In *Bethesda Lutheran Homes and Services, Inc. v. Leean*, the Seventh Circuit rejected a similar surface-level examination of the regulations at issue, but went on to focus on the effect of the challenged provisions:

> The Medicaid regulations do not forbid anyone to change his state of residence. But neither did the welfare provisions struck down in *Shapiro v. Thompson*. All that either set of provisions does or did is impose a severe monetary penalty on indigents who move from one state to another.

122 F.3d 443, 448 (7th Cir. 1997) (discussing *Shapiro v. Thompson*, 394 U.S. 618 (1969)). Thus, because "the power of a state to confine its public services to residents does not entitle the

---

³ For any institutionalized individual who became incapable of indicating intent before age 21, the State of residence is . . . [t]he current State of residence of the parent or legal guardian who files the application if the individual is institutionalized in that State. § 435.403(i)(2)(iii).

7

state to establish arbitrary barriers to a nonresident's becoming a resident," *id.*, the defendants had the burden of demonstrating that the barrier could be permissibly justified. The defendants were unable to justify the erection of such a significant impediment to this fundamental right—the right to interstate travel. As a result, the federal Medicaid provisions at issue were struck down as unconstitutional. *Bethesda Lutheran*, 122 F.3d at 450. Here, the Medicaid residency policy at issue has the same unconstitutional effect of barring individuals who need ICF/MR services, and who cannot individually afford them, from establishing residency for Medicaid purposes in Delaware.

More to the point, it is not the residency regulations themselves that frame the legal issue; rather, it is how the State applies and puts such regulations in practice. Thus, the question is whether, by requiring Ms. Duffy—who cannot afford private care, to first physically move to Delaware at her own expense, before the State determines her Medicaid eligibility, the State is violating her constitutional right to travel.

The State acknowledges that it "will not determine the Medicaid eligibility of an applicant until such time as that person is a resident." (Transcript of S.J. Oral Argument at 30-31, Oct. 23, 2006.) It is this policy, i.e., the timing of the approval process which is not specifically dictated by regulation or statute, which has effectively prevented Ms. Duffy from moving to Delaware. The record reflects, and the State doesn't dispute, that Ms. Duffy's medical condition warrants intensive supervision such that even her parents are unable to physically move her to Delaware and provide temporary care while the State determines Ms. Duffy's Medicaid eligibility. (See D.I. 54, Affidavit of Marc Goldman, Ex. D, ¶ 8.) There is no dispute among the parties as to the fact that Ms. Duffy cannot afford to pay for the care that she

requires, even for a minimal time period.[4]  (Tr. at 36, Oct. 23, 2006.)  The evidence of record also reflects that Ms. Duffy has been unable to secure placement at a facility capable of providing her care without assurance that funding is in place.  (See D.I. 59-2 at 2-3, Supp Aff. of Sean Duffy, Ex. A.)

While Ms. Duffy may not be literally "trapped in North Carolina," it is certainly true that the State of Delaware has impeded her ability to relocate to Delaware by refusing to process and approve her application for Medicaid until she physically resides in the State.  In response to Ms. Duffy's predicament, the State submits that "any burden that might [be] impose[d] on the Duffys is minimal, perhaps nonexistent, but in any event, does not rise to the level of a constitutionally significant burden . . . ."  (Tr. at 39, Oct. 23, 2006.)  The court disagrees.  In effect, the State's policy amounts to a disguised durational residency requirement.  While the State does not pronounce that an applicant has to be a resident for a set period of time in order to obtain benefits, the message that the State has clearly communicated to Ms. Duffy, and others similarly situated, is that she must first come to Delaware and, regardless of her ability to pay, wait somewhere between 48 hours[5] and 90 days, before the State will approve her for benefits essential for her health, safety, and welfare.

There is a long line of cases striking down given durational residency requirements.  The leading and most apposite, given the challenges confronting the Duffys and their daughter, is

---

[4] Private pay rates for the type of care that Ms. Duffy requires can range in cost anywhere from $275 to $373 per day.  (See D.I. 59 at 8.)  The State has 90 days after application to determine Medicaid eligibility–including financial eligibility.  *See* 16-5000-5001 Del. C. Regs. § 14100.5.  Thus, at the lower rate, Ms. Duffy's potential financial exposure during a hypothetical 90-day pendency of her Medicaid application is $24,750, which does not include the other necessary health care costs for prescription drugs, medical tests, hospitalizations, and doctors' visits.

[5] In a supplemental affidavit submitted with the State's reply brief in support of its motion for summary judgment, the State estimates that given the information it already possesses about Ms. Duffy, her application will likely process within 48 hours of it being reactivated.  (See D.I. 64 at 5.)

*Shapiro v. Thompson,* 394 U.S. 618 (1969).  In *Shapiro*, the Supreme Court declared unconstitutional statutory provisions denying welfare assistance to residents who had not lived within their jurisdictions for at least one year immediately preceding their application for such assistance.  The Court determined that the one-year waiting period for welfare assistance had the effect of denying the basic necessities of life to needy residents.  Thus, the impediment to interstate movement resulting from the imposition of a residency requirement was readily apparent.  Writing for the majority, Justice Brennan stated, "An indigent who desires to migrate, resettle, find a new job, start a new life will doubtless hesitate if he knows that he must risk making the move without the possibility of falling back on state welfare assistance during his first year of residence, when his need may be most acute."  *Shapiro v. Thompson*, at 629.

Unlike the cases involving nonessential benefits and rights, such as lower college tuition and dissolution of marriage, the present case is much like *Shapiro*, involving the immediate and pressing need for preservation of life and health of persons unable to live without public assistance.  The court is persuaded that the uncontroverted evidence in the record, including sworn statements from Ms. Duffy's father, Ms. Duffy's treating psychologist, medical records, and the admissions from the State itself, demonstrates the severity of Ms. Duffy's condition.  Her documented tendency to go without sleep for extended periods, her seizure disorder, and self-abusive behavior present risk of serious injury at any time and make it impossible for Ms. Duffy to live outside of the care of trained professionals—the type of care available at an ICF/MR facility.  Further, Ms. Duffy's limited financial resources preclude her from personally financing even a brief stay in a private facility to establish residency for purposes of her application for Medicaid.

Based on the State's assurances in its briefs and accompanying affidavits, as best as the court can tell, Ms. Duffy's presence in Delaware for some unknown period of time is the only hurdle she has to clear before the State will deem her eligible for benefits. For the reasons just discussed, although there are no genuine issues of material fact that would warrant a trial in this case, the State is not entitled to a judgment in its favor on this record.

### B.  Ms. Duffy's Motion for Summary Judgment

Ms. Duffy moves for summary judgment that the State's application of its Medicaid residency rule to her violates both the equal protection and privilege and immunities clauses of the Fourteenth Amendment, as well as the privileges and immunities clause of Article IV of the Constitution. Ms. Duffy argues that the State violates her rights under the Equal Protection Clause because the State's policy creates classifications of applicants—non-indigent out-of-state applicants versus indigent and severely disabled out-of-state applicants—and subjects those groups to different treatment.

Ms. Duffy argues that "prospective Delaware residents in need of institutional care who either: (1) have the financial means to pay for a private placement or (2) whose disabilities do not prevent them from living in the community while Medicaid eligibility is being determined are free to exercise their right to settle in Delaware. (D.I. 54 at 13.) In other words, those individuals who are physically capable of waiting outside of institutional care or who are able to afford privately obtained institutional care are not discouraged from moving to Delaware while they await the approval of benefits. For those not so fortunate, such as Ms. Duffy, not only are they discouraged from entering the state but some may be effectively precluded from migrating to Delaware.

Accordingly, Ms. Duffy contends that the State's application of the Medicaid residency requirement results in different classes of potential residents and prevents Ms. Duffy and others like her from exercising their fundamental right to interstate travel. (D.I. 54 at 13.) The court agrees. "*[A]ny classification* which serves to penalize the exercise of [the constitutional] right [to move from State to State], unless shown to be necessary to promote a compelling governmental interest, is unconstitutional." *Shapiro*, at 634 (emphasis added).

In order to satisfy the strict scrutiny test, the State's policy must be narrowly tailored to justify a compelling state interest. The State submits that its application of the Medicaid residency rule is justified by a desire to "fairly apportion the State's limited funds to those residents who need it most." (D.I. 11 at 15; D.I. 51 at 6, Def. Resp. To Interrog. No. 5). While the Supreme Court has recognized that states have an interest in conserving fiscal resources, the Court found that goals similar in nature to the one the State of Delaware articulates are not sufficiently compelling. *See Memorial Hospital v. Maricopa County*, 415 U.S. 250, 266 (1974) (holding that a desire to inhibit an influx of newcomers so as not to "dilute the quality of services provided to longtime residents" was not sufficiently compelling).

Moreover, the State's policy is not narrowly tailored as it fails to account for those more vulnerable members of society who are not able to meet even a short durational residency without State assistance. The State has not explained why it cannot operate to provide application approvals, whereby the remittance of benefits are conditioned on the actual arrival of applicants such as Ms. Duffy, who cannot otherwise get to the State of Delaware on their own without such approval. Such an application of the rules conceivably could still preserve

financial resources without impinging on the rights of disabled and indigent non-residents to migrate to Delaware.

Thus, the court holds that Delaware's choice not to process Ms. Duffy's application for Medicaid benefits until such time as she is physically present in the state is a violation of her constitutional right to travel under the Equal Protection Clause of the 14th Amendment because the policy is not narrowly tailored to justify a compelling state interest. Forcing Ms. Duffy to attempt to live without necessary care and services, or forcing her to pay out of pocket for a private placement, places an impediment to the exercise of her fundamental right that is not warranted or justified by any interest articulated by the State or supported by the record currently before the court. The State's policy impermissibly burdens Ms. Duffy's fundamental right to travel and has had the effect of deterring Ms. Duffy, and potentially others similarly situated, from relocating to Delaware.

## VI. CONCLUSION

For the aforementioned reasons, the court will deny the Defendants' motion for summary judgment and grant the Plaintiff's motion for summary judgment.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARIANNE DUFFY, by her parents and legal guardians, Sean and Elise Duffy, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| VINCENT MECONI, Secretary, Delaware Department of Health & Social Services, in his official capacity, | ) ) ) ) |
| MARIANNE SMITH, Director, Division of Developmental Disabilities Services, in her official capacity, and | ) ) ) ) |
| ELAINE ARCHANGELO, Director, Division of Social Services, in her official capacity, | ) ) ) ) |
| Defendants. | ) |

C.A. No. 05-127 (GMS)

**ORDER**

IT IS HEREBY ORDERED THAT:

1. The Defendants' motion for summary judgment (D.I. 54) is DENIED.

2. The Plaintiff's motion for summary judgment (D.I. 50) is GRANTED.


Dated: September 11, 2007              /s/ Gregory M. Sleet
                                       CHIEF, UNITED STATES DISTRICT JUDGE